NO. 18-3076

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

**APERION CARE, INC., et al.**

**Plaintiffs-Appellants,**

**v.**

**FELICIA F. NORWOOD,**
in her official capacity, et. al,

**Defendants-Appellees.**

**Appeal from the United States District Court**
**For the Northern District of Illinois**
**Case No. 17-cv-8920**
**The Honorable Judge Norgle**

## APPELLANTS' APPENDIX

Sb2, Inc.

Ray W. Welcher
Attorney for Plaintiffs- Appellants
1426 N. 3rd St. Suite 200
P.O. Box 5400
Harrisburg, PA 17110
Mobile: 214.789.4787
Fax: 717.909.5925
rwwelcher@sb2inc.com

TABLE OF CONTENTS

I.      Doctors Nursing and Rehabilitation Center, LLC v. Felicia Norwood 1:16-cv-0937..1

II.     Charlie Haythe v. Department of Medical Assistance Services CL17-322...………..21

III.    Tiggs v. Ohio Department of Job and Family Services 2018 WL 3815054…………27

IV.      DAR………………………………………………………………………....37

V.      MCO Contracts…………………………………………………………………39

VI.     MAR's…………………………………………………………………….....58

VII.    Doc. 1 Complaint………………………………………………………………65

VIII.   Doc 69. August 28, 2018 Order………………..…………………………....…114

# APPENDIX "1"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Doctors Nursing and Rehabilitation Center, LLC, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) ) ) | |
| v. | ) ) | No. 1:16-cv-9837 No. 1:16-cv-9842 |
| Felicia F. Norwood, in her official capacity as the Director of the Illinois Department of Healthcare and Family Services, | ) ) ) ) ) | No. 1:16-cv-9922 No. 1:16-cv-10255 No. 1:16-cv-10614 No. 1:17-cv-0104 No. 1:17-cv-0640 |
| Defendant, | ) ) ) | |
| and related cases. | ) | |

Memorandum Opinion and Order

In these related cases, several healthcare providers and their patients in the State of Illinois seek declaratory and injunctive relief against the Director of the Illinois Department of Healthcare and Family Services ("HFS"), Felicia Norwood, in her official capacity. Plaintiffs allege that the defendant has failed to process Medicaid applications and provide Medicaid benefits with reasonable promptness to residents of long-term care facilities in violation of Title XIX of the Social Security Act (the "Medicaid Act") and its implementing regulations, the Americans with Disabilities Act

2

("ADA"), the Rehabilitation Act, and the Fourteenth Amendment. Before me is defendant's motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted [Case. No. 1:16-cv-9837, ECF No. 36]. For the reasons set forth below, I deny defendant's motion.

I.

Plaintiffs in these seven related cases are Illinois healthcare providers and certain elderly and disabled patients they serve. The healthcare provider plaintiffs are Illinois healthcare companies owning and/or operating nursing home facilities throughout the state of Illinois. These facilities provide twenty-four hour, long-term nursing care to elderly patients and patients with disabilities, some of whom are Medicaid applicants or beneficiaries.

The patient plaintiffs are residents at the healthcare provider plaintiffs' long-term nursing care facilities. The patient plaintiffs fall into two groups: (1) those who are awaiting Medicaid eligibility determinations and (2) those who, despite receiving approval, are still awaiting Medicaid benefits.

The healthcare provider plaintiffs purport to serve as the patient plaintiffs' "authorized representatives" for the purposes of pursuing Medicaid benefits pursuant to 42 C.F.R. §

435.923. The patient plaintiffs also bring suit on their own behalves.

Defendant is Felicia Norwood, the Director of the Illinois Department of Healthcare and Family Services, who is sued in her official capacity. HFS is a state agency charged with operating Illinois's Medicaid program. Two of the complaints also separately list HFS as a defendant.[1]

Plaintiffs allege that defendant Norwood has failed to provide medical care services to eligible Illinois residents as required by the Medicaid Act. Specifically, plaintiffs charge that defendant has failed to process plaintiffs' Medicaid applications, render eligibility determinations, and provide benefits with reasonable promptness. They allege that HFS has exceeded the forty-five days or ninety days that the Medicaid regulations permit to determine applicant eligibility. Plaintiffs further allege that defendant has failed to provide benefits to the patient plaintiffs who have had their Medicaid applications approved. HFS's inaction on these matters, plaintiffs allege, violates 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4)(A), and 1396a(a)(8). Additionally, plaintiffs assert that these inactions constitute violations of the ADA, Section 504 of the Rehabilitation Act, and the Equal Protection Clause

---

[1] *See* Case No. 1:16-cv-9842 [ECF No. 12]; Case No. 1:16-cv-10255 [ECF No. 3].

of the Fourteenth Amendment. Plaintiffs seek injunctive and declaratory relief to ensure the defendant's future compliance with the Medicaid statute.

II.

Defendant moves to dismiss the seven complaints against her because, she argues, this court lacks subject matter jurisdiction to hear the cases and plaintiffs fail to state claims upon which relief may be granted. When considering motions to dismiss for failure to state a claim or lack of subject matter jurisdiction, I "take as true all well-pleaded factual allegations in the complaint and make all plausible inferences from those allegations in the plaintiffs' favor." *Disability Rights Wisconsin, Inc. v. Walworth Cty. Bd. of Supervisors*, 522 F.3d 796, 799 (7th Cir. 2008); *see Scanlan v. Eisenberg,* 669 F.3d 838, 841 (7th Cir. 2012) (applying the same standard to Rule 12(b)(1) motions). To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide factual allegations that, if taken as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Similarly, a complaint will survive a facial challenge to jurisdiction brought under a Rule 12(b)(1) motion to dismiss if it "has sufficiently alleged a basis of subject matter jurisdiction." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009).

A. Lack of Subject Matter Jurisdiction

Defendant contends that all seven complaints should be dismissed for lack of subject matter jurisdiction. In her motion to dismiss, defendant initially challenged this court's jurisdiction to hear these cases on Article III standing and Eleventh Amendment grounds. Defendant subsequently dropped her Article III challenge in her reply brief, and I will therefore not address it here. Def.'s Reply at 3 [ECF No. 45]. The defendant does continue to challenge the institutional plaintiffs' authority to sue on behalf of the patient plaintiffs, but, because the patients themselves are plaintiffs asserting a cognizable injury, this issue does not implicate my subject matter jurisdiction and is better understood as a challenge arising under Rule 12(b)(6), as discussed below. *See Whelan v. Abell*, 953 F.2d 663, 672 (D.C. Cir. 1992).

Defendant's remaining jurisdictional argument concerns the Eleventh Amendment. Defendant contends that plaintiffs' claims—with the exception of those brought under the Rehabilitation Act—are barred by the Eleventh Amendment and the doctrine of state sovereign immunity because plaintiffs seek an order compelling payments for services already rendered. Plaintiffs counter that they seek only prospective injunctive and declaratory relief to ensure defendant's future compliance with federal law.

6

The Eleventh Amendment states that federal jurisdiction shall not extend to suits against a state by a citizen of another state or foreign country. U.S. Const. amend. XI. In addition to what it explicitly guarantees, the Eleventh Amendment also incorporates the doctrine of sovereign immunity. *See Hans v. Louisiana*, 134 U.S. 1, 13-14 (1890). Thus, the Amendment "guarantees that 'an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.'" *Bd. of Regents v. Phoenix Int'l Software, Inc.,* 653 F.3d 448, 457 (7th Cir. 2011) (quoting *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974)).

The Eleventh Amendment's bar on citizens suing their state, however, is not complete. There are several common exceptions that allow plaintiffs to pursue claims against a state or its agents. One such exception was first articulated in *Ex Parte Young*, 209 U.S. 123 (1908). There, the Supreme Court held that the Eleventh Amendment does not preclude claims against state officials for prospective, injunctive relief to stop ongoing violations of federal law. *Ex Parte Young*, 209 U.S. at 159-60. While a federal court cannot order a state to pay retrospective damages, it can require a state officer to prospectively comply with federal law, even when that compliance might require the state to expend funds. *See Milliken v. Bradley*, 433 U.S. 267, 289-90 (1977).

This is what plaintiffs seek here. Plaintiffs sue Director Norwood in her official capacity as defendant.[2] In these cases, plaintiffs seek declaratory and injunctive relief requiring defendant Norwood to process applications and provide benefits in accordance with the Medicaid Act and its implementing regulations. Importantly, plaintiffs are not requesting money damages for past violations, nor are they attempting to bring state claims against a state actor in federal court. Rather, plaintiffs seek to stop defendant's ongoing conduct—or, in this case, inaction—that they allege violates federal law. They ask me to declare defendant's conduct unlawful and issue an injunction "requiring [defendant] to arrange for medical assistance and nursing facility services" for plaintiffs. Pls.' 2d Am. Compl. at 16 [Case No. 1:16-cv-9837; ECF No. 21]. The Eleventh Amendment permits such relief.

In sum, the prospective equitable relief that plaintiffs seek against Director Norwood in her official capacity is

---

[2] In Case No. 1:16-cv-9837, Case No. 1:16-cv-10614, Case No. 1:16-cv-9922, Case No. 1:17-cv-0104, and Case No. 1:17-cv-0640, plaintiffs sue only Director Norwood. In the other two, Case No. 1:16-cv-9842 and Case No. 1:16-cv-10255, plaintiffs also name the Illinois Department of Healthcare and Family Services as a defendant. As defendant notes, HFS, as a state agency, is an arm of the state of Illinois, and therefore may not be sued by its citizens in federal court. *See Edelman*, 415 U.S. at 663; *Burrus v. State Lottery Comm'n of Ind.*, 546 F.3d 417, 420 (7th Cir. 2008).

permitted under *Ex Parte Young*. This court therefore has jurisdiction to hear these matters.

B. Failure to State a Claim

In her motion to dismiss, defendant asserts that the complaints fail to state claims for several reasons. First, defendant challenges the healthcare providers' authority to file suit, arguing that they are not the real parties in interest and do not have statutory authority to sue on the patient plaintiffs' behalves. Second, defendant argues that plaintiffs fail to sufficiently plead Count II in each complaint, concerning the provision of required medical assistance. Finally, defendant contends that Count III in each complaint, concerning the prompt delivery of Medicaid benefits, fails to state a claim because the applicable provision of the Medicaid statue does not create enforceable rights and, even if it did, plaintiffs do not provide sufficient allegations.

### 1. Real Party in Interest/Authority to Bring Suit

Defendant argues that dismissal is required because the healthcare provider plaintiffs are not the real parties in interest and cannot sue on their patients' behalves. Def.'s Reply at 3-5. This argument fails because it ignores the patients' participation in these suits. Defendant focuses on the status of the institutional plaintiffs, but she notably does not contend that the real parties in interest—the nursing home

9

patients—are absent from this litigation. On the contrary, the patients are plaintiffs in these lawsuits. Because the real parties in interest are prosecuting their own claims, no counts require dismissal. *See* Fed. R. Civ. P. 17(a).

In any event, I also find that the patient plaintiffs may authorize their representatives to pursue litigation to secure Medicaid benefits. I reach this conclusion by looking to the Medicaid statute and regulations. *See In re Davis,* 194 F.3d 570, 578 (5th Cir. 1999) ("[A]n entity is the real party in interest when it is statutorily authorized to bring suit to enforce a claim. . . . The statutory right to sue must stem from the substantive law controlling the action and may be granted by either state or federal law"); *New York v. Cedar Park Concrete Corp.,* 665 F. Supp. 238, 241 (S.D.N.Y. 1987) (citing 3A J. Moore & J. Lucas, *Moore's Federal Practice*, ¶ 17.14 (2d ed. 1986)) ("Under Rule 17(a), a party may sue on behalf of one it represents as long as the relevant underlying federal and state statutes authorize such a suit."). The Social Security Act, of which Medicaid is a part, directs the Secretary of Health and Human Services ("HHS") to publish rules and regulations "necessary to the efficient administration" of the federal programs that HHS is charged with overseeing. 42 U.S.C. § 1302. Pursuant to this authority, HHS published 42 C.F.R. § 435.923, which permits a Medicaid applicant or beneficiary to authorize a

10

representative to act on his or her behalf "in applying for and

maintaining coverage." 78 Fed. Reg. 42174 (July 15, 2013). This

representative can be an individual or an organization. 42

C.F.R. § 435.923(b).[3] The regulations permit authorized

representatives to perform the following tasks for Medicaid

applicants and beneficiaries:

> (1) Sign an application on the applicant's behalf;
> (2) Complete and submit a renewal form;
> (3) Receive copies of the applicant or beneficiary's
> notices and other communications from the agency;
> (4) Act on behalf of the applicant or beneficiary in
> all other matters with the agency.

42 C.F.R. § 435.923(b). The Federal Register entries regarding

this provision state that the applicant or beneficiary

ultimately defines the scope of any representation within the

limits of the regulation.[4] 78 Fed. Reg. 42175 (July 15, 2013).

The regulatory text does not explicitly address whether a

patient can authorize a Medicaid representative to file a

---

[3] *See also* 78 Fed. Reg. 42174 (July 15, 2013) ("We believe that
there are situations in which an individual may need an
organization to serve as his or her authorized representative
and it is appropriate for an organization to serve in this
capacity, such as for individuals residing in a nursing home who
do not have family available to assist them.").

[4] The regulatory history also clarifies that states are not
permitted to impose additional requirements on this
representative relationship. 78 Fed. Reg. 42174 ("[S]tates may
not limit authorized representatives to individuals identified
in such a legal document or granted authorization under
operation of state law or otherwise impose requirements other
than those listed in § 435.923 on other individuals whom an
applicant or beneficiary wishes to have serve as his or her
authorized representative."). 11

10

lawsuit on his or her behalf. Defendant argues that the phrase
"matters with the agency" in 42 C.F.R. § 435.923(b)(4) should be
construed to exclude bringing a suit against the agency.
Plaintiffs counter that permitting authorized representatives to
bring claims against the agency is necessary to ensure that
beneficiaries can secure the Medicaid benefits to which they are
entitled. The regulations might not explicitly sanction
lawsuits, plaintiffs argue, but they also do not limit a
beneficiary's power to assign authority to his or her
representative.

Defendant's restrictive interpretation of the authorized
representative relationship does not comport with the language
and purpose of the regulation. 42 C.F.R. § 435.923(b) provides
three specific examples of duties that an authorized
representative may perform in the course of representation,
followed by one catch-all provision. The catch-all clause is
written in broad terms. It states that a beneficiary can choose
to authorize her representative to handle "all other matters
with the agency." 42 C.F.R. § 435.923(b)(4). It is the
beneficiary who sets the limits of representation, *see* 78 Fed.
Reg. 42175, and the expansive language of this provision
apparently permits beneficiaries to set these parameters quite
broadly.

There is no indication that the words "with the agency" were included in the regulatory text to limit authorized activities to those internal to the applicable agency. Litigation arguably involves "matters with the agency" as well. A beneficiary's legal claim that an agency has deprived her of Medicaid benefits, for instance, is a matter in dispute with that agency. While the first three tasks listed in 42 C.F.R. § 435.923(b) are likely more common activities performed by authorized representatives, there is room in the regulation's text for the representative relationship, in unusual cases such as these, to require additional steps, like litigation, to secure a beneficiary's rights. So long as the beneficiary gives express authorization to his or her representative, as required by 42 C.F.R. § 435.923(a), the Medicaid regulations allow the authorized representative to initiate suit on the beneficiary's behalf. The healthcare provider plaintiffs may therefore remain in these suits.

## 2. Failure to provide medical assistance

In Count II of their complaints, plaintiffs allege that defendant, in her official capacity as the Director of HFS, has failed to comply with the Medicaid Act's requirement under 42 U.S.C. § 1396a(a)(10)(A) that certain medical assistance, including nursing facility services, be made available to Medicaid-eligible individuals. Defendant acknowledges that a

13

private right of action exists to enforce section 1396a(a)(10)(A). Def.'s Memo at 9 [Case No. 1:16-cv-9837; ECF No. 37]; Def.'s Reply at 8 n.3 [Case No. 1:16-cv-9837; ECF No. 45].[5] However, she contends that plaintiffs have not sufficiently pled violations of this section and, consequently, have failed to state claims upon which relief can be granted. Def.'s Reply at 8. Specifically, defendant argues that the complaints contain no allegations that Director Norwood has failed to authorize necessary nursing facility services, nor any allegations that the patient plaintiffs have been denied these services. *Id.*

Defendant misstates plaintiffs' allegations. The complaints do, in fact, contain allegations concerning defendant's failure to provide nursing facility services to the patient plaintiffs. For example, in the lead complaint, plaintiffs identify Clint Daugherty as a patient who has not received necessary medical assistance from HFS. Plaintiff Daugherty "suffers from chronic and severe medical conditions" and requires "twenty-four hour skilled nursing care" for which he is unable to pay. Pls.' 2d

---

[5] The Seventh Circuit has, indeed, held that the provision plaintiffs cite—42 U.S.C. § 1396a(a)(10)(A)—creates enforceable individual rights by requiring state Medicaid plans to "provide . . . for making medical assistance available . . . to all [eligible] individuals." *Bontrager v. Indiana Family & Soc. Servs. Admin.,* 697 F.3d 604, 606-07 (7th Cir. 2012); *Miller v. Whitburn*, 10 F.3d 1315, 1319-20 (7th Cir. 1993); *see also Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 975-76 (holding that 42 U.S.C. § 1396a(a)(23) also creates an enforceable right).

13

Am. Compl. ¶¶ 5, 23 [Case No. 1:16-cv-9837; ECF No. 21]. Despite submitting a Medicaid application on June 28, 2016, Mr. Daugherty had not received public assistance by the time the second amended complaint was filed on January 11, 2017. *Id.* ¶¶ 5, 26. As a result, plaintiffs state that Daugherty had an outstanding balance of $31,003.68 for the nursing care he received at Doctors Nursing and Rehabilitation Center, LLC. *Id.* ¶ 5. Defendant Norwood's failure to timely process Medicaid applications like plaintiff Daugherty's, plaintiffs allege, has resulted in Medicaid eligible individuals not receiving necessary medical assistance from the state of Illinois plan, as required by 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4). *Id.* ¶¶ 23-34, 51-53. Plaintiffs therefore claim that defendant Norwood has deprived the patient plaintiffs of their right to nursing facility care under the color of state law. These factual allegations are sufficient to survive a motion to dismiss.

### 3. Failure to timely provide medical services

In Count III of each complaint, plaintiffs bring a section 1983 claim alleging that defendant has violated their rights under 42 U.S.C. § 1396a(a)(8) by failing to issue eligibility determinations and provide medical assistance with reasonable promptness. Defendant argues that plaintiffs have no private right of action under section 1983 to enforce these timeliness provisions. Defendant further asserts that, even if a private

15

right of action were available, plaintiffs have not sufficiently alleged violations of the timeliness provisions.

The Medicaid Act requires that benefits be provided promptly. States that participate in Medicaid must "provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8). The Medicaid regulations clarify the meaning of "reasonable promptness" by providing time limitations for certain agency actions. For instance, state Medicaid agencies have ninety days to determine the eligibility of applicants who apply for Medicaid on the basis of disability and forty-five days to determine the eligibility of all other applicants. 42 C.F.R. § 435.912(c)(2). They must "promptly and without undue delay consistent with [these] timeliness standards . . . furnish Medicaid to eligible individuals" who apply. 42 C.F.R. § 435.911(c)(1); *see also* 42 C.F.R. § 435.930. State agencies must also pay all Medicaid claims within 12 months of the date of receipt. 42 C.F.R. § 447.45(d). By requiring states to follow these and other timeliness standards, HHS ensures that Medicaid-eligible individuals receive benefits with reasonable promptness.

For plaintiffs to be able to privately enforce Medicaid's reasonable promptness requirement, as they seek to do here, 42 U.S.C. § 1396a(a)(8) must create an enforceable right appropriate for section 1983 prosecution. Section 1983 provides a "federal remedy against anyone who, under the color of state law, deprives 'any citizen of the United States . . . of any rights, privileges, or immunities secured by the Constitution and laws.'" *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012) (quoting 42 U.S.C. § 1983). It thus creates a private right of action for aggrieved persons to enforce federally-protected individual rights arising under federal statutes and the Constitution. *Maine v. Thiboutot*, 448 U.S. 1, 4-5 (1980); *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 508 (1990). "To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by [federal law] and must show that the alleged deprivation was committed by a person acting under color of state law." *L.P. v. Marian Catholic High Sch.,* 852 F.3d 690, 696 (7th Cir. 2017) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Section 1983 provides a means of enforcing federal *rights*, not vague or diffuse interests. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). To determine whether a federal statute creates individual rights appropriate for section 1983 enforcement,

17

courts assess whether: (1) Congress intended the statutory provision to benefit the plaintiff; (2) the asserted right is not "so vague and amorphous that its enforcement would strain judicial competence"; and (3) the statutory provision employs mandatory, not precatory, language. *Planned Parenthood*, 699 F.3d at 972–73 (quoting *Blessing v. Freestone*, 520 U.S. 329, 340–41 (1997)). In short, the statute must contain unambiguous "rights-creating language." *Id.* at 973.

Applying these factors to 42 U.S.C. § 1396a(a)(8), many circuits have concluded that an enforceable right exists. *See Romano v. Greenstein*, 721 F.3d 373, 379 (5th Cir. 2013); *Doe v. Kidd*, 419 F. App'x 411, 416 (4th Cir. 2011), *reaff'g* 501 F.3d 348, 356-57 (4th Cir. 2007); *Sabree ex rel. Sabree v. Richman*, 367 F.3d 180, 183 (3d Cir. 2004); *Bryson v. Shumway*, 308 F.3d 79, 89 (1st Cir. 2002); *Doe v. Chiles*, 136 F.3d 709, 719 (11th Cir. 1998). The Seventh Circuit has stated that it assumes that 42 U.S.C. § 1396a(a)(8) creates an enforceable right. *See Bertrand ex rel. Bertrand v. Maram,* 495 F.3d 452, 457–58 (7th Cir. 2007).

Following the well-reasoned decisions of the circuits that have squarely decided this issue, I find that the reasonable promptness provision contains the necessary rights-creating language for section 1983 enforcement. First, the language Congress used in 42 U.S.C. § 1396a(a)(8) is unambiguously

intended to benefit specific individuals, namely all persons who meet the Medicaid eligibility standards. Here, the patient plaintiffs allege that they meet the Medicaid Act's eligibility standards. They can therefore be considered the intended beneficiaries. Second, the reasonable promptness provision is "not so 'vague and amorphous' that its enforcement would strain judicial competence." *Blessing*, 520 U.S. at 340-41. As the Fifth Circuit has explained, the statute and the accompanying regulations "clarify the scope of the 'reasonable promptness' duty." *Romano*, 721 F.3d at 379. Courts are therefore not left to guess what 42 U.S.C. § 1396a(a)(8) protects. Finally, the mandatory language of the reasonable promptness provision—the use of "shall" and "must"—indicates that Congress intended to impose a "binding obligation on the States." *Id.* Nothing in the statutory text suggests that this commitment to reasonable promptness was just aspirational or conditional. An enforceable right under section 1983 therefore exists.[6]

To the extent that defendant challenges the sufficiency of plaintiffs' allegations in Count III, these arguments fail for the same reasons they failed with respect to Count II. Plaintiffs have properly alleged violations of 42 U.S.C. §

---

[6] There is also no indication that Congress intended to foreclose section 1983 enforcement of the Medicaid Act. *See Wilder*, 496 U.S. at 522-23; *Planned Parenthood*, 699 F.3d at 974-75; *Doe v. Kidd*, 501 F.3d 348, 356 (4th Cir. 2007).

1396a(a)(8) by defendant Norwood, depriving them of their federally protected rights to reasonable promptness. Plaintiffs have identified specific Medicaid-eligible patients who have not received timely eligibility determinations or timely medical assistance. *See, e.g.,* Pls.' 2d Am. Compl. ¶¶ 5-11 [Case No. 1:16-cv-9837, ECF No. 21]. They have identified the medical services they require. *Id.* They have provided the application dates for these individuals and have alleged that they have not timely received the public assistance to which they are entitled. *Id.* ¶¶ 5-11, 23-34, 54-58. Plaintiffs have provided enough factual allegations to state their section 1983 claims.

III.

For the foregoing reasons, defendant's motion to dismiss is denied.

**ENTER ORDER:**

Elain E Bucklo

_____

**Elaine E. Bucklo**
United States District Judge

Dated: June 7, 2017

20

19

# APPENDIX "2"

VIRGINIA: IN THE CIRCUIT COURT OF THE CITY OF LYNCHBURG

CHARLIE HAYTHE,

Appellant

v.

Case No. CL17-322

DEPARTMENT OF MEDICAL
ASSISTANCE SERVICES,

Respondent.

## OPINION AND ORDER

On August 11, 2017, came the parties, Appellant, Charlie Haythe ("Mr. Haythe"), through his authorized representative, Centra Health ("Centra") d/b/a Summit Health Rehabilitation ("SHR") and Respondent, the Department of Medical Assistance Services ("DMAS"), to be heard upon the Respondent's Plea in Bar. After giving mature consideration to the parties' written motions, arguments at hearing, and supplemental briefs, the Court hereby DENIES Respondent's Plea, for the following reasons:

## STATEMENT OF CASE

On October 20, 2016, Charlie Haythe executed a document entitled "Designation of Authorized Representative," which authorized Summit Health and Rehab to represent him when applying for Medicaid benefits. Specifically, the designation allowed

[A]ny employees or agents of the facility, *including attorneys hired by the facility,* to now represent me when:

- initiating an application for Medicaid benefits;
- participating in all reviews of my eligibility for Medicaid benefits; and
- taking action as necessary to establish my eligibility for Medicaid.

22

(emphasis added). In addition, Mr. Haythe agreed that "any legal proceedings in regards to my Medicaid eligibility may be pursued *in my name* or in the name of the facility," including the facility's "taking action to remedy something that may prevent me from qualifying for Medicaid benefits." (emphasis added). He also waived any potential or actual conflicts of interest that might arise from that representation, and, perhaps most importantly, retained a degree of control over the representative by retaining the authority to cancel the designation at any time.

On February 26, 2016, SHR filed an application before the DMAS for Medicaid benefits. DMAS denied this application. SHR then filed a second application in September, 2016, which DMAS also denied due to lack of verification of authority to pursue the appeal.

On April 6, 2017, Charlie Haythe filed an appeal of the DMAS' decision in this Court. The application was filed "by and through his authorized representative, Centra Health d/b/a Summit Health Rehab [], and its counsel," and was signed by counsel for SHR, Kathleen Morris, an attorney in good standing with the Virginia bar, but was not signed by Mr. Haythe or by any attorney hired by him. In response, Respondent filed a Plea at Bar, contending that the application is invalid under two different theories: first, that a pleading signed by any person other than a party's attorney or an unrepresented party is invalid pursuant to Va. Code § 8.01-271; and second, that Centra has engaged in the unauthorized practice of law by attempting to represent Mr. Haythe before this Court.

## ANALYSIS

Va. Code § 8.01-271.1 provides in relevant part:

Except as otherwise provided in §§ 16.1-260 and 63.2-1901, every pleading, written motion, and other paper *of a party represented by an attorney* shall be signed by at least one attorney of record in his individual name . . . . A party *who is not represented by an attorney* . . . shall sign his pleading, motion, or other paper and state his address.

23

(emphasis added). While the statute clearly establishes signature requirements for two categories of parties—those represented by an attorney and those not represented by an attorney—it does not expressly preclude one party from representing another. Nor do the Supreme Court Rules of Virginia or the Virginia Code elsewhere preclude that possibility. For example, Va. Code § 8.01-08 expressly authorizes suits brought by minors through their "next friends," and Va. Code § 64.2-2025 authorizes guardians to bring suits in the name of their principal.

A small number of cases in Virginia and other jurisdictions—some of which have been cited by the parties in their briefs—have addressed the issue of a non-lawyer representing another in front of a tribunal. See *Aguilera v. Christian*, 280 Va. 486 (2010) (holding that a non-attorney neighbor may not sign a complaint on behalf of a party); *In re Marriage of Caballero*, 27 Cal. App.4th 1139 (1994) (holding that an attorney-in-fact may not act as an attorney on behalf of the principal); *Manheim v. Kipp*, 519 N.Y.S.2d 314 (N.Y. City Ct. 1997) (holding that a power of attorney did not grant the right to practice law in the state); *Kohlman v. Western Pennsylvania Hospital*, 652 A.2d 849 (1994) (holding that a plaintiff's attorney-in-fact, acting under power of attorney, engaged in unauthorized practice of law by commencing malpractice action). Each of these cases involved a layperson attempting to practice law on behalf of another party through some purported authorization: power of attorney, contract, consent, etc. In prohibiting the representation, each court cited the public policy interests in preventing non-lawyers from practicing law before a tribunal. However, none held that a layperson authorized to act on behalf of another cannot represent that person's interests in court through a licensed attorney.

This rationale—preventing a non-lawyer from *practicing law* before a tribunal—has been echoed by the Virginia State Bar in UPL Opinion 194, which construed Va. Code § 8.01-271.1 to

24

lawyer's authorized representation of another in court by counsel, the Court holds that the representation in this case is not unlawful.

We then turn to the validity of this representation agreement pursuant to 42 CFR § 435.923.[1] As discussed above, in his "Designation of Authorized Representative," Mr. Haythe authorized

> any employees or agents of [Centra], including attorneys hired by the facility, to now represent me when: initiating an application for Medicaid benefits; participating in all reviews of my eligibility for Medicaid benefits; [and] taking action as necessary to establish my eligibility for Medicaid.

Furthermore, Mr. Haythe agreed that "any legal proceedings in regards to my Medicaid eligibility may be pursued *in my name* or in the name of the facility," including the facility's "taking action to remedy something that may prevent me from qualifying for Medicaid benefits."

This designation does not exceed the scope of the authorized representations contemplated by 42 CFR § 435.923, which allows persons to designate authorized representatives to "assist[] with the individual's application and renewal of eligibility" for Medicaid benefits before the agency and "all other matters with the agency." As the DMAS is a party to this appeal, this is unquestionably a "matter . . . with" the agency. Furthermore, the purpose of this appeal falls squarely within the express language of the specific authorization in this case, which allows any "action to remedy something that may prevent me from qualifying

---

[1] 42 CFR § 435.923 provides that:

> The agency must permit applicants and beneficiaries to designate an individual or organization to act responsibly on their behalf in assisting with the individual's application and renewal of eligibility and other ongoing communications with the agency. . . . Applicants and beneficiaries may authorize their representatives to (1) Sign an application on the applicant's behalf; (2) Complete and submit a renewal form; (3) Receive copies of the applicant or beneficiary's notices . . . ; (4) Act on behalf of the applicant or beneficiary in all other matters with the agency.

for Medicaid benefits." Accordingly, this appeal is a valid application of Centra's authority on Mr. Haythe's behalf pursuant to the Authorized Representation agreement.

In reaching this conclusion, this Court is mindful of the fact that many of those in need of authorized representatives pursuant to 42 CFR § 435.923 are not equipped to pursue applications and appeals for Medicaid benefits on their own. Were this Court to apply the rationale of the Respondent in this Case, it would mean that a representative duly authorized by federal law to act on behalf of a Medicaid applicant would be disqualified the moment the case was appealed to a Virginia court—one of the most critical steps in an application process. For the reasons stated above, this Court cannot agree with this interpretation of the federal scheme.

Therefore, because Centra's representation of Mr. Haythe is both authorized by 42 CFR § 435.923 and not prohibited by Virginia law, and because the Petition for Appeal in this case was brought in the name of Mr. Haythe and signed by a Virginia bar member in good standing acting, the Respondent's Plea at Bar is DENIED.

The Clerk is directed to send a copy of this order to all counsel of record. Endorsement is dispensed with pursuant to Rule 1:13.

Entered this __1__ day of __November__, 2017.

_____ JUDGE
R/EDWIN BURNETTE, JR.

cc: Parties

A Copy, Teste:
Eugene C. Wingfield, Clerk
By:
_____ Deputy Clerk

26

# APPENDIX "3"

2018 WL 3815054
Court of Appeals of Ohio, Eighth District, Cuyahoga
County.

Persey TIGGS c/o Indianhills Healthcare Group,
Inc., Plaintiff-appellee
v.
OHIO DEPARTMENT OF JOB AND FAMILY
SERVICES, Defendant-appellant

No. 106022
|
RELEASED AND JOURNALIZED: August 9, 2018

**Synopsis**
**Background:** Long-term care facility, acting as
authorized representative of one of its residents, sought
review of a decision of the Ohio Department of Job and
Family Services (ODJFS) denying resident's
reapplication for Medicaid benefits, which had been
terminated due to the purported availability to resident of
the cash value of a life insurance policy. The Court of
Common Pleas, Cuyahoga County, No. CV-17-874398
modified decision rendered in favor of ODJFS. ODJFS
appealed.

**Holdings:** The Court of Appeals, Frank D. Celebrezze,
Jr., J., held that:

[1] as a matter of first impression in the state, facility had
standing to appeal to trial court the decision to deny
resident Medicaid benefits, and

[2] ODJFS lacked statutory authority to appeal trial court's
ruling that it had a duty to assist resident.

Affirmed in part and appeal dismissed in part.

Melody J. Stewart, J., concurred in part and dissented in
part and filed opinion.

West Headnotes (10)

[1]     **Administrative Law and Procedure**


Courts must give due deference to an
administrative interpretation formulated by an
agency that has accumulated substantial
expertise, and to which the General Assembly
has delegated the responsibility of implementing
the legislative command.

Cases that cite this headnote

[2]     **Administrative Law and Procedure**


The Court of Appeals' review in an
administrative appeal is limited to determining
whether the court of common pleas abused its
discretion in finding that the decision of the
administrative agency was supported by reliable,
probative, and substantial evidence.

Cases that cite this headnote

[3]     **Administrative Law and Procedure**


In reviewing an order of an administrative
agency, an appellate court's role is more limited
than that of a trial court reviewing the same
order; it is incumbent on the trial court to
examine the evidence but the appellate court is
to determine only if the trial court has abused its
discretion.

Cases that cite this headnote

[4]     **Appeal and Error**


When the Court of Appeals reviews a common
pleas court's decision in an administrative
appeal, its standard of review is far more
circumscribed than that employed by the court

28

of common pleas.

Cases that cite this headnote

[5] **Appeal and Error**



An administrative agency's appeal of a trial court's ruling on an administrative decision or order is permissible in a limited capacity. Ohio Rev. Code Ann. § 119.12(N).

Cases that cite this headnote

[6] **Appeal and Error**



Court of Appeals had jurisdiction to review trial court's ruling that long-term care facility had standing, as resident's authorized representative, to appeal denial of resident's application for Medicaid benefits; trial court's determination that facility had standing to represent resident in "all Medicaid-related matters" was implicitly a ruling as to interpretation of federal regulation governing appointment of authorized representatives. Ohio Rev. Code Ann. § 119.12(N); 42 C.F.R. § 435.923(b)(4).

Cases that cite this headnote

[7] **Public Assistance**



As a matter of first impression in the state, long-term care facility had standing to appeal to trial court the decision of the Ohio Department of Job and Family Services (ODJFS) to deny resident's application for Medicaid benefits; governing regulations allowed a Medicaid recipient to designate an organization to serve as his or her authorized representative, and resident executed authorized representative form that authorized facility to "take any action that may

be needed to ensure" his receipt of Medicaid benefits. Ohio Rev. Code Ann. § 5101.35(A)(2); 42 C.F.R. § 435.923(b); Ohio Admin. Code 5160:1-2-08(C)(1), 5160-1-33.

Cases that cite this headnote

[8] **Guardian and Ward**



A personal representative is said to stand in the shoes of the represented person.

Cases that cite this headnote

[9] **Pretrial Procedure**



A claim brought on behalf of a represented person depends on the represented person's standing to bring an action because the represented person is the real party in interest. Ohio Civ. R. 17(A).

Cases that cite this headnote

[10] **Appeal and Error**



Ohio Department of Job and Family Services (ODJFS) lacked statutory authority to appeal trial court's ruling that it had an obligation to assist resident of long-term care facility in accessing a life insurance policy the existence of which caused resident to be denied Medicaid benefits, and thus Court of Appeals lacked jurisdiction over ODJFS's appeal from that ruling; trial court's ruling did not turn on construing or interpreting any statutes or agency rules, but rather resulted from an application of various applicable statutes and agency regulations to the facts of the case. Ohio Rev. Code Ann. § 119.12(N); Ohio Adm. Code

5160:1-2-01(F)(5).

Cases that cite this headnote

Civil Appeal from the Cuyahoga County Court of Common Pleas, Case No. CV-17-874398.

**Attorneys and Law Firms**

Michael DeWine, Ohio Attorney General, BY: Rebecca L. Thomas, Assistant Attorney General, Health & Human Services Section, 30 East Broad Street, 26th Floor, Columbus, Ohio 43215, ATTORNEYS FOR APPELLANT.

Jennifer Coy, SB2 Inc., 1426 North Third Street, Suite 200, P.O. Box 5400, Harrisburg, Pennsylvania 17110, ATTORNEY FOR APPELLEE.

BEFORE: Celebrezze, J., E.A. Gallagher, A.J., and Stewart, J.

JOURNAL ENTRY AND OPINION

FRANK D. CELEBREZZE, JR., J.:

**\*1** { ¶ 1}  Defendant-appellant, the Ohio Department of Job and Family Services (hereinafter "appellant"), brings this appeal challenging the trial court's order modifying appellant's decision. After a thorough review of the record and law, this court affirms in part and dismisses in part.

**I. Factual and Procedural History**

{ ¶ 2}  Persey Tiggs (hereinafter "Tiggs") was a Medicaid recipient residing in a long-term care nursing facility, The Willows. In May 2013, Tiggs was adjudicated mentally incompetent and a guardianship was

appointed by the probate court. *See* Cuyahoga P.C. No. 2013GRD188248. In September 2015, Tiggs's Medicaid benefits were terminated because appellant became aware that Tiggs, as a beneficiary, had come into possession of a life insurance policy. This policy made Tiggs financially ineligible for Medicaid because Tiggs could liquidate the policy and receive a cash value.

{ ¶ 3}  On September 12, 2015, appellant sent Tiggs a notice stating that his Medicaid benefits were proposed to be terminated because of the life insurance policy. However, through an error, Tiggs continued to receive Medicaid benefits through August 2016.

{ ¶ 4}  On August 4, 2016, Tiggs's guardian, a relative of Tiggs, executed a "designation of authorized representative" form pursuant to Ohio Adm.Code 5160:1-2-08(C)(1), naming The Willows as Tiggs's authorized representative. On August 12, 2016, The Willows reapplied for Tiggs's Medicaid benefits and Tiggs's reapplication was subsequently denied on October 20, 2016, because of the life insurance policy.

{ ¶ 5}  Tiggs requested a state hearing to appeal the denial of his August 2016 reapplication. At issue was whether or not Tiggs had the ability to access the proceeds of the life insurance policy. Under the Medicaid rules, if Tiggs had access to the policy, the policy would be deemed a resource and because the cash surrender value of the policy ($5,289.40) exceeded Medicaid eligibility requirements, Tiggs would be ineligible for Medicaid.

{ ¶ 6}  The Willows represented Tiggs at the state hearing. The Willows, as Tiggs's authorized representative, argued that Tiggs was the insured under the policy but not the policy owner. The Willows further stated that the policy owner was deceased. The Willows also stated that at the probate level proceedings, Tiggs's guardian inquired of the probate court magistrate whether the magistrate would allow Tiggs access to the policy. The Willows stated that the probate court magistrate "preferred not" to allow Tiggs to access the policy. However, the state hearing officer noted that no proof was submitted at the hearing to support the probate court magistrate's statement.

{ ¶ 7}  On November 14, 2016, the hearing officer overruled Tiggs's appeal and found that the weight of the evidence supported denial of Tiggs's Medicaid benefits, noting the lack of evidence demonstrating that the life insurance policy could not be accessed by Tiggs through reasonable efforts. The state hearing decision did not address the merits of the September 2015 termination of

Medicaid benefits but ruled that because Tiggs was presently not eligible for Medicaid, his appeal of the September 2015 termination of Medicaid was moot.

**\*2 { ¶ 8}** Tiggs requested an administrative appeal challenging the state hearing decision. On appeal, Tiggs argued that the state hearing decision erred by not addressing the September 2015 termination of Tiggs's Medicaid benefits. The administrative appeal overruled this argument stating that because Tiggs was presently not eligible for Medicaid, his appeal of the September 2015 termination of Medicaid was moot. The administrative appeal also overruled Tiggs's appeal of the state hearing decision's findings that the insurance policy was not unavailable. The administrative appeal noted that:

> [w]hile [The Willows] testified that the probate court magistrate would not allow [Tiggs] access to the policy, there are no court documents or letters from the magistrate in [the] state hearing record. Without some evidence to support his claim that the policy is unavailable, we agree with the state hearing decision that the weight of the evidence supports the denial.

**{ ¶ 9}** The Willows filed a notice of appeal of the administrative appeal decision to the trial court. After holding oral arguments, the trial court issued an order modifying the December 15, 2016 administrative appeal decision. Specifically, the trial court ordered appellant to determine if either The Willows or Tiggs's guardian could assist in accessing the life insurance policy. Further, the trial court ordered that if neither The Willows nor Tiggs's guardian can assist with accessing the life insurance policy, then appellant is ordered to refer the matter to appellant's legal counsel for further review.

**{ ¶10}** Appellant filed this instant appeal requesting that this court reverse the trial court's order and affirm the administrative appeal decision. Here, appellant raises the following assignments of error for review:

(1) The lower court wrongly concluded that Mr. Tiggs's nursing facility could bring an appeal in court to challenge the termination of his Medicaid benefits.

(2) The lower court wrongly entertained the nursing home's argument that Mr. Tiggs's life insurance policy was inaccessible due to his incompetence and that this triggered a duty to assist on the part of the agency.

(3) The lower court wrongly concluded that the agency

had an obligation under Ohio Adm.Code 5160:1-2-01(F)(5) to determine whether someone was available to assist Mr. Tiggs in accessing his life insurance policy.

## II. Law and Analysis

**{ ¶ 11}** The Medicaid program provides "federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." *Harris v. McRae*, 448 U.S. 297, 301, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980); *see also Wisconsin Dept. of Health & Family Servs. v. Blumer*, 534 U.S. 473, 479, 122 S.Ct. 962, 151 L.Ed.2d 935 (2002). Specific to the instant case, Ohio's Medicaid eligibility requirements are defined within R.C. Chapter 5163, which authorizes appellant to act as the sole state agency to supervise the administration of the Medicaid program, and to promulgate rules relating to Medicaid eligibility.

**{ ¶ 12}** "R.C. 5101.35 authorizes an administrative appeal from the Ohio Department of Job and Family Services' decision [on Medicaid eligibility issues]." *Clark v. Ohio Dept. of Job & Family Servs.*, 8th Dist. Cuyahoga, 2017-Ohio-9173, 101 N.E.3d 1238, ¶ 7-8. As we recently noted in *Clark*:

> "An appellant is first entitled to a state hearing by the ODJFS. R.C. 5101.35(B). That decision may be appealed to the director of the ODJFS. R.C. 5101.35(C). An appellant who disagrees with the administrative appeal decision of the director (or the director's designee) may appeal the decision to the court of common pleas, pursuant to R.C. 119.12. R.C. 5101.35(C)."

**\*3** [1]*Clark* at ¶ 3, fn. 1, quoting *Rodefer v. McCarthy*, 2015-Ohio-3052, 36 N.E.3d 221, ¶ 35 (2d Dist.). *See also George v. Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 04AP-351, 2005-Ohio-2292, 2005 WL 1109658, ¶ 32. The trial court must then conduct a hearing, consider the entire record, and must affirm an agency's decision where it is supported by "reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12. *See also Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 109-110, 407 N.E.2d 1265 (1980). " '[C]ourts * * * must give due deference to an administrative interpretation formulated by an agency that has accumulated substantial expertise, and to which the General Assembly has delegated the responsibility of

implementing the legislative command.' " *Bernard v. Unemp. Comp. Rev. Comm.*, 136 Ohio St.3d 264, 2013-Ohio-3121, 994 N.E.2d 437, ¶ 12, quoting *Swallow v. Indus. Comm. of Ohio*, 36 Ohio St.3d 55, 57, 521 N.E.2d 778 (1988). *See Jones Metal Prods. Co. v. Walker*, 29 Ohio St.2d 173, 181, 281 N.E.2d 1 (1972) (finding that deference is afforded to an administrative agency's interpretation of its own rules and regulations if such an interpretation is consistent with statutory law and the plain language of the rule itself).

[2] [3]{ ¶ 13}   A court of appeals' review is more limited, determining only whether the court of common pleas abused its discretion in finding that the decision of the administrative agency was supported by reliable, probative, and substantial evidence. *Kinasz-Reagan v. Ohio Dept. of Job & Family Servs.*, 164 Ohio App.3d 458, 2005-Ohio-5848, 842 N.E.2d 1067, fn. 2 (8th Dist.), citing *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993). As the Ohio Supreme Court stated:

> In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only if the trial court has abused its discretion.

[4]*Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 260-261, 533 N.E.2d 264 (1988). Thus, when a court of appeals reviews a common pleas court's decision in an administrative appeal, its standard of review is far more circumscribed than that employed by the court of common pleas. *See Farran v. Cleveland Civ. Serv. Comm.*, 8th Dist. Cuyahoga No. 99851, 2014-Ohio-823, 2014 WL 888427, ¶ 2.

[5]{ ¶ 14}   An administrative agency may also appeal a trial court's decision; however, such an appeal is permissible in a limited capacity. R.C. 119.12 specifically grants an administrative agency a limited right of appeal to a court of appeals from judgments of the common pleas court. R.C. 119.12(N) states, in relevant part:

> An appeal by the agency shall be taken on questions of law relating to the constitutionality, construction, or interpretation of

statutes and rules of the agency, and, in the appeal, the court may also review and determine the correctness of the judgment of the court of common pleas that the order of the agency is not supported by any reliable, probative, and substantial evidence in the entire record.

{ ¶ 15}   In the instant case, because appellant is an administrative agency appealing the trial court's ruling, prior to addressing appellant's assignments of error, we will consider whether we have jurisdiction to hear appellant's assignments of error in accordance with our limited review pursuant to R.C. 119.12(N).

### A. Jurisdiction

[6]{ ¶ 16}   Appellant in its first assignment of error argues that The Willows, as Tiggs's administratively designated authorized representative, had no authority to appeal to the trial court under R.C. 5101.35. More specifically, appellant argues that pursuant to R.C. 5101.35(E), only an "appellant" may pursue a judicial appeal of an administrative appeal decision.

*4 { ¶ 17}   In our review of R.C. 119.12(N), we note that we have jurisdiction to hear appellant's first assignment of error. The trial court found that Tiggs designated The Willows to act as his authorized representative and that The Willows was therefore able to represent Tiggs in "all Medicaid-related matters." Therefore, because the trial court ruled that The Willows had standing to pursue Tiggs's appeal, it implicitly made a finding as to the interpretation of a statute, specifically 42 C.F.R. 435.923(b)(4). The trial court's ruling went to the scope of the statute, and in particular, the broadness of the phrase "all Medicaid-related matters." Undeniably, such a ruling goes to the interpretation of the phrase "all Medicaid-related matters," and thus goes to an interpretation of the statute itself. Therefore, the trial court ruling falls within one of the appealable issues enumerated in R.C. 119.12(N).

## B. Authorized Representative Standing

{ ¶ 18}  Having found that we have jurisdiction to hear appellant's first assignment of error, we now must review the trial court's determination that The Willows, as Tiggs's authorized representative, had standing to appeal to the trial court. An authorized representative's duties are derived from 42 C.F.R. 435.923(b) and its Ohio counterpart Ohio Adm.Code Chapter 5160. 42 C.F.R. 435.923(b) specifically provides in relevant part that:

> [a]pplicants and beneficiaries may authorize their representatives to — (1) [s]ign an application on the applicant's behalf; (2) [c]omplete and submit a renewal form; (3) [r]eceive copies of the applicant or beneficiary's notices and other communications from the agency; (4) [a]ct on behalf of the applicant or beneficiary in all other matters with the agency.

Ohio Adm.Code 5160-1-33 states that:

(A)(1)  [a]n individual may designate any person or organization to serve as that individual's authorized representative. Any person serving as an authorized representative must be at least eighteen years or older.

(2)  Authority for a person or organization to act on behalf of the individual accorded under state law, including but not limited to, a court order establishing legal guardianship, must be treated as a written designation by the individual of authorized representation.

(3)  The designation of an authorized representative must be in writing, and must identify what duties the individual is authorizing the representative to perform.

(4)  If the designated authorized representative is unwilling or unable to accept the responsibility of being an authorized representative, the authorized representative must inform the administrative agency and the individual of the refusal or withdrawal.

(B)  The authorized representative: * * * (4) [s]tands in the place of the individual. Any responsibility of the individual is a responsibility of the authorized representative. Any action taken by the authorized representative or failure to act will be accepted as the action or lack of action of the individual.

(5)  Shares all responsibilities set out in rule 5160:1-2-08 of the Administrative Code.

{ ¶19}  In the instant case, appellant argues that pursuant to the relevant Medicaid federal regulations, an authorized representative can only act on behalf of the Medicaid recipient at the agency level, not in subsequent litigation at the trial court level. The trial court disagreed with appellant and found that The Willows, as Tiggs's authorized representative, was capable of representing Tiggs in "all Medicaid-related matters," which included the appeal of the administrative agency decision before the trial court.

{ ¶ 20}  In making this determination, the trial court relied solely upon a recent federal court decision, *Doctors Nursing & Rehab. Ctr. v. Norwood*, N.D.Ill. No. 1:16-cv-9837, 2017 WL 2461544 (June 7, 2017). In *Norwood*, the nursing facility, as the authorized representative, argued that although the federal Medicaid regulations do not explicitly allow lawsuits by authorized representatives, the regulations do not limit a beneficiary's power to assign such authority. *Norwood* at *4. The court stated that the agency's "restrictive interpretation of the authorized representative relationship does not comport with the language and purpose of the regulation." *Id.* Further, the court stated that the "catch-all provision" within 42 C.F.R. 435.923(b) is "written in broad terms" and thus a "beneficiary can choose to authorize her representative to handle 'all other matters with the agency.' " *Norwood* at *4, quoting 42 C.F.R. 435.923(b). Indeed, the court added that "it is the beneficiary who sets the limits of representation * * * and the expansive language of this provision apparently permits beneficiaries to set these parameters quite broadly." *Norwood* at *4.

**\*5** { ¶ 21}  In this case, the trial court adopted the reasoning in *Norwood* and ruled that by signing the "designation of authorized representative form," Tiggs designated The Willows as his authorized representative in all matters related to Medicaid, including Tiggs's appeal to the trial court.

{ ¶ 22}  We note, as did the trial court, that this specific issue has not been addressed by this court, or throughout Ohio and thus, the trial court was diligent in seeking guidance outside the jurisdiction. In our review of the trial court's decision, we cannot say that the trial court misinterpreted the statute as laid out in *Norwood*. More specifically, we find that the trial court's determination that Tiggs authorized the Willows to represent him in all Medicaid-related matters, including the appeal to the trial court, was not a misinterpretation of 42 C.F.R. 435.923(b) or Ohio Adm.Code Chapter 5160.

{ ¶ 23}  In relying upon *Norwood*, the trial court found that appellant's position "goes against any notion of due process or fairness." Appellant argued that an authorized representative can only assist a Medicaid applicant or recipient with processes actually at the agency level. However, the trial court did not find this interpretation persuasive and stated that "[i]t is illogical to permit an authorized representative to pursue all matters with [appellant] only to be stopped short when it comes to the final determination as to [Tiggs's] benefits."

{ ¶ 24}  We note, in our review of applicable case law, that the present case is distinguishable from this court's decision in *Santa v. Ohio Dept. of Human Servs.*, 136 Ohio App.3d 190, 736 N.E.2d 86 (8th Dist.2000). In *Santa*, the trial court issued a judgment ruling that a son could not appeal the termination of his mother's Medicaid benefits. This court agreed with the trial court's analysis that plaintiff mother's estate representative, and not the son, was the real party in interest to bring the action in the trial court. However, this court noted that the trial court did not have jurisdiction to even entertain the administrative appeal from the son and explained that:

> [t]he substantive claim for relief presented [was that mother] was eligible for Medicaid benefits. This claim was properly advanced by the then-living [mother] through her attorney-in-fact [her son], by virtue of the durable power of attorney. However, upon the death of [mother] * * * the durable power of attorney given to [son] lapsed. At that point, [son] had no legal authority to act on behalf of his deceased mother's interests (i.e., application for Medicaid benefits) which survived her death.

*Santa* at 193, 736 N.E.2d 86. Thus, this court reversed the trial court's judgment for lack of jurisdiction.

[7]  [8]  [9]{ ¶ 25}  "A personal representative is said to 'stand in the shoes' of the represented person." *Estate of Oscar Hunter v. Ohio Dept. of Job & Family Servs.*, 8th Dist. Cuyahoga No. 105851, 2018-Ohio-1969, 2018 WL 2278229, ¶ 7, citing *McDonald v. State Farm Mut. Auto. Ins. Co.*, 8th Dist. Cuyahoga No. 76808, 2000 WL 1144972, *6 (Aug. 10, 2000). In the instant case, we find that the Medicaid eligibility claim, which is the substantive claim for relief presented at the trial court, was properly advanced by the party in interest, Tiggs

through his authorized representative, The Willows. "A claim brought on behalf of a represented person depends on the represented person's standing to bring an action because the represented person is the real party in interest." *Hunter* at ¶ 7, citing Civ.R. 17(A).

**\*6** { ¶ 26}  In support of the trial court's interpretation, we note the plain reading of R.C. 5101.35(A)(2), which states that an "[a]ppellant" who may appeal an administrative agency's decision to the trial court "means an applicant, participant, former participant, recipient, or former recipient of a family services program who is entitled by federal or state law to a hearing regarding a decision or order of the agency that administers the program." Furthermore, we note that Ohio Adm.Code 5160:1-2-08(C)(1) states that "[a]n individual may designate an authorized representative, in writing, to stand in place of the individual and act with authority on behalf of the individual."

{ ¶ 27}  Our review of the record also demonstrates that Tiggs executed an authorized representative form which, pursuant to *Norwood*, sets the limits of the authorized representative's representation. The authorized representative form that Tiggs executed states: "I [Tiggs] authorize this person or company [The Willows] to do the following on my behalf: take any action that may be needed to ensure that I receive or continue to receive the [Medicaid] benefits indicated above."

{ ¶ 28}  Based on the foregoing analysis, we cannot say that the trial court erred in its statutory interpretation when it found The Willows, as Tiggs's authorized representative, had standing to the appeal to the trial court. Accordingly, The Willows had authority to appeal to the trial court under R.C. 5101.35 and appellant's first assignment of error is overruled.


## C. Agency Duty to Assist

[10]{ ¶ 29}  In appellant's second assignment of error, appellant argues that the trial court wrongly concluded that due to Tiggs's incompetence, appellant had a duty to assist Tiggs. Additionally, in appellant's third assignment of error, appellant argues that the trial court wrongly concluded that it had an obligation under Ohio Adm.Code 5160:1-2-01(F)(5) to determine whether someone was available to assist Tiggs in accessing his life insurance policy. As these assignments of error are interrelated, we will discuss them collectively.

{ ¶ 30}  As noted above, because appellant appeals the trial court's decision, we must determine whether we have jurisdiction to consider this appeal pursuant to R.C. 119.12(N). The Supreme Court of Ohio has further articulated that R.C. 119.12 "allows an agency the right to appeal *only* on questions of law pertaining to state statutes as well as rules and regulations which were promulgated by the agency." (Emphasis added.) *Miller v. Dept. of Indus. Relations*, 17 Ohio St.3d 226, 227, 479 N.E.2d 254 (1985).

{ ¶ 31}  Furthermore, the Tenth District has ruled that "it is not enough that there be a final order, nor is it enough that the appeal be on 'questions of law' as is true for the ordinary litigant." *Mentor Marinas, Inc. v. Bd. of Liquor Control*, 1 Ohio App.2d 219, 222, 204 N.E.2d 404 (10th Dist.1964). "The key is that the trial court actually rule on a question of law that pertains to the constitutionality, construction or interpretation of a statute or agency rule." *Enertech Elec., Inc. v. W. Geauga Bd. of Edn.*, 10th Dist. Franklin No. 96APE03-370, 1996 WL 506825, at *2 (Sept. 3, 1996). *See also Wolff v. Ohio Dept. of Job & Family Servs.*, 165 Ohio App.3d 118, 2006-Ohio-214, 844 N.E.2d 1238, ¶ 9 (10th Dist.) (where the Tenth District concluded that "the mere application of the law to the facts does not constitute 'interpretation' within the meaning of R.C. 119.12; there must be a genuine question presented and a specific finding by the trial court as to the meaning of the statute or rule."). *See also Ramey v. Ohio State Bd. of Chiropractic Examiners*, 10th Dist. Franklin No. 94APE10-1512, 1995 WL 458957 (Aug. 3, 1995) (where the Tenth District concluded that the existence of a physician-patient relationship was a question of law for the trial court but that it did not involve the constitutionality, construction, or interpretation of a statute or agency rule, thus the appellate court lacked jurisdiction and dismissed the agency's appeal).

**\*7** { ¶ 32}  In our review of the applicable case law, we find the aforementioned Tenth District cases instructive and persuasive. In our review of the record, we note that the trial court's decision did not turn on construing or interpreting any statutes or agency rules. *Miami-Jacobs Career College v. Ohio Bd. of Nursing*, 10th Dist. Franklin No. 11AP-544, 2012-Ohio-1416, 2012 WL 1078920. Indeed, the trial court simply analyzed Ohio Adm.Code Chapter 5160 in light of the facts of the case and thereafter applied various applicable statutes and agency regulations to those facts. The trial court noted that Tiggs was adjudicated incompetent in 2013, and he cannot access the insurance policy by himself. The trial court then went on to further apply various agency regulations to the facts of the case. In doing so, the trial

court examined the Ohio Administrative Code and concluded that it is incumbent upon appellant to "determine if another person is available to assist with obtaining verifications or accessing the individuals' means of self-support." Ohio Adm.Code 5160:1-2-01(F)(5)(a). In other words, given the specific facts of the case, the trial court concluded that, pursuant to its analysis of the relevant agency regulations, appellant had additional duties it failed to undertake. As such, the trial court's decision was undoubtedly based on a question of law. *Ramey*. However, the question of law on which the trial court's decision relied did not involve the constitutionality, construction, or interpretation of a statute or agency rule. *Id.*

{ ¶ 33}  Accordingly, appellant lacks statutory authority pursuant to R.C. 119.12 to bring its appeal on its second and third assignments of error and we lack jurisdiction to consider whether the trial court erred by finding that appellant had a duty to assist Tiggs in determining whether or not the insurance policy was accessible to Tiggs. *Miami-Jacobs Career College*. Therefore, appellant's second and third assignments of error are disregarded.

### III. Conclusion

{ ¶ 34}  After a thorough review of the record and law, we cannot say that the trial court erred in its interpretation of 42 C.F.R. 435.923(b)(4) when it found that The Willows, Tiggs's authorized representative, was able to represent Tiggs in all Medicaid-related matters, including the appeal to the trial court. Furthermore, we lack jurisdiction to consider appellant's second and third assignment of error. Accordingly, appellant's first assignment of error is overruled and appellant's second and third assignments of error are disregarded.

{ ¶ 35}  Judgment affirmed in part and dismissed in part.

EILEEN A. GALLAGHER, A.J., CONCURS;

MELODY J. STEWART, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION

MELODY J. STEWART, J., CONCURRING IN PART

AND DISSENTING IN PART:

{ ¶ 36} I agree that The Willows has standing to represent Tiggs in this administrative appeal and concur with that portion of the majority opinion.

{ ¶ 37} I disagree that we lack jurisdiction under R.C. 119.12(N) to consider the second and third assignments of error in this appeal. The agency has the right to appeal questions of law, and the issue framed by the majority — that "appellant argues that the trial court wrongly concluded that [the agency] had an obligation under Ohio Adm.Code 5160:1-2-01(F)(5) to determine whether someone was available to assist Tiggs in accessing his life insurance policy" — invokes the interpretation of an administrative rule. Majority Opinion at ¶ 29. Ohio Adm.Code 5160:1-2-01(F)(5) requires the agency to assist with accessing verifications for Medicaid eligibility only if, among other things, the person seeking benefits "does not have a court-appointed guardian or a person with other legal authority and obligation to act on behalf of the individual[.]" The parties agree that Tiggs had a court-appointed guardian over his person. The question raised by Tiggs was whether the agency had the obligation to assist him when it was made aware that his legal guardian was unable to access the life insurance policy. This is a question of law that is appealable under R.C. 119.12(N).

**\*8** { ¶ 38} Apart from the court of common pleas'

interpretation of an administrative rule being appealable, this appeal should go forward because the court of common pleas decision fails to address, consistent with the agency's argument, whether Tiggs waived the Ohio Adm.Code 5160:1-2-01(F)(5) issue by failing to raise it in the state hearing (he raised the issue for the first time, in a single sentence, at the end of his reply brief filed in the court of common pleas). It is well established that the failure to raise an issue at the state hearing level waives the issue on appeal to the court of common pleas. *See State ex rel. Schlegel v. Stykemain Pontiac Buick GMC, Ltd.*, 120 Ohio St.3d 43, 2008-Ohio-5303, 896 N.E.2d 143, ¶ 17-18, citing *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 679 N.E.2d 706 (1997); *Mulhausen v. Ohio Counselor, Social Worker & Marriage & Family Therapist Bd.*, 8th Dist. Cuyahoga No. 88776, 2007-Ohio-3917, 2007 WL 2205342, ¶ 14. The majority's narrow application of R.C. 119.12(N) bars the agency from seeking review of whether the common pleas court erred by ignoring Tiggs's failure to raise the Ohio Adm.Code 5160:1-2-01(F)(5) issue. In these circumstances, this, too, is a question of law that can be decided under R.C. 119.12(N).

**All Citations**

--- N.E.3d ----, 2018 WL 3815054, 2018 -Ohio- 3164

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX "4"



DESIGNATION OF AUTHORIZED REPRESENTATIVE

⊘ DATE: _____11·21·17_____

⊘ RESIDENT NAME: Dannah Norwood

⊘ SOCIAL SECURITY#: _____

⊘ FACILITY NAME: California Garden

⊘ FACILITY ADDRESS: 2829 California
CHIL 60608

To simplify the Medicaid application process, it can be helpful to designate a representative from the facility to act in the interests of the resident. This form authorizes specific person(s) from the facility to handle the resident's dealings with Medicaid.

I authorize __J. Chavez__ at the following facility __California Garden__ to be my authorized representative. I also authorize any employees or agents of the facility, including attorneys hired by the facility, to now represent me when:

- Initiating an application for Medicaid benefits

- Participating in all reviews of my eligibility for Medicaid benefits

- Taking action as necessary to establish my eligibility for Medicaid

I understand that the person acting as my authorized representative may change from time to time due to personnel or assignment changes. With this authorization, I agree that the facility, its employees and agents may secure a copy of all information necessary to assist in processing any applications for Medicaid on my behalf or to determine my eligibility for Medicaid benefits. This information may include any health information protected under HIPAA, or any of my personal financial and other information as needed.

I authorize the facility, its employees, and agents, to share my personal information to secure Medicaid benefits. I am waiving any and all claims of confidentiality over this information with respect to the facility, its employees and agents.

I understand and agree that any legal proceedings in regards to my Medicaid eligibility may be pursued either in my name or in the name of the facility. I waive any potential or actual conflicts of interest, which may exist from this appointment of authorized representation.

I also agree that any assistance provided does not prevent the facility and/or its attorneys from taking any actions necessary to recover unlawfully converted assets that may prevent me from qualifying for Medicaid benefits. It also does not prevent the facility or its attorneys from taking action to remedy something that may prevent me from qualifying for Medicaid benefits. Any information obtained by facility, while providing any assistance in regards to this authorization, may be used by the facility in any future action.

I understand that I may cancel this designation of an authorized representative at any time by notifying the authorized representative and the applicable county welfare agency in writing. Any facsimile, copy or photocopy of this authorization shall be as valid as the original.

SIGNATURE OF RESIDENT ▸ XDannah Norwood

PRINT NAME: Dannah Norwood

TITLE (if applicable): _____

# APPENDIX "5"

# Contract

### Between

## United States Department of Health and Human Services
## Centers for Medicare & Medicaid Services

## In Partnership with

## State of Illinois
## Department of Healthcare and Family Services

## and

———————————————

## Issued:  November 5, 2013

46

## *Table of Contents*

| | | |
|---|---|---|
| *1.* | *Definition of Terms* | *5* |
| *2* | *Section 2.  Contractor Responsibilities* | *26* |
| 2.1 | **Compliance and Program Integrity:** | **26** |
| 2.2 | **Contract Management and Readiness Review Requirements** | **28** |
| 2.3 | **Enrollment Activities** | **33** |
| 2.4 | **Covered Services** | **41** |
| 2.5 | **Care Delivery Model** | **42** |
| 2.6 | **Comprehensive Assessments and Individualized Care Plan** | **51** |
| 2.7 | **Provider Network** | **61** |
| 2.8 | **Network Management** | **70** |
| 2.9 | **Enrollee Access to Services** | **79** |
| 2.10 | **Enrollee Services** | **96** |
| 2.11 | **Enrollee Grievance** | **101** |
| 2.12 | **Enrollee Appeals** | **103** |
| 2.13 | **Quality Assurance Program** | **115** |
| 2.14 | **Marketing, Outreach, and Enrollee Communications Standards** | **146** |
| 2.15 | **Financial Requirements** | **158** |
| 2.16 | **Data Submissions, Reporting Requirements, and Surveys** | **160** |
| 2.17 | **Encounter Reporting** | **165** |
| 2.18 | **BEP Goals** | **167** |
| *3* | *CMS and Department Responsibilities* | *168* |
| 3.1 | **Contract Management** | **168** |
| 3.2 | **Enrollment and Disenrollment Systems** | **170** |
| *4* | *Payment and Financial Provisions* | *173* |
| 4.1 | **General Financial Provisions** | **173** |
| 4.2 | **Capitated Rate Structure** | **174** |
| 4.3 | **Medical Loss Ratio (MLR)** | **179** |
| 4.4 | **Payment Terms** | **181** |
| 4.5 | **Transitions between Rate Cells and Risk Score Changes** | **188** |
| 4.6 | **Reconciliation** | **189** |
| 4.7 | **Payment in Full** | **190** |
| *5* | *Section 5:  Additional Terms and Conditions* | *191* |
| 5.1 | **Administration** | **191** |

5.3      General Terms and Conditions ................................................ 204

5.4      Record Retention, Inspection, and Audit ............................... 217

5.5      Termination of Contract ........................................................ 218

5.6      Order of Precedence .............................................................. 221

5.7      Contract Term ....................................................................... 223

5.8      Amendments ........................................................................... 223

5.9      Written Notices ...................................................................... 224

*Section 6:  Appendices ............................................................................... 226*

APPENDIX A: COVERED SERVICES ...................................................... 227

APPENDIX B: ENROLLEE RIGHTS .......................................................... 240

APPENDIX C:  RELATIONSHIP WITH FIRST TIER, DOWNSTREAM, AND
RELATED ENTITIES ................................................................................... 243

APPENDIX D: UTILIZATION REVIEW/PEER REVIEW ............................ 249

APPENDIX E: ADDENDUM TO CAPITATED FINANCIAL ALIGNMENT
CONTRACT PURSUANT TO SECTIONS 1860D-1 THROUGH 1860D-43 OF THE
SOCIAL SECURITY ACT FOR THE OPERATION OF A VOLUNTARY MEDICARE
PRESCRIPTION DRUG PLAN ................................................................... 253

APPENDIX F: DATA USE ATTESTATION ................................................ 264

APPENDIX G: MODEL FILE & USE CERTIFICATION FORM .................... 266

APPENDIX H:  MEDICARE MARK LICENSE AGREEMENT .................... 267

APPENDIX I: SERVICE AREA .................................................................. 270

Appendix J:Taxpayer Identification Number Certification .............................. 271

APPENDIX K: Qualifications and Training Requirements of Certain Care Coordinators
..................................................................................................................... 273

APPENDIX L:  Illinois Department of Human Services, Division of Rehabilitation
Services Critical Incident Definitions ........................................................... 276

APPENDIX M: Illinois Department on Aging Elder Abuse and Neglect Program ......... 280

APPENDIX N: Illinois Department of Healthcare and Family Services Incident
Reporting for Supportive Living Facilities ..................................................... 281

This Contract, made on _____, 2013, is between the Department of Health and Human Services, acting by and through the Centers for Medicare & Medicaid Services (CMS), the State of Illinois, acting by and through the Department of Healthcare and Family Services (Department) and _____ (the Contractor). The Contractor's principal place of business is _____.

**WHEREAS**, CMS is an agency of the United States, Department of Health and Human Services, responsible for the administration of the Medicare, Medicaid, and State Children's Health Insurance Programs under Title XVIII, Title IX, Title XIX, and Title XXI of the Social Security Act;

**WHEREAS**, the Department is the Illinois agency responsible for operating a program of medical assistance under 42 U.S.C. § 1396 et seq., 305 ILCS 5/5-1 et seq. and 215 ILCS 106/1 et seq., designed to pay for medical services for eligible individuals;

**WHEREAS**, the Contractor is in the business of providing medical services, and CMS and the Department desire to purchase such services from the Contractor;

**WHEREAS**, the Contractor agrees to furnish these services in accordance with the terms and conditions of this Contract and in compliance with all federal and State laws and regulations;

**NOW, THEREFORE**, in consideration of the mutual promises set forth in this Contract, the Parties agree as follows:

## 1. Definition of Terms

1.1    820 Payment File – the electronic Health Insurance Portability and Accountability Act of 1996 (HIPAA) transaction that Contractor retrieves from the Department that identifies each Enrollee for whom payment was made by the Department to the Contractor.

1.2    834 Daily File – The electronic HIPAA transaction that the Contractor retrieves from the Department each day that reflects changes in enrollment subsequent to the previous 834 Enrollment File.

1.3    834 Enrollment File – The electronic HIPAA transaction that Contractor retrieves monthly from the Department that reflects its Enrollees for the following calendar month.

1.4    Abuse – (i) A manner of operation that results in excessive or unreasonable costs to the Federal or State health care programs, generally used in conjunction with Fraud; or (ii) the willful infliction of injury, unreasonable confinement, intimidation, or punishment with resulting physical harm, pain or mental anguish (42 C.F.R. § 488.301), generally used in conjunction with Neglect.

1.5    Activities of Daily Living (ADL) – Activities such as eating, bathing, grooming, dressing, transferring and continence.

1.6    Administrative Allowance – The portion of the Capitation, paid and allocated by the Department, for the administrative cost of the Contract attributable to the Medicaid component of the Contract.

1.7    Advance Directive – An individual's written directive or instruction, such as a power of attorney for health care or a living will, for the provision of that individual's health care if the individual is unable to make his or her health care wishes known.

1.8    Advanced Practice Nurse (APN) – A Provider of medical and preventive services, including Certified Nurse Midwives, Certified Family Nurse Practitioners and Certified Pediatric Nurse Practitioners, who is licensed as an APN, holds a valid license in Illinois, is legally authorized under statute or rule to provide services, is a Provider, and has a contract with the Contractor.

1.9    Adverse Action – (i) The denial or limitation of authorization of a requested service; (ii) the reduction, suspension, or termination of a previously authorized service; (iii) the denial of payment for a service; (iv) the failure to provide services in a timely manner; (v) the failure to respond to an Appeal

1.24    Chronic Health Condition – A health condition with an anticipated duration of at least twelve (12) months.

1.25    Cognitive Disabilities – A disability that may cover a wide range of needs and abilities that vary for each specific individual. Conditions range from individuals having a serious mental impairment caused by Alzheimer's disease, bipolar disorder or medications to non-organic disorders such as dyslexia, attention deficit disorder, poor literacy or problems understanding information. At a basic level, these disabilities affect the mental process of knowledge, including aspects such as awareness, perception, reasoning, and judgment.

1.26    Colbert Contractor – The contractor having a contract with the Department to implement the consent decree entered in *Colbert v. Quinn*, No. 07 C 4737 (N.D. Ill.) (Colbert consent decree).

1.27    Complaint – Any Complaint or dispute, other than one that constitutes an organization determination under 42 C.F.R. § 422.566, expressing dissatisfaction with any aspect of the Contractor's or Provider's operations, activities, or behavior, regardless of whether remedial action is requested. 42 C.F.R. § 422.561. Possible subjects for Complaints include, but are not limited to, a concern related to the health, safety or well-being of an Enrollee, quality of care or services provided, aspects of interpersonal relationships such as rudeness of a Primary Care Provider or employee of Contractor, or failure to respect the Enrollee's rights. Complaints may be received via a phone call, letter or personal contact from a Participant, Enrollee, family member, Enrollee representative or any other interested individual expressing a concern related to the health, safety or well-being of an Enrollee. See also "Grievance."

1.28    Computer Aided Real-time Translation (CART) – The instant translation of spoken word into text performed by a CART reporter using a stenotype machine, notebook computer and real-time software.

1.29    Confidential Information – Any material, data, or information disclosed by any Party to another Party that, pursuant to agreement of the Parties or a Party's grant of a proper request for confidentiality, is not generally known by or disclosed to the public or to Third Parties including, without limitation: (i) all materials, know-how, processes, trade secrets, manuals, confidential reports, services rendered by CMS, the State, financial, technical and operational information, and other matters relating to the operation of a Party's business; (ii) all information and materials relating to Third Party contractors of CMS or the State that have provided any part of CMS' or the State's information or communications infrastructure to CMS or the State;

1.53 Enrollee — Any Medicare-Medicaid eligible individual who is enrolled with a Contractor. "Enrollee" shall include the guardian where the Enrollee is an adult for whom a guardian has been named; provided, however, that the Contractor is not obligated to cover services for any individual who is not enrolled as an Enrollee with the Contractor.

1.54 Enrollee Care Plan — An Enrollee-centered, goal-oriented, culturally relevant, and logical, written plan of care with a Person-Centered Service Plan component, if necessary, that assures that the Enrollee receives, to the extent applicable, medical, medically-related, social, behavioral, and necessary Covered Services in a supportive, effective, efficient, timely and cost-effective manner that emphasizes prevention and continuity of care.

1.55 Enrollee Communications — Materials designed to communicate plan benefits, policies, processes and/or enrollee rights to Enrollees. This includes pre-enrollment, post-enrollment, and operational materials.

1.56 External Quality Review Organization (EQRO) — An organization contracted with the Department that meets the competence and independence requirements set forth in 42 C.F.R. § 438.354, and performs external quality review (EQR) and EQR-related activities as set forth in 42 C.F.R. § 438.358.

1.57 Federally-Qualified Health Center (FQHC) — An entity that has been determined by CMS to satisfy the criteria set forth in 42 U.S.C. § 1396d(a)(2)(C) and meets the requirements of 89 IL Admin Code 140.461(d).

1.58 Fee-For-Service (FFS) — The method of paying Providers for each Encounter or service rendered.

1.59 First Tier, Downstream and Related Entity — An individual or entity that enters into a written arrangement with the Contractor, acceptable to CMS and the Department, to provide administrative or health care services of the Contractor under this Contract.

1.60 Fraud — Knowing and willful deception, or a reckless disregard of the facts, with the intent to receive an unauthorized benefit. Includes any act that constitutes fraud under federal or state law.

1.61 Grievance — Any Complaint or dispute, other than one that constitutes an organization determination under 42 C.F.R. § 422.566, expressing dissatisfaction with any aspect of the Contractor's or Provider's operations, activities, or behavior, regardless of whether remedial action is requested pursuant to 42 C.F.R. § 422.561. Possible subjects for Grievances include, but are not limited to, quality of care or services provided, aspects of

interventions (such as engaging high-risk Enrollees in-care or Disease Management Programs); and

2.10.5.3   Technology for use for inbound Enrollee contact and query management.

2.10.6   Enrollee Portal.  Contractor shall have and maintain a secure Enrollee website that shall comply with, at a minimum 42 CFR 422.111(h) and 42 CFR 423.128(d).

## 2.11   Enrollee Grievance

2.11.1   Grievance Filing.

2.11.1.1   Internal Grievance Filing. An Enrollee, or an authorized representative, may file an Internal Enrollee Grievance at any time with the Contractor or its Providers by calling or writing to the Contractor or Provider. If the internal Enrollee Grievance is filed with a Provider, the Contractor must require the Provider to forward it to the Contractor. If remedial action is requested regarding a Medicare issue, the Enrollee must file the Grievance with the Contractor or Provider no later than sixty (60) days after the event or incident triggering the Grievance.

2.11.1.2   External Grievance Filing. The Contractor shall inform Enrollees that they may file an external Grievance through 1-800 Medicare.  The Contractor must display a link to the electronic Grievance form on the Medicare.gov Internet Web site on the Contractor's main Web page. The Contractor must inform Enrollees of the email address, postal address or toll-free telephone number where an Enrollee Grievance may be filed.

2.11.1.3   External Grievances filed with the Department shall be forwarded to the Contract Management Team and entered into the CMS Complaints tracking module, which will be accessible to the Contractor.

2.11.2   Internal Grievance Administration Process

2.11.2.1   The Contractor must have a formally structured Grievance system, consistent with 215 ILCS 134/45, 42 C.F.R. § 431 Subpart E and 42 C.F.R. § 438 Subpart F, in place for addressing Enrollee Grievances, including

146

Grievances regarding reasonable accommodations and access to services under the ADA. The Contractor must maintain written records of all Grievance activities, and notify CMS and the Department of all internal Enrollee Grievances. The Contractor must also submit to the Department, in the format required by the Department, a quarterly report summarizing all Grievances heard by the Grievance Committee and the responses to and disposition of those Grievances. The Contractor must submit its Grievance procedures to the Department for Prior Approval. The system must meet the following standards:

2.11.2.1.1    Timely acknowledgement of receipt of each Enrollee Grievance;

2.11.2.1.2    Timely review of each Enrollee Grievance;

2.11.2.1.3    Informal attempt by Contractor to resolve all Grievances;

2.11.2.1.4    Establishing a Grievance Committee, which shall have at least one (1) member who is an Enrollee and, at the Department's option, a representative of the Department, to hear Grievances that are not appropriate for informal review, were denied at the informal review, or are not appropriate for the procedures established by 215 ILCS 134/45;

2.11.2.1.5    Providing the Enrollee with a form and instructions on how the Enrollee may appoint an authorized representative to represent the Enrollee throughout the Grievance process;

2.11.2.1.6    Response, electronically, orally or in writing, to each Enrollee Grievance within a reasonable time, but no later than thirty (30) days after the Contractor receives the Grievance; and

2.11.2.1.7    Expedited response, orally or in writing, within twenty-four (24) hours after the Contractor receives the Grievance to each Enrollee Grievance whenever the Contractor

extends the Appeals timeframe (see **Section 2.12** below) or the Contractor refuses to grant a request for an expedited Appeal; and

2.11.2.1.8  Availability to Enrollees of information about Enrollee Appeals, as described in **Section 2.12**, including reasonable assistance in completing any forms or other procedural steps, which shall include interpreter services and toll-free numbers with TTY/TDD and interpreter capability.

2.11.2.1.9  Ensure that decision makers on grievances were not involved in previous levels of review or decision-making and are health care professionals with clinical expertise in treating the enrollee's condition or disease if any of the following apply:

2.11.2.1.9.1  A grievance regarding denial of expedited resolutions of an appeal.

2.11.2.1.9.2  Any grievance or involving clinical issues.

## 2.12  Enrollee Appeals

2.12.1  General. All Contractors shall utilize and all Enrollees may access the existing Part D Appeals Process, as described in **Appendix E**. Consistent with existing rules, Part D Appeals will be automatically forwarded to the CMS Medicare independent review entity (IRE) if the Contractor misses the applicable adjudication timeframe. The CMS Independent Review Entity is contracted by CMS. The Contractor must maintain written records of all Appeal activities, and notify CMS and the Department of all internal Appeals.

2.12.2  Integrated/Unified Non-Part D Appeals Process Overview:

2.12.2.1  Notice of Adverse Action – In accordance with 42 C.F.R. §§ 422.570 and 438.404, the Contractor must give the Enrollee written notice of any Adverse Action. Such notice shall be provided at least ten (10) days in advance of the date of its action, in accordance with 42 C.F.R. § 438.404. An Enrollee, or a Provider or an authorized representative acting on behalf of an Enrollee and with

STATE OF ILLINOIS

CONTRACT

Between the


DEPARTMENT OF HEALTHCARE
AND FAMILY SERVICES

and

ILLINICARE HEALTH PLAN, INC.


for



Furnishing Health Services in an
Integrated Care Program by a
Managed Care Organization

2010-24-005-KA4

**Table of Contents**

Article I        DEFINITIONS AND ACRONYMS ...................................................... 2
Article II       TERMS AND CONDITIONS ........................................................... 19
         2.1     Rules of Construction .......................................................... 19
         2.2     Performance of Services and Duties ............................... 20
         2.3     List of Individuals in Administrative Capacity ................ 20
         2.4     Certificate of Authority .................................................... 23
         2.5     Obligation to Comply with Other Laws........................... 23
         2.6     Provision of Covered Services through Affiliated Providers... 23
         2.7     Cultural Competence ....................................................... 23
         2.8     Provider Site Access ........................................................ 25
         2.9     BEP Goals ........................................................................ 25

Article III       ELIGIBILITY .................................................................................. 26
         3.1     Determination of Eligibility ............................................. 26
         3.2     Nondiscrimination ........................................................... 26

Article IV       ENROLLMENT, COVERAGE AND TERMINATION OF COVERAGE ............. 27
         4.1     Enrollment Generally ...................................................... 27
         4.2     Illinois Client Enrollment Broker .................................... 27
         4.3     Initial Program Implementation ..................................... 27
         4.4     Choice in Enrollment ...................................................... 27
         4.5     Enrollment by Auto-Assignment .................................... 27
         4.6     Effective Date of Enrollment........................................... 28
         4.7     Update of Enrollment Information ................................. 28
         4.8     Confirmation Packet ....................................................... 28
         4.9     Change of MCO ............................................................... 28
         4.10    Re-Enrollment after Resumption of Eligibility ............... 29
         4.11    Insolvency ........................................................................ 29
         4.12    Change of Site and PCP/WHCP....................................... 29
         4.13    Termination of Coverage ................................................ 30
         4.14    Capacity ........................................................................... 31
         4.15    Identification Card .......................................................... 32
         4.16    Marketing ........................................................................ 32
         4.17    Readiness Review ............................................................ 33
         4.18    Restriction ........................................................................ 33

Article V        DUTIES OF CONTRACTOR
         5.1     Amount, Duration and Scope of Coverage ................... 34
         5.2     Excluded Services ............................................................ 36
         5.3     Limitations on Covered Services...................................... 36
         5.4     Right of Conscience ........................................................ 37
         5.5     Provider Network ............................................................ 37
         5.6     Access to Care Standards ............................................... 41
         5.7     Provider Credentialing and Re-credentialing................. 43
         5.8     Site Registration.............................................................. 44
         5.9     Provider Education .......................................................... 44
         5.10    Coordination Tools ......................................................... 45
         5.11    Care Management ........................................................... 45
         5.12    Caseload Requirements .................................................. 46
         5.13    Interdisciplinary Care Team........................................... 47

| | | |
|---|---|---|
| 5.14 | Assessments and Care Planning | 48 |
| 5.15 | Transition of Care | 53 |
| 5.16 | Continuity of Care | 53 |
| 5.17 | Direct Access Services | 55 |
| 5.18 | Member Services | 56 |
| 5.19 | Quality Assurance, Utilization Review and Peer Review | 67 |
| 5.20 | Health, Safety and Welfare Planning | 68 |
| 5.21 | Physician Incentive Plan Regulations | 70 |
| 5.22 | Prohibited Relationships | 70 |
| 5.23 | Records | 71 |
| 5.24 | Regular Information Reporting Requirements | 72 |
| 5.25 | Timely Payment to Providers | 73 |
| 5.26 | Grievance Procedure and Appeal Procedure | 75 |
| 5.27 | Enrollee Satisfaction Survey | 77 |
| 5.28 | Provider Agreements and Subcontractors | 77 |
| 5.29 | Advance Directives | 80 |
| 5.30 | Fees to Enrollees Prohibited | 80 |
| 5.31 | Fraud and Abuse Procedures | 80 |
| 5.32 | Enrollee Provider Communications | 81 |
| 5.33 | HIPAA Compliance | 82 |
| 5.34 | Independent Evaluation | 82 |
| **Article VI** | **DUTIES OF THE DEPARTMENT** | **83** |
| 6.1 | Enrollment | 83 |
| 6.2 | Payment | 83 |
| 6.3 | Department Review of Marketing Materials | 83 |
| 6.4 | Historical Claims Data | 83 |
| **Article VII** | **PAYMENT AND FUNDING** | **84** |
| 7.1 | Capitation Payment | 84 |
| 7.2 | 820 Payment File | 84 |
| 7.3 | Payment File Reconciliation | 85 |
| 7.4 | Risk Adjustment | 85 |
| 7.5 | Actuarially Sound Rate Representation | 87 |
| 7.6 | New Covered Services | 87 |
| 7.7 | Adjustments | 87 |
| 7.8 | Copayments | 87 |
| 7.9 | Availability of Funds | 88 |
| 7.10 | Incentive Pool Payments | 88 |
| 7.11 | Medical Loss Ratio Guarantee | 90 |
| 7.12 | Denial of Payment Sanction by Federal CMS | 91 |
| 7.13 | Hold Harmless | 91 |
| 7.14 | Payment in Full | 92 |
| 7.15 | Prompt Payment | 92 |
| 7.16 | Sanctions | 92 |
| 7.17 | Retention of Payments | 96 |
| 7.18 | Deductions from Payments | 97 |
| 7.19 | Computational Error | 97 |
| 7.20 | Notice for Retentions and Deductions | 97 |
| 7.21 | Recoveries from Providers | 97 |
| **Article VIII** | **TERM, RENEWAL AND TERMINATION** | |

| | | |
|---|---|---|
| 8.1 | Term of Contract | 98 |
| 8.2 | Renewal | 98 |
| 8.3 | Continuing Duties in the Event of Termination | 98 |
| 8.4 | Immediate Termination for Cause | 98 |
| 8.5 | Termination for Cause | 98 |
| 8.6 | Social Security Act | 99 |
| 8.7 | Temporary Management | 99 |
| 8.8 | Termination for Convenience | 99 |
| 8.9 | Other Termination Rights | 99 |
| 8.10 | Automatic Termination | 100 |
| 8.11 | Reimbursement in the Event of Termination | 100 |
| 8.12 | Termination by Contractor | 100 |

| | | | |
|---|---|---|---|
| Article IX | GENERAL TERMS | | |
| | 9.1 | Standard Business Terms and Conditions | 101 |
| | 9.2 | Certifications | 109 |

| | | |
|---|---|---|
| Attachment I-B | - | Service Package I Covered Services |
| Attachment II-B | - | Service Package II Covered Services |
| Attachment III | - | Service Package III Covered Services |
| Attachment IV-C | - | Rate Sheet |
| Attachment V | - | State of Illinois Drug-Free Workplace Certification |
| Attachment VI-A | - | HIPAA Requirements |
| | | Exhibit A-Notification to the Agency of Breach of Unsecured Protected Health Information |
| Attachment VII | - | BEP Utilization Plan |
| Attachment VIII | - | Taxpayer Identification Number |
| Attachment IX | - | Disclosures and Conflicts of Interest |
| Attachment X | - | Public Act 95-971 |
| Attachment XI-A | - | Quality Assurance |
| Attachment XII | - | Utilization Review/Peer Review |
| Attachment XIII-B | - | Required Deliverables, Submissions and Reporting |
| Attachment XIV | - | Data Security Connectivity Specifications |
| Attachment XV | - | Contract Monitors |
| Attachment XVI | - | Qualifications and Training of Certain Care Coordinators |
| Attachment XVII | - | Illinois Department of Human Services, Division of Rehabilitation Services Critical Incident Definitions |
| Attachment XVIII | - | Illinois Department on Aging Elder Abuse and Neglect Program |
| Attachment XIX | - | Illinois Department of Healthcare and Family Services Incident Reporting for Supportive Living Facilities |
| Attachment XX | - | Personal Assistant Payment Policy |

**5.26.1**    **Grievances**.    Contractor shall establish and maintain a procedure for reviewing Grievances by an Enrollee or an Enrollee's authorized representative. A Grievance may be submitted orally or in writing, and all Grievances shall be registered with Contractor. Contractor's procedures must: (i) be submitted to the Department in writing and approved in writing by the Department; (ii) provide for prompt resolution, and (iii) assure the participation of individuals with authority to require corrective action. Contractor shall establish a Grievance Committee for reviewing Grievances registered by its Enrollees. At a minimum, the following elements must be included in the Grievance process:

**5.26.1.1**    Contractor shall attempt to resolve all Grievances informally.

**5.26.1.2**    Contractor shall establish a Grievance Committee to hear Grievances that are not appropriate for informal review, were denied at the informal review, or are not appropriate for the procedures set up under the Managed Care Reform and Patient Rights Act.

**5.26.1.2.1**    The Grievance Committee must have at least one (1) Enrollee on the Committee.

**5.26.1.2.2**    The Department may require that one (1) member of the Grievance Committee be a representative of the Department.

**5.26.1.3**    An Enrollee may appoint any authorized representative, including a guardian, caretaker relative, or Provider, to represent the Enrollee throughout the Grievance process. Contractor shall provide a form and instructions on how an Enrollee may appoint a representative.

**5.26.1.4**    Contractor shall submit to the Department, in the format required by the Department, a quarterly report summarizing all Grievances heard by the Grievance Committee and the responses to and disposition of those matters.

**5.26.2**    **Appeals.**    Contractor shall establish and maintain a procedure for reviewing Appeals by Enrollees or an

Enrollee's authorized representative. An Appeal may be submitted orally or in writing, and all Appeals shall be registered initially with Contractor and may later be appealed to the State, as provided herein. Contractor's procedures must: (i) be submitted to the Department in writing and approved in writing by the Department; (ii) provide for resolution within the times specified herein, and (iii) assure the participation of individuals with authority to require corrective action. Contractor must have a committee in place for reviewing Appeals made by Enrollees. At a minimum, the following elements must be included in the Appeal process:

**5.26.2.1**    An Enrollee may file an oral or written Appeal within sixty (60) calendar days following the date of the notice of Action that generates such Appeal. If the Enrollee does not request an expedited Appeal pursuant to 42 CFR 438.410, Contractor may require the Enrollee to follow an oral Appeal with a written, signed Appeal.

**5.26.2.2**    An Enrollee may appoint any authorized representative, including a guardian, caretaker relative, or Provider, to represent the Enrollee throughout the Appeal process. Contractor shall provide a form and instructions on how an Enrollee may appoint a representative.

**5.26.2.3**    If an Enrollee requests an expedited Appeal pursuant to 42 CFR 438.410, Contractor shall notify the Enrollee within twenty-four (24) hours after the submission of the Appeal, of all information from the Enrollee that Contractor requires to evaluate the Appeal. Contractor shall render a decision on an expedited Appeal within twenty-four (24) hours after receipt of the required information.

**5.26.2.4**     If an Enrollee does not request an expedited Appeal, Contractor shall make its decision on the Appeal within fifteen (15) business days after submission of the Appeal.  Contractor may extend this timeframe for up to fourteen (14) calendar days if the Enrollee requests an extension, or if Contractor demonstrates to the satisfaction of the appropriate state agency's Hearing Office that there is a need for additional information and the delay is in the Enrollee's interest.

**5.26.2.5**     Final decisions of Appeals not resolved wholly in favor of the Enrollee may be appealed by the Enrollee to the State under its Fair Hearings system within thirty (30) calendar days after the date of the Contractor's Decision Notice.

**5.26.2.6**     Except for a denial of Waiver services, which may not be reviewed by an external independent entity, Contractor shall have procedures allowing an Enrollee to request an external independent review, both standard and expedited timeframes, of Appeals that are denied by Contractor within thirty (30) calendar days after the date of the Contractor's Decision Notice.

**5.26.2.7**     If an Appeal is filed with the State Fair Hearing system, Contractor will participate in the pre-hearing process, including scheduling coordination and submission of documentary evidence at least three (3) business days prior to the hearing, and  shall participate in the hearing, including providing a witness to offer testimony supporting the decision of Contractor.

**5.26.2.8**     If Contractor or the State Fair Hearing Officer reverses a decision to deny,

limit, or delay services, and those services were not furnished while the Appeal was pending, Contractor must authorize or provide the disputed services as expeditiously as the Enrollee's health condition requires.

**5.26.2.9** If Contractor or the State Fair Hearing Officer reverses a decision to deny authorization of services, and the Enrollee received the disputed services while the Appeal was pending, Contractor must pay for those services, in accordance with State policy and regulations.

**5.26.2.10** If an Enrollee files an Appeal within ten (10) calendar days after the date of a notice of Action from Contractor and the Enrollee asks to have their benefits continued during the Appeal process, Contractor must continue the Enrollee's benefits during the Appeal process. Pursuant to 42 CFR 438.420, if the final resolution of the Appeal is adverse to the Enrollee, Contractor may recover the cost of the services that were furnished to the Enrollee.

**5.26.2.11** Contractor shall submit to the Department, in the format required by the Department, a quarterly report summarizing all Appeals filed by Enrollees and the responses to and disposition of those matters (including decisions made following an external independent review).

**5.26.3** Contractor shall review its Grievance and Appeal procedures at least annually for the purpose of amending such procedures when necessary. Contractor shall amend its procedures only upon receiving the written Prior Approval of the Department. This information shall be furnished to the Department.

**5.26** **Enrollee Satisfaction Survey**. Contractor shall conduct an annual Consumer Assessment of Health Plans (CAHPS) survey as approved by the Department. The survey sampling and administration must follow specifications contained in the

# APPENDIX "6"

**CIRCUIT COURT, CLINTON COUNTY, ILLINOIS**
**PROBATE DIVISION**

| IN RE: SHARON HAHNE DECEASED | Reference No.: |

FILED

DEC 2 2 2016

## ORDER APPOINTING
## AUTHORIZED MEDICAID REPRESENTATIVE

On the petition for appointment of authorized Medicaid representative for Sharon Hahne, social security #: XXX-XX-8115, deceased:

IT IS HEREBY ADJUDGED that Christopher Reis, Vice-President of Carlyle HealthCare Center, Inc. is authorized to act as the Medicaid Representative for SHARON HAHNE, and Christopher Reis may take such actions as are necessary to qualify or requalify her for Medicaid benefits including performing spend down of such of Sharon Hahne's assets payable to Carlyle HealthCare Center, Inc. as are necessary to qualify Sharon Hahne for Medicaid, and authority to obtain financial records including, but not limited to, bank statements and records regarding any and all accounts associated with Ms. Hahne or held in her name, life insurance documentation, documentation pertaining to any and all assets, income and/or resources held by Ms. Hahne or for Ms. Hahne's benefit as required by the Illinois Medicaid agency in order to process Ms. Hahne's application.

IT IS HEREBY FURTHER ADJUGED that Christopher Reis may pursue any rights on behalf of Sharon Hahne that are afforded by law or statute or regulation to an individual seeking Medicaid benefits to appeal a denial(s), past or future, of Medicaid benefits, past or future, previously issued or issued in the future, or inaction by any State agency with respect to the application for Medicaid benefits on behalf of Sharon Hahne.

IT IS HEREBY FURTHER ADJUGED that Christopher Reis may not take the following actions for Sharon Hahne without permission of this Court: (a) the establishment of a qualified

income trust; (b) the transfer, listing or sale of real property; or (c) the execution of an assignment of any of Sharon Hahne financial resources to any entity other than Carlyle HealthCare Center, Inc.

DONE AND ORDERED on this 22 day of December _____, 2016, in Clinton County, Illinois.

S/Stanley M. Brandyer
Circuit Court Judge

**FILED**
CIRCUIT COURT WHITESIDE COUNTY
DATE 2-24-17
R. Rogello
CIRCUIT CLERK

## WHITESIDE COUNTY, ILLLINOIS – PROBATE COURT THIRTEENTH JUDICIAL CIRCUIT

| IN RE: | HELLEN ALLEN | Reference No.: 17 P 21 |
|---|---|---|

### ORDER APPOINTING
### AUTHORIZED MEDICAID REPRESENTATIVE

On the petition for appointment of authorized Medicaid representative for James Watson, Social Security #: XXX-XX-1837:

IT IS HEREBY ADJUDGED that Janice Martinez, Business Office Manager, Regency Care of Sterling, is authorized to act as the Medicaid Representative for HELEN ALLEN, and Janice Martinez may take such actions as are necessary to qualify or requalify her for Medicaid benefits including performing spend down of such of Helen Allen's assets payable to Regency Care of Sterling as are necessary to qualify Helen Allen for Medicaid, and authority to obtain financial records including, but not limited to, bank statements and records regarding any and all accounts associated with Ms. Allen or held in her name, life insurance documentation, documentation pertaining to any and all assets, income and/or resources held by Ms. Allen or for Ms. Allen's benefit as required by the Illinois Department of Healthcare and Family Services and/or the Illinois Department of Human Services in order to process Ms. Allen's application.

IT IS HEREBY FURTHER ADJUGED that Janice Martinez may pursue any rights on behalf of Helen Allen that are afforded by law or statute or regulation to an individual seeking Medicaid benefits to appeal a denial(s), past or future, of Medicaid benefits, past or future, previously issued or issued in the future, or inaction by any State agency with respect to the application for Medicaid benefits on behalf of Helen Allen.

IT IS HEREBY FURTHER ADJUGED that Carolyn Progress may not take the following actions for Helen Allen without permission of this Court: (a) the establishment of a qualified income trust; (b) the transfer, listing or sale of real property; or (c) the execution of an assignment of any of Helen Allen's financial resources to any entity other than Regency Care of Morris.

DONE AND ORDERED on this 24th day of ___Febuary___, 2017, in Whiteside County, Illinois.

_____
Probate Judge

IN THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY, PENNSYLVANIA
ORPHANS COURT DIVISION

In the Matter of
ANITA M. GREY a/k/a             :     No. 4897
NITA GREY                     :

## ORDER APPOINTING
## AUTHORIZED MEDICAID REPRESENTATIVE

AND NOW this __22d__ day of __January__, 2015 upon consideration of the

Petition filed by Little Flower Manor of the Diocese of Scranton ("LFM") for appointment of

Medicaid representative for its resident Anita M. Grey, it is here by Ordered and Decreed that

Maureen B. Kenny McHale is authorized to act as the Medicaid Representative for ANITA M.

GREY a/k/a NITA GREY and Maureen B. Kenny McHale may take such actions as are necessary

to qualify or requalify her for Medicaid benefits including performing spend down of such of Anita

M. Grey assets payable to Little Flower Manor of the Diocese of Scranton as are necessary to

qualify Anita M. Grey for Medicaid, providing that Maureen B. Kenny McHale may not take the

following actions for Anita M. Grey without permission of this Court: (a) the establishment of a

qualified income trust;  (b) the transfer, listing or sale of real property; or (c) the execution of an

assignment of any of Anita M. Grey's financial resources to any entity other than Little Flower

Manor of the Diocese of Scranton.

BY THE COURT:

Certified from the records of the Clerk of the
Orphan's Court Division, in and for the
County of Luzerne, State of Pennsylvania.

This Date: __January 22, 2015__        _Richd M. Hughes III_
JOAN HOGGARTH, CLERK OF THE                      J.
ORPHANS' COURT DIVISION
          _Joan Hoggarth_
ASST. CLERK ORPHANS' COURT DIVISION

REGISTER OF WILLS
LUZERNE COUNTY
PENNSYLVANIA
INSTRUMENT NUMBER
201503404
FILED ON
Jan 22, 2015
10:17:15 AM
FILE NUMBER
4897
Total Pages: 1
RECORDING FEES -
REGISTER OF WILLS/OC    $0.00
TOTAL PAID    $0.00
INV: 793073

63

Filing # 20502254 Electronically Filed 11/12/2014 09:23:26 PM

Filed 11/17/2014 4:56:02 PM Ken Burke Clerk of the Circuit Court & Comptroller, Pinellas County Florida

## CIRCUIT COURT, PINELLAS COUNTY, FLORIDA
### PROBATE DIVISION

| IN RE: LOIS EVANS UCN: | Reference No.: |
|---|---|
| | Ref. number: 14008616IN |

### ORDER APPOINTING
### AUTHORIZED MEDICAID REPRESENTATIVE

On the petition for appointment of authorized Medicaid representative for Lois Evans, whose age is eight-five (85), and whose address is 1980 Sunset Point Road, Clearwater, Florida 33765

IT IS HEREBY ADJUDGED Sunset Point shall act as the Medicaid Representative for Lois Evans and is authorized to take such actions as are necessary to qualify Lois Evans for Medicaid benefits, subject to the Court's approval.

## November 17, 2014

DONE AND ORDERED on this ___ day of _____, 2014, in Pinellas County, Florida.

_Linda R. Allen_
Circuit Court Judge
Linda R. Allen, Circuit Judge

# APPENDIX "7"

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

**APERION CARE, INC.,[1]**                               *
**as Authorized Representative of:**
**Francisca Delgado,**                                   *

**BRIA HEALTH SERVICES, LLC,**                           *
**as Authorized Representative of:**
**Winnie Boykin,**                                       *
**Karen Brown,**
**Joseph Klimas,**                                       *
**Cynthia Little,**
**Sandra McDonald,**                                     *
**Wilbert Spencer,**
**Anthony Caldwell,**                                    *
**Larry Cummings,**
**Steven Ratcliff,**                                     *
**Orlandus Searcy,**
                                                         *
**EVEREST CARE GROUP, LLC,**
**as Authorized Representative of:**                     *
**Dwight Akins,**
**Donald Murczek,**                                      *
**Derrick Griffin,**
**Theodore Barnes,**                                     *
**David Pitre,**
**Hazel Brand,**                                         *

**GRAND LIFESTYLES, LLC,**                               *
**as Authorized Representative of:**
**Juan Beard,**                                          *
**Lee Thirsty,**
**ICARE FINANCIAL SERVICES, INC.,**                      *
**as Authorized Representative of:**
**Trudy Khan,**                                          *

**ITEX COMPANY, INC.**                                   *
**as Authorized Representative of:**
**Victorina Cruz,**                                      *

---

[1] Federal law requires state agencies to permit applicants and beneficiaries to designate an individual or organization to act responsibly on their behalf in assisting with the individual's application and renewal of eligibility and other ongoing communications with the state agency responsible for issuing determinations on Medicaid eligibility. *See* 42 C.F.R. § 435.923.

Miguel Catala,                                              *
Claudia Hale,
                                                           *

**LEGACY HEALTHCARE**
**FINANCIAL SERVICES, LLC,**                               *
**as Authorized Representative of:**
**Cecil Gittens,**                                         *
**Harry Mueller,**
**Glenda Buchholtz,**                                      *

**MAESTRO CONSULTING SERVICES, LLC**                       *
**a/k/a Symphony Post-Acute Network**
**as Authorized Representative of:**                       *
**Barbara Craddock,**
**Daryl Jones,**                                           *
**Crystal Garrett,**
**Kirk Lis,**                                              *
**Dannah Norwood,**
                                                           *

**VILLA FINANCIAL SERVICES, LLC,**
**as Authorized Representative of:**                       *
**Idella Adell,**
**Helen Emerson,**                                         *
**Sophie Krasula,**
**Johnnie King,**                                          *
**James Hubbard,**
**Luvenia Stevenson,**                                     *

                    **PLAINTIFFS,**                        *

PLAINTIFFS ARE CLASS REPRESENTATIVES                       *
OF THE PLAINTIFFS' CLASS THEY SEEK TO
REPRESENT,                                                 *

**v.**                                                     *

**FELICIA F. NORWOOD, in her official**                    *
**capacity as the Director of the**
**Illinois Department of Healthcare**                      *
**and Family Services,**
                                                           *

**AETNA MEDICAID ADMINISTRATORS, LLC**
**d/b/a AETNA BETTER HEALTH, INC.**                        *
**333 West Wacker Drive**
**Chicago, Illinois 60606**                                *

**MERIDIAN HEALTH PLAN, Inc.**
**333 South Wabash Ave., Suite 2900**                                    *
**Chicago, Illinois 60604**
                                                                         *
**COMMUNITY CARE ALLIANCE OF ILLIOIS, LLC**
**322 S. Green Street, Suite 400**                                       *
**Chicago, Illinois 60607**
                                                                         *
**HEALTHCARE SERVICE CORPORATION, d/b/a**
**BLUE CROSS BLUE SHIELD OF ILLINOIS,**                                  *
**225 N. Michigan Ave.**
**Chicago, Illinois 60601**                                              *

**ILLINICARE HEALTH PLAN, INC.**                                         *
**208 S. LaSalle St., Suite 814**
**Chicago, Illinois 60604**                                              *

**COOK COUNTY, and COOK COUNTY HEALTH**                                  *
**AND HOSPITALS SYSTEM, and**
**COUNTYCARE HEALTH PLAN**                                               *
**1900 West Polk Ave., Suite 220**
**Chicago, Illinois 60612**                                              *

**NEXTLEVEL HEALTH PARTNERS, INC.**                                      *
**303 W. Madison, Suite 1110**
**Chicago, Illinois 60606**                                              *

**WELLCARE HEALTH PLANS, INC.**                                          *
**d/b/a Harmony**
**29 North Wacker Drive**                                                *
**Chicago, Illinois 60606**
                                                                         *
**CIGNA CORPORATION,**
**d/b/a Cigna-HealthSpring CarePlan of Illinois,**                       *
**208 S. LaSalle St., Suite 804**
**Chicago, Illinois 60604**                                              *

**HUMANA, INC.**                                                         *
**801 Adlai Stevenson Drive.**
**Springfield, Illinois 62703**                                          *

**MOLINA HEALTHCARE OF ILLINOIS, INC.**                                  *
**801 Adlai Stevenson Drive.**
**Springfield, Illinois 62703**                                          *

                                                                         *

**DEFENDANTS.**

\*

# COMPLAINT FOR DECLARATORY JUDGMENT, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

## I.     PRELIMINARY STATEMENT

As a condition of receiving federal funds, the State of Illinois is required to operate the Medicaid program in compliance with the Social Security Act and implementing regulations, pursuant to 42 U.S.C. § 1396(c). This case concerns the failure of Defendant, Felicia F. Norwood ("Defendant" and/or "Norwood"), the Director of the Illinois Department of Healthcare and Family Services ("Defendant" and/or "HFS") and certain entities which have contracted with HFS to provide Medicaid to residents of Illinois ("Defendant" and/or "Defendant MCOs") to comply with their obligations to afford Medicaid benefits to residents in skilled nursing and/or supportive living facilities in compliance with the federal rules and regulations of the United States. Defendants are directly responsible for policies necessary for the implementation of a system for determination of providing Medicaid benefits that complies, in all aspects, with federal law. The failures by the Defendants to grant and provide for Medicaid benefits to residents of skilled nursing and/or supportive living facilities who are eligible for Medicaid benefits constitute violations of the Federal Medicaid Act and implementing regulations at 42 USC § 1396u-2, 42 C.F.R. § 438.10, and 42 .U..SC § 1396(a), § 1902(a)(37)(a).

## II.     JURISDICTION AND VENUE

This action arises under the Federal Medicaid Act and implementing regulations at 42 U.S.C. § 1396u-2, 42 C.F.R. § 438.10, and 42 U.S.C. § 1396(a), § 1902(a)(37)(a) and Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 12131 *et seq.* Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202. The jurisdiction of this court is invoked pursuant to 28 U.S.C.

§§1331, 1343(k) and 28 U.S.C. §§2201 and 2202.  Additionally, the jurisdiction of this court is invoked to secure protection to redress the deprivation under color of state law, statute, custom and/or usage of a right, privilege and/or immunity secured to the Plaintiffs by the Fourteenth Amendment to the Constitution of the United States, the Equal Protection Clause, 42 U.S.C. §1983. Venue lies in this forum pursuant to 28 U.S.C. § 1391(e).

## III.    PARTIES

1.    Aperion Care, Inc. is headquartered in Lincolnwood, Illinois.  Aperion Care, Inc. provides financial and business consulting services to a network of skilled nursing home facilities in Illinois, referred to as the Aperion network ("Aperion" and/or "Facility").  Aperion provides long-term care nursing facility services to disabled, insolvent residents of Illinois, such as the Class Representatives in this matter.

2.    Bria Health Services, LLC is headquartered in Skokie, Illinois.  Bria Health Services, LLC provides financial and business consulting services to a network of skilled nursing home facilities in Illinois, referred to as the Bria network ("Bria" and/or "Facility").  Bria provides long-term care nursing facility services to disabled, insolvent residents of Illinois, such as the Class Representatives in this matter.

3.    Everest Care Group, LLC is headquartered in Skokie, IL.  Everest Care Group, LLC provides financial and business consulting services to a network of skilled nursing home facilities in Illinois, referred to as the Everest network ("Everest" and/or "Facility").  Everest provides long-term care nursing facility services to disabled, insolvent residents of Illinois, such as the Class Representatives in this matter.

4.    Grand Lifestyles, LLC is headquartered in Skokie, IL.  Grand Lifestyles, LLC provides financial and business consulting services to a network of supportive living facilities in Illinois, referred

to as the Grand Lifestyles network ("Grand Lifestyles" and/or "Facility"). Grand Lifestyles provides supportive living facility services to disabled and/or insolvent residents of Illinois, such as the Class Representatives in this matter.

5.    ICare Financial Services, Inc. is headquartered in Skokie, Illinois. ICare Financial Services, Inc. provides financial and business consulting services to a network of skilled nursing home facilities in Illinois, referred to as the ICare network ("ICare" and/or "Facility"). ICare provides long-term care nursing facility services to disabled, insolvent residents of Illinois, such as the Class Representatives in this matter.

6.    ITEX Company, Inc. is headquartered in Lincolnwood, Illinois. ITEX Company, Inc. provides financial and business consulting services to a network of skilled nursing home facilities in Illinois, referred to as the Harmony network ("Harmony" and/or "Facility"). Harmony provides long-term care nursing facility services to disabled, insolvent residents of Illinois, such as the Class Representatives in this matter.

7.    Legacy Healthcare Financial Services, LLC is headquartered in Skokie, Illinois. Legacy Healthcare Financial Services, LLC provides financial and business consulting services to a network of skilled nursing home facilities in Illinois, referred to as the Legacy network ("Legacy" and/or "Facility"). Legacy provides long-term care nursing facility services to disabled, insolvent residents of Illinois, such as the Class Representatives in this matter.

8.    Maestro Consulting Services, LLC is headquartered in Lincolnwood, Illinois. Maestro Consulting Services, LLC provides financial and business consulting services to a network of skilled nursing home facilities in Illinois, referred to as the Symphony Post-Acute network ("Symphony" and/or "Facility"). Symphony provides long-term care nursing facility services to disabled, insolvent residents of Illinois, such as the Class Representatives in this matter.

9.      Villa Financial Services, LLC is headquartered in Skokie, IL.   Villa Financial

Services, LLC provides financial and business consulting services to a network of skilled nursing home

facilities in Illinois, referred to as the Villa network ("Villa" and/or "Facility").   Villa provides long-

term care nursing facility services to disabled, insolvent residents of Illinois, such as the Class

Representatives in this matter.

10.      Certain individual residents who are approved to receive long-term care Medicaid

benefits, who receive nursing facility services and/or supportive living services and/or medical care at

a supportive living facility and/or nursing home facility, who are approved Medicaid beneficiaries

pursuant to a contract for Medicaid benefits between skilled nursing home facilities and/or supportive

living facilities, and Defendant MCOs, who have submitted clean claims for services, and for whom

Defendant MCOs have not rendered payment for approved benefits and/or provided for the medical

and/or Medicaid services as it is required to pursuant to the Federal Medicaid Act:

> a.   Francisca Delgado was admitted to an Aperion skilled nursing facility on or
>
> about May 20, 2008 ("Delgado" or "Plaintiff").   Delgado suffers from
>
> paranoid schizophrenia, type 2 diabetes, and cardiac murmur, among other
>
> severe medical conditions.   She requires twenty-four hour skilled nursing
>
> care at an Aperion facility. Delgado was approved to receive long-term care
>
> Medicaid benefits at Aperion.   Pursuant to Medicaid eligibility and
>
> approval, and/or a Medicaid MCO contract with Aetna Better Health,
>
> Delgado submitted claims for necessary nursing facility services/medical
>
> expenses to Aetna Better Health.   Aetna Better Health has failed to provide
>
> to Delgado timely payment for nursing facility services and/or necessary
>
> medical care expenses pursuant to clean claims submitted to Aetna Better

Health for payment. Delgado has a significant outstanding balance owed to
Aperion as a result of long-term care and nursing facility services provided
to her by Aperion.

b.  Winnie Boykin was admitted to a Bria skilled nursing facility on or about
February 27, 2013 ("Boykin" or "Plaintiff"). Boykin suffers from chronic
obstructive pulmonary disease, blindness out of both eyes, post traumatic
seizures, and cognitive social or emotional deficit following cerebral
infarction, among other severe medical conditions. She requires twenty-
four hour skilled nursing care at a Bria facility. Boykin was approved to
receive long-term care Medicaid benefits at Bria. Pursuant to Medicaid
eligibility and approval, and/or a Medicaid MCO contract with Meridian
Health, Boykin submitted claims for necessary nursing facility
services/medical expenses to Meridian Health. Meridian Health has failed
to provide to Boykin timely payment for nursing facility services and/or
necessary medical care expenses pursuant to clean claims submitted to
Meridian Health for payment. Boykin has a significant outstanding balance
owed to Bria as a result of long-term care and nursing facility services
provided to her by Bria.

c.  Karen Brown was admitted to a Bria skilled nursing facility on or about July
3, 2015 ("Brown" or "Plaintiff"). Brown suffers from difficulty in walking,
history of falling, type 2 diabetes, chronic kidney disease, and cognitive
communication deficit, among other severe medical conditions. She
requires twenty-four hour skilled nursing care at a Bria facility. Brown was

approved to receive long-term care Medicaid benefits at Bria. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Aetna Better Health, Brown submitted claims for necessary nursing facility services/medical expenses to Aetna Better Health. Aetna Better Health has failed to provide to Brown timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Aetna Better Health for payment. Brown has a significant outstanding balance owed to Bria as a result of long-term care and nursing facility services provided to her by Bria.

d.  Joseph Klimas was admitted to a Bria skilled nursing facility on or about September 29, 2015 ("Klimas" or "Plaintiff"). Klimas suffers from schizophrenia, convulsions, osteoarthritis, and muscle weakness, among other severe medical conditions. He requires twenty-four hour skilled nursing care at a Bria facility. Klimas was approved to receive long-term care Medicaid benefits at Bria. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Aetna Better Health, Klimas submitted claims for necessary nursing facility services/medical expenses to Aetna Better Health. Aetna Better Health has failed to provide to Klimas timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Aetna Better Health for payment. Klimas has a significant outstanding balance owed to Bria as a result of long-term care and nursing facility services provided to him by Bria.

e.  Cynthia Little was admitted to a Bria skilled nursing facility on or about June 6, 2017 ("Little" or "Plaintiff").  Little suffers from chronic kidney disease, diabetes mellitus, major depressive disorder, and hypothyroidism, among other severe medical conditions.  She requires twenty-four hour skilled nursing care at a Bria facility. Little was approved to receive long-term care Medicaid benefits at Bria.  Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Meridian Health, Little submitted claims for necessary nursing facility services/medical expenses to Meridian Health.  Meridian Health has failed to provide to Little timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Meridian Health for payment.  Little has a significant outstanding balance owed to Bria as a result of long-term care and nursing facility services provided to her by Bria.

f.  Sandra McDonald was admitted to a Bria skilled nursing facility on or about November 16, 2014 ("McDonald" or "Plaintiff").  McDonald suffers from schizophrenia, major depressive disorder, osteoporosis, and muscle weakness, among other severe medical conditions.  She requires twenty-four hour skilled nursing care at a Bria facility. McDonald was approved to receive long-term care Medicaid benefits at Bria.  Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Meridian Health, McDonald submitted claims for necessary nursing facility services/medical expenses to Meridian Health.  Meridian Health has failed to provide to McDonald timely payment for nursing facility services and/or

necessary medical care expenses pursuant to clean claims submitted to Meridian Health for payment. McDonald has a significant outstanding balance owed to Bria as a result of long-term care and nursing facility services provided to her by Bria.

g. Wilbert Spencer was admitted to a Bria skilled nursing facility on or about October 11, 2016 ("Spencer" or "Plaintiff"). Spencer suffers from dementia, muscle weakness, and chronic kidney disease, among other severe medical conditions. He requires twenty-four hour skilled nursing care at a Bria facility. Spencer was approved to receive long-term care Medicaid benefits at Bria. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Aetna Better Health, Spencer submitted claims for necessary nursing facility services/medical expenses to Aetna Better Health. Aetna Better Health has failed to provide to Spencer timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Aetna Better Health for payment. Spencer has a significant outstanding balance owed to Bria as a result of long-term care and nursing facility services provided to him by Bria.

h. Anthony Caldwell was admitted to a Bria skilled nursing facility on or about June 2, 2017 ("Caldwell" or "Plaintiff"). Caldwell suffers from paranoid schizophrenia and visual loss, right eye, among other severe medical conditions. He requires twenty-four hour skilled nursing care at a Bria facility. Caldwell was approved to receive long-term care Medicaid benefits

at Bria.  Pursuant to Medicaid eligibility and approval, and/or a Medicaid

MCO contract with Molina, Caldwell submitted claims for necessary

nursing facility services/medical expenses to Molina.  Molina has failed to

provide to Caldwell timely payment for nursing facility services and/or

necessary medical care expenses pursuant to clean claims submitted to

Molina for payment.  Caldwell has a significant outstanding balance owed

to Bria as a result of long-term care and nursing facility services provided

to him by Bria.

i.   Larry Cummings was admitted to a Bria skilled nursing facility on or about

April 9, 2013 ("Cummings" or "Plaintiff").   Cummings suffers from

vascular dementia, schizoaffective disorder, muscle weakness, and history

of falling, among other severe medical conditions.  He requires twenty-four

hour skilled nursing care at a Bria facility. Cummings was approved to

receive long-term care Medicaid benefits at Bria.  Pursuant to Medicaid

eligibility and approval, and/or a Medicaid MCO contract with Molina,

Cummings submitted claims for necessary nursing facility services/medical

expenses to Molina.  Molina has failed to provide to Cummings timely

payment for nursing facility services and/or necessary medical care

expenses pursuant to clean claims submitted to Molina for payment.

Cummings has a significant outstanding balance owed to Bria as a result of

long-term care and nursing facility services provided to him by Bria.

j.   Steven Ratcliff was admitted to a Bria skilled nursing facility on or about

March 27, 2014 ("Ratcliff" or "Plaintiff").     Ratcliff suffers from

Alzheimer's disease, schizoaffective disorder, muscle weakness, and difficulty in walking, among other severe medical conditions. He requires twenty-four hour skilled nursing care at a Bria facility. Ratcliff was approved to receive long-term care Medicaid benefits at Bria. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Molina, Ratcliff submitted claims for necessary nursing facility services/medical expenses to Molina. Molina has failed to provide to Ratcliff timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Molina for payment. Ratcliff has a significant outstanding balance owed to Bria as a result of long-term care and nursing facility services provided to him by Bria.

k.  Orlandus Searcy was admitted to a Bria skilled nursing facility on or about January 11, 2017 ("Searcy" or "Plaintiff"). Searcy suffers from osteoarthritis, amputation of right lower leg, muscle weakness, and schizophrenia, among other severe medical conditions. He requires twenty-four hour skilled nursing care at a Bria facility. Searcy was approved to receive long-term care Medicaid benefits at Bria. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Molina, Searcy submitted claims for necessary nursing facility services/medical expenses to Molina. Molina has failed to provide to Searcy timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Molina for payment. Searcy has a

significant outstanding balance owed to Bria as a result of long-term care and nursing facility services provided to him by Bria.

l.  Dwight Akins was admitted to an Everest skilled nursing facility on or about March 13, 2017 ("Akins" or "Plaintiff").   Akins suffers from type 2 diabetes, abnormalities of gait and mobility, and gangrene, among other severe medical conditions.  He requires twenty-four hour skilled nursing care at an Everest facility.  Akins was approved to receive long-term care Medicaid benefits at Everest.  Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with NextLevel, Akins submitted claims for necessary nursing facility services/medical expenses to NextLevel. NextLevel has failed to provide to Akins timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to NextLevel for payment.  Akins has a significant outstanding balance owed to Everest as a result of long-term care and nursing facility services provided to him by Everest.

m. Donald Murczek was admitted to an Everest skilled nursing facility on or about December 21, 2015 ("Murczek" or "Plaintiff").   Murczek suffers from cognitive communication deficit, muscle weakness, and chronic kidney disease, among other severe medical conditions.   He requires twenty-four hour skilled nursing care at an Everest facility.  Murczek was approved to receive long-term care Medicaid benefits at Everest.  Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Meridian, Murczek submitted claims for necessary nursing facility

services/medical expenses to Meridian.  Meridian has failed to provide to Murczek timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Meridian for payment.  Murczek has a significant outstanding balance owed to Everest as a result of long-term care and nursing facility services provided to him by Everest.

n. Derrick Griffin was admitted to an Everest skilled nursing facility on or about June 12, 2017 ("Griffin" or "Plaintiff").  Griffin suffers from cognitive communication deficit, muscle weakness, and chronic kidney disease, among other severe medical conditions.  He requires twenty-four hour skilled nursing care at an Everest facility.  Griffin was approved to receive long-term care Medicaid benefits at Everest.  Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with CountyCare, Griffin submitted claims for necessary nursing facility services/medical expenses to CountyCare.  CountyCare has failed to provide to Griffin timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to CountyCare for payment. Griffin has a significant outstanding balance owed to Everest as a result of long-term care and nursing facility services provided to him by Everest.

o. Theodore Barnes was admitted to an Everest skilled nursing facility on or about April 3, 2017 ("Barnes" or "Plaintiff").  Barnes suffers from severe medical conditions.  He requires twenty-four hour skilled nursing care at an Everest facility.  Barnes was approved to receive long-term care Medicaid

benefits at Everest.  Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with NextLevel, Barnes submitted claims for necessary nursing facility services/medical expenses to NextLevel. NextLevel has failed to provide to Barnes timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to NextLevel for payment.  Barnes has a significant outstanding balance owed to Everest as a result of long-term care and nursing facility services provided to him by Everest.

p.  Hazel Brand was admitted to an Everest skilled nursing facility on or about April 21, 2017 ("Brand" or "Plaintiff").  Brand suffers from viral hepatitis C, among other severe medical conditions.  She requires twenty-four hour skilled nursing care at an Everest facility.  Brand was approved to receive long-term care Medicaid benefits at Everest.  Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with CountyCare, Brand submitted claims for necessary nursing facility services/medical expenses to CountyCare.  CountyCare has failed to provide to Brand timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to CountyCare for payment. Brand has a significant outstanding balance owed to Everest as a result of long-term care and nursing facility services provided to her by Everest.

q.  David Pitre was admitted to an Everest skilled nursing facility on or about 2017 ("Pitre" or "Plaintiff"). Pitre suffers from severe medical conditions. He requires twenty-four hour skilled nursing care at an Everest facility.

Pitre was approved to receive long-term care Medicaid benefits at Everest. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with WellCare, Pitre submitted claims for necessary nursing facility services/medical expenses to WellCare. WellCare has failed to provide to Pitre timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to WellCare for payment. Pitre has a significant outstanding balance owed to Everest as a result of long-term care and nursing facility services provided to him by Everest.

r.   Juan Beard was admitted to a Grand Lifestyles supportive living facility on or about August 26, 2016 ("Beard" or "Plaintiff"). Beard suffers from severe medical conditions. He requires medical care and assistance at a Grand Lifestyles supportive living facility. Beard was approved to receive long-term care Medicaid benefits at Grand Lifestyles. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with NextLevel, Beard submitted claims for necessary custodial care expenses under the supportive living program to NextLevel. NextLevel has failed to provide to Beard timely payment for supportive living facility services and custodial care expenses pursuant to clean claims submitted to NextLevel for payment. Beard has a significant outstanding balance owed to Grand Lifestyles as a result of long-term care and services provided to him by Grand Lifestyles.

s.  Lee Thirsty was admitted to a Grand Lifestyles supportive living facility on
or about May 14, 2014 ("Thirsty" or "Plaintiff").  Thirsty suffers from major
depressive disorder, cognitive defects, and traumatic brain injury, among
other severe medical conditions.  He requires medical care and assistance at
a Grand Lifestyles supportive living facility.  Thirsty was approved to
receive long-term care Medicaid benefits at Grand Lifestyles.  Pursuant to
Medicaid eligibility and approval, and/or a Medicaid MCO contract with
Cigna, for necessary custodial care expenses under the supportive living
program to Cigna.  Cigna has failed to provide to Thirsty timely payment
for supportive living facility services and custodial care expenses pursuant
to clean claims submitted to Cigna for payment.  Thirsty has a significant
outstanding balance owed to Grand Lifestyles as a result of long-term care
services provided to him by Grand Lifestyles.

t.  Terry Wright was admitted to a Grand Lifestyles supportive living facility
on or about April 9, 2014 ("Wright" or "Plaintiff").  Wright suffers from
major depressive disorder, among other severe medical conditions.  He
requires medical care and assistance at a Grand Lifestyles supportive living
facility.  Thirsty was approved to receive long-term care Medicaid benefits
at Grand Lifestyles.  Pursuant to Medicaid eligibility and approval, and/or a
Medicaid MCO contract with Humana, Wright submitted claims for
necessary custodial care expenses under the supportive living program to
Humana.  Humana has failed to provide to Wright timely payment for
supportive living facility services and custodial care expenses pursuant to

clean claims submitted to Humana for payment.  Wright has a significant outstanding balance owed to Grand Lifestyles as a result of long-term care services provided to him by Grand Lifestyles.

u.  Trudy Khan was admitted to an ICare skilled nursing facility on or about October 27, 2016 ("Khan" or "Plaintiff").  Khan suffers from schizoaffective disorder, emphysema, and age-related osteoporosis, among other severe medical conditions.  She requires twenty-four hour skilled nursing care at an ICare facility.  Khan was approved to receive long-term care Medicaid benefits at ICare.  Pursuant to Medicaid eligibility and approval, Khan submitted claims for necessary nursing facility services/medical expenses to Community Care Alliance.  Community Care Alliance has failed to provide to Khan timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Community Care Alliance for payment.  Khan has a significant outstanding balance owed to ICare as a result of long-term care and nursing facility services provided to her by ICare.

v.  Victorina Cruz was admitted to a Harmony skilled nursing facility on or about May 18, 2015 ("Cruz" or "Plaintiff").  Cruz suffers from dementia, chronic obstructive pulmonary disease, and tuberculosis, among other severe medical conditions.  She requires twenty-four hour skilled nursing care at a Harmony facility.  Cruz was approved to receive long-term care Medicaid benefits at Harmony.  Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Illinicare, Cruz submitted

claims for necessary nursing facility services/medical expenses to Illinicare. Illinicare has failed to provide to Cruz timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Illinicare for payment. Cruz has a significant outstanding balance owed to Harmony as a result of long-term care and nursing facility services provided to her by Harmony.

w. Miguel Catala was admitted to a Harmony skilled nursing facility on or about August 14, 2012 ("Catala" or "Plaintiff"). Catala suffers from major depressive disorder, cerebrovascular disease, and blindness, among other severe medical conditions. He requires twenty-four hour skilled nursing care at a Harmony facility. Catala was approved to receive long-term care Medicaid benefits at Harmony. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Meridian, Catala submitted claims for necessary nursing facility services/medical expenses to Meridian. Meridian has failed to provide to Catala timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Meridian for payment. Catala has a significant outstanding balance owed to Harmony as a result of long-term care and nursing facility services provided to him by Harmony.

x. Claudia Hale was admitted to a Harmony skilled nursing facility on or about November 2, 2010 ("Hale" or "Plaintiff"). Hale suffers from Parkinson's disease, chronic obstructive pulmonary disease, and type 2 diabetes, among other severe medical conditions. She requires twenty-four hour skilled

nursing care at a Harmony facility. Hale was approved to receive long-term care Medicaid benefits at Harmony. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Illinicare, Hale submitted claims for necessary nursing facility services/medical expenses to Illinicare. Illinicare has failed to provide to Hale timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Illinicare for payment. Hale has a significant outstanding balance owed to Harmony as a result of long-term care and nursing facility services provided to her by Harmony.

y.   Cecil Gittens was admitted to a Legacy skilled nursing facility on or about October 3, 2014 ("Gittens" or "Plaintiff"). Gittens suffers from dementia, muscle weakness, and heart failure, among other severe medical conditions. She requires twenty-four hour skilled nursing care at a Legacy facility. Gittens was approved to receive long-term care Medicaid benefits at Legacy. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO with Community Care Alliance, Gittens submitted claims for necessary nursing facility services/medical expenses to Community Care Alliance. Community Care Alliance has failed to provide to Gittens timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Community Care Alliance for payment. Gittens has a significant outstanding balance owed to Legacy as a result of long-term care and nursing facility services provided to her by Legacy.

z.  Harry Mueller was admitted to a Legacy skilled nursing facility on or about September 3, 2010 ("Mueller" or "Plaintiff").  Mueller suffers from schizoaffective disorder, schizophrenia, and chronic total occlusion of coronary artery, among other severe medical conditions.  He requires twenty-four hour skilled nursing care at a Legacy facility.  Mueller was approved to receive long-term care Medicaid benefits at Legacy.  Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with BCBS, Mueller submitted claims for necessary nursing facility services/medical expenses to BCBS.  BCBS has failed to provide to Mueller timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to BCBS for payment.  Mueller has a significant outstanding balance owed to Legacy as a result of long-term care and nursing facility services provided to him by Legacy.

aa.  Glenda Buchholtz was admitted to a Legacy skilled nursing facility on or about March 10, 2017 ("Buchholtz" or "Plaintiff").  Buchholtz suffers from schizophrenia and end stage renal disease, among other severe medical conditions.  She requires twenty-four hour skilled nursing care at a Legacy facility.  Buchholtz was approved to receive long-term care Medicaid benefits at Legacy.  Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Aetna Better Health, Buchholtz submitted claims for necessary nursing facility services/medical expenses to Aetna Better Health.  Aetna Better Health has failed to provide to Buchholtz timely payment for nursing facility services and/or necessary medical care

expenses pursuant to clean claims submitted to Aetna Better Health for payment. Buchholtz has a significant outstanding balance owed to Legacy as a result of long-term care and nursing facility services provided to her by Legacy.

bb. Barbara Craddock was admitted to a Symphony skilled nursing facility on or about July 16, 2016 ("Craddock" or "Plaintiff"). Craddock suffers from end stage renal disease, type 2 diabetes, and major depressive disorder, among other severe medical conditions. She requires twenty-four hour skilled nursing care at a Symphony facility. Craddock was approved to receive long-term care Medicaid benefits at Symphony. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Meridian, Craddock submitted claims for necessary nursing facility services/medical expenses to Meridian. Meridian has failed to provide to Craddock timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Meridian for payment. Craddock has a significant outstanding balance owed to Symphony as a result of long-term care and nursing facility services provided to her by Symphony.

cc. Daryl Jones was admitted to a Symphony skilled nursing facility on or about September 25, 2015 ("Jones" or "Plaintiff"). Jones suffers from schizoaffective disorder, chronic kidney disease, and convulsions, among other severe medical conditions. He requires twenty-four hour skilled nursing care at a Symphony facility. Jones was approved to receive long-

term care Medicaid benefits at Symphony.  Pursuant to Medicaid eligibility

and approval, and/or a Medicaid MCO contract with BCBS, Jones

submitted claims for necessary nursing facility services/medical expenses

to BCBS.  BCBS has failed to provide to Jones timely payment for nursing

facility services and/or necessary medical care expenses pursuant to clean

claims submitted to BCBS for payment.  Jones has a significant outstanding

balance owed to Symphony as a result of long-term care and nursing facility

services provided to him by Symphony.

dd. Crystal Garrett was admitted to a Symphony skilled nursing facility on or

about September 20, 2017 ("Garrett" or "Plaintiff").   Garrett suffers from

cognitive communication deficit, muscle weakness, and end stage renal

disease, among other severe medical conditions.  She requires twenty-four

hour skilled nursing care at a Symphony facility.  Garrett was approved to

receive long-term care Medicaid benefits at Symphony.   Pursuant to

Medicaid eligibility and approval, and/or a Medicaid MCO contract with

BCBS, Garrett submitted claims for necessary nursing facility

services/medical expenses to BCBS.  BCBS has failed to provide to Garrett

timely payment for nursing facility services and/or necessary medical care

expenses pursuant to clean claims submitted to BCBS for payment.  Garrett

has a significant outstanding balance owed to Symphony as a result of long-

term care and nursing facility services provided to her by Symphony.

ee. Kirk Lis was admitted to a Symphony skilled nursing facility on or about

July 12, 2016 ("Lis" or "Plaintiff").   Lis suffers from atherosclerotic heart

disease, type 2 diabetes, and history of falling, among other severe medical conditions. He requires twenty-four hour skilled nursing care at a Symphony facility. Lis was approved to receive long-term care Medicaid benefits at Symphony. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Meridian, Lis submitted claims for necessary nursing facility services/medical expenses to Meridian. Meridian has failed to provide to Lis timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Meridian for payment. Lis has a significant outstanding balance owed to Symphony as a result of long-term care and nursing facility services provided to him by Symphony.

ff. Dannah Norwood was admitted to a Symphony skilled nursing facility on or about May 14, 2013 ("Norwood" or "Plaintiff"). Norwood suffers from cognitive communication deficit, chronic obstructive pulmonary disease, and schizophrenia, among other severe medical conditions. She requires twenty-four hour skilled nursing care at a Symphony facility. Norwood was approved to receive long-term care Medicaid benefits at Symphony. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with CountyCare, Norwood submitted claims for necessary nursing facility services/medical expenses to CountyCare. CountyCare has failed to provide to Norwood timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to CountyCare for payment. Norwood has a significant outstanding balance

owed to Symphony as a result of long-term care and nursing facility services provided to her by Symphony.

gg. Idella Adell was admitted to a Villa skilled nursing facility on or about November 19, 2013 ("Adell" or "Plaintiff"). Adell suffers from chronic kidney disease, dementia, and neuromuscular dysfunction of bladder, among other severe medical conditions. She requires twenty-four hour skilled nursing care at a Villa facility. Adell was approved to receive long-term care Medicaid benefits at Villa. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Meridian, Adell submitted claims for necessary nursing facility services/medical expenses to Meridian. Meridian has failed to provide to Adell timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Meridian for payment. Adell has a significant outstanding balance owed to Villa as a result of long-term care and nursing facility services provided to her by Villa.

hh. Helen Emerson was admitted to a Villa skilled nursing facility on or about January 9, 2017 ("Emerson" or "Plaintiff"). Emerson suffers from age-related physical debility and carcinoma, among other severe medical conditions. She requires twenty-four hour skilled nursing care at a Villa facility. Emerson was approved to receive long-term care Medicaid benefits at Villa. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with BCBS, Emerson submitted claims for necessary nursing faciliUty services/medical expenses to BCBS. BCBS has failed to

provide to Emerson timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to BCBS for payment. Emerson has a significant outstanding balance owed to Villa as a result of long-term care and nursing facility services provided to her by Villa.

ii.  Sophie Krasula was admitted to a Villa skilled nursing facility on or about March 25, 2009 ("Krasula" or "Plaintiff"). Krasula suffers from dementia, difficulty in walking, and convulsions, among other severe medical conditions. She requires twenty-four hour skilled nursing care at a Villa facility. Krasula was approved to receive long-term care Medicaid benefits at Villa. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Meridian, Krasula submitted claims for necessary nursing facility services/medical expenses to Meridian. Meridian has failed to provide to Krasula timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Meridian for payment. Krasula has a significant outstanding balance owed to Villa as a result of long-term care and nursing facility services provided to her by Villa.

jj.  Johnnie King was admitted to a Villa skilled nursing facility on or about April 6, 2016 ("King" or "Plaintiff"). King suffers from dementia, type 2 diabetes, and chronic ischemic heart disease, among other severe medical conditions. He requires twenty-four hour skilled nursing care at a Villa facility. King was approved to receive long-term care Medicaid benefits at

Villa.  Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Meridian, King submitted claims for necessary nursing facility services/medical expenses to Meridian.  Meridian has failed to provide to King timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Meridian for payment.  King has a significant outstanding balance owed to Villa as a result of long-term care and nursing facility services provided to him by Villa.

kk. James Hubbard was admitted to a Villa skilled nursing facility on or about April 6, 2016 ("Hubbard" or "Plaintiff").  Hubbard suffers from acute kidney failure and cerebral infarction, among other severe medical conditions.  He requires twenty-four hour skilled nursing care at a Villa facility.  Hubbard was approved to receive long-term care Medicaid benefits at Villa.  Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Aetna Better Health, Hubbard submitted claims for necessary nursing facility services/medical expenses to Aetna Better Health.  Aetna Better Health has failed to provide to Hubbard timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Aetna Better Health for payment.  Hubbard has a significant outstanding balance owed to Villa as a result of long-term care and nursing facility services provided to him by Villa.

ll. Luvenia Stevenson was admitted to a Villa skilled nursing facility on or about January 23, 2017 ("Stevenson" or "Plaintiff").  Stevenson suffers

from dementia and type 2 diabetes, among other severe medical conditions. She requires twenty-four hour skilled nursing care at a Villa facility. Stevenson was approved to receive long-term care Medicaid benefits at Villa. Pursuant to Medicaid eligibility and approval, and/or a Medicaid MCO contract with Meridian, Stevenson submitted claims for necessary nursing facility services/medical expenses to Meridian. Meridian has failed to provide to Stevenson timely payment for nursing facility services and/or necessary medical care expenses pursuant to clean claims submitted to Meridian for payment. Stevenson has a significant outstanding balance owed to Villa as a result of long-term care and nursing facility services provided to her by Villa.

11.     Aetna Medicaid Administrators, LLC, d/b/a Aetna Better Health, Inc. ("Aetna Better Health" or "Defendant MCO") is a Connecticut corporation doing business in the State of Illinois. Aetna Better Health has contracted with certain Illinois supportive living and/or skilled nursing home facilities to provide Medicaid benefits to residents of these supportive living and/or skilled nursing home facilities who are approved to receive long-term care Medicaid benefits.

12.     Meridian Health Plan, Inc. ("Meridian Health Plan" or "Defendant MCO") is Michigan corporation doing business in the State of Illinois. Meridian Health Plan has contracted with certain Illinois supportive living and/or skilled nursing home facilities to provide Medicaid benefits to residents of these supportive living and/or skilled nursing home facilities who are approved to receive long-term care Medicaid benefits.

13.     Community Care Alliance of Illinois, LLC. ("Community Care Alliance" or "Defendant MCO") is an Illinois Corporation doing business in the State of Illinois. Community Care

Alliance has contracted with certain Illinois supportive living and/or skilled nursing home facilities to provide Medicaid benefits to residents of these supportive living and/or skilled nursing home facilities who are approved to receive long-term care Medicaid benefits.

14.     Healthcare Service Corporation, d/b/a Blue Cross Blue Shield of Illinois ("BCBS" or "Defendant MCO") is an Illinois Corporation doing business in the State of Illinois.  BCBS has contracted with certain Illinois supportive living and/or skilled nursing home facilities to provide Medicaid benefits to residents of these supportive living and/or skilled nursing home facilities who are approved to receive long-term care Medicaid benefits.

15.     Illinicare Health Plan, Inc. ("Illinicare" or "Defendant MCO") is an Illinois Corporation doing business in the State of Illinois.  Illinicare has contracted with certain Illinois supportive living and/or skilled nursing home facilities to provide Medicaid benefits to residents of these supportive living and/or skilled nursing home facilities who are approved to receive long-term care Medicaid benefits.

16.     Cook County is a municipal government within the State of Illinois.  Cook County Health and Hospitals System is an agency of the government of Cook County, Illinois.  Cook County Health and Hospitals Systems, through CountyCare Health Plan, ("CountyCare" or "Defendant MCO"), has contracted with certain Illinois supportive living and/or skilled nursing home facilities to provide Medicaid benefits to residents of these supportive living and/or skilled nursing home facilities who are approved to receive long-term care Medicaid benefits.

17.     NextLevel Health Partners, Inc. ("NextLevel" or "Defendant MCO") is an Illinois Corporation doing business in the State of Illinois.  NextLevel has contracted with certain Illinois supportive living and/or skilled nursing home facilities to provide Medicaid benefits to residents of these supportive living and/or skilled nursing home facilities who are approved to receive long-term care Medicaid benefits.

18.     WellCare Health Plans, Inc. ("WellCare" or "Defendant MCO") is Florida Corporation doing business in the State of Illinois.  WellCare has contracted with certain Illinois supportive living and/or skilled nursing home facilities to provide Medicaid benefits to residents of these supportive living and/or skilled nursing home facilities who are approved to receive long-term care Medicaid benefits.

19.     Cigna Corporation, d/b/a Cigna-HealthSpring CarePlan of Illinois ("Cigna" or "Defendant MCO") is Delaware Corporation doing business in the State of Illinois.  Cigna has contracted with certain Illinois supportive living and/or skilled nursing home facilities to provide Medicaid benefits to residents of these supportive living and/or skilled nursing home facilities who are approved to receive long-term care Medicaid benefits.

20.     Humana, Inc. ("Humana" or "Defendant MCO") is Kentucky Corporation doing business in the State of Illinois.  Humana has contracted with certain Illinois supportive living and/or skilled nursing home facilities to provide Medicaid benefits to residents of these supportive living and/or skilled nursing home facilities who are approved to receive long-term care Medicaid benefits.

21.     Molina Healthcare of Illinois, Inc. ("Molina" or "Defendant MCO") is an Illinois Corporation doing business in the State of Illinois.  Molina has contracted with certain Illinois supportive living and/or skilled nursing home facilities to provide Medicaid benefits to residents of these supportive living and/or skilled nursing home facilities who are approved to receive long-term care Medicaid benefits.

22.     The Illinois Department of Healthcare and Family Services ("HFS" or "Defendant") is an Illinois state agency that provides Medicaid services to enrollees in Illinois. HFS is the sole state agency administering Medicaid in the State of Illinois.

23. The Felicia F. Norwood, is the Director of HFS ("Norwood" or "Defendant"), and at all times material to this Complaint acted under color of state law in administering the regulations, customs, policies, and practices material herein. She is sued in her official capacity only.

## IV. CLASS ALLEGATIONS

### A. COMMON QUESTIONS OF LAW AND FACT.

The named Plaintiffs are members of the class they seek to represent. The class consists of residents/Medicaid beneficiaries residing at supportive living or skilled nursing facilities, who were provided twenty-four hour skilled nursing care and supportive living services. All Plaintiffs were insolvent and/or medically needy and/or disabled and entitled to receive Medicaid benefits pursuant to federal and state law and are "qualified individuals with a disability," as defined under the ADA, 42 U.S.C. § 12132 *et. seq*. and the Rehabilitation Act, 28 C.F.R. § 35.130 *et. seq*. The Defendants violated Plaintiffs' rights by not providing for nursing facility services for eligible and approved qualified residents residing at supportive living and/or nursing home facilities. These actions by Defendants violate the Federal Medicaid Act, 42 U.S.C. §§ 1396a(a)(8) 1396a(a)(10).

The Plaintiffs seek an Order from the Court providing injunctive relief by issuing an Order from the Court requiring the Defendants to provide for supportive living and/or nursing facility services for all approved Medicaid claims submitted by Plaintiffs pursuant to 42 U.S.C. §§ 1396(a), 1902(a)(37)(A).

### B. TYPICALITY OF CLAIMS AND RELIEF SOUGHT

The claims of the named Plaintiffs and the relief necessary to remedy the claims of the named Plaintiffs are the same as the claims of the putative class members and the relief necessary to remedy the claims of the putative class members. The Plaintiffs seek an Order from the Court providing injunctive relief by issuing an Order from the Court requiring the Defendant to provide

for nursing facility services for all approved Medicaid claims submitted by Plaintiffs pursuant to 42 U.S.C. §§ 1396(a), 1902(a)(37)(A).

### C.     NUMEROSITY AND IMPRACTICABILITY OF JOINDER

The class which Plaintiffs seek to represent are too numerous to make joinder practicable.

### D.     ADEQUACY OF REPRESENTATION

The class' representatives' interests are coextensive with those of the putative class in that each seeks to remedy Defendants' violations herein stated.  The class representatives are able and willing to represent the putative class fairly and vigorously as they pursue their common claims through this action.  Plaintiffs' counsel is also qualified, experienced, and able to conduct the litigation and to meet the time and fiscal demands required to litigate a class action of this size and complexity.  The combined interest, experience and resources of the named Plaintiffs and their counsel to litigate competently the individual and class' claims satisfy the adequacy of representation requirement.

### E.     EFFICIENCY OF CLASS PROSECUTION OF COMMON CLAIMS

Certification of class of similarly situated Medicaid beneficiaries, who were adversely treated as stated above under the Act is the most efficient and economical means of resolving the questions of law and fact that are common to the individual claims of the named Plaintiffs and the putative class.  The individual claims of the named Plaintiffs and those of the putative class require resolution of the common question of whether the Defendants have engaged in adverse treatment of Medicaid beneficiaries.  The named Plaintiffs seek for themselves and the putative class remedies to eliminate the Defendants' violations.  The named Plaintiffs have standing to seek such relief. Without class certification, the same evidence and issues would be subject to repeated re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications

and conflicting obligations. Certification of the class of individuals as defined by the Class Definition herein, as those affected by these common questions of law and fact, is the most efficient and judicial means of presenting the evidence and arguments necessary to resolve such questions for the named Plaintiffs, the putative class, and the Defendants.

### F.      REQUIREMENTS OF RULE 23(b)(2)

The Defendants have acted on grounds generally applicable to the class by violating the rights of the Plaintiff residents/Medicaid beneficiaries as stated herein.  The Defendants' actions have violated federal and state laws.   Therefore, the Defendants' adverse actions have made temporary and permanent injunctive relief and corresponding declaratory relief appropriate with respect to the named Plaintiffs and putative class as a whole. Injunctive and declaratory relief is the predominate relief sought.  Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the existence of the denial of benefits and the failure to comply with Federal regulations.  Such relief is the factual and legal predicate for the named Plaintiffs' and class members' entitlement to monetary and non-monetary remedies for losses caused by such treatment.  The Plaintiff residents/Medicaid beneficiaries and the similarly situated individuals are similar because their rights are the same, their classifications are the same, and their harm is the same.  The Plaintiffs and the similarly situated individuals meet the collective action requirements of commonality, typicality and numerosity.

### G.      CLASS' DEFINITION

The class consists of:

All disabled and/or medically needy persons who require medical care at a  Bria, Aperion, ICare, Legacy, Harmony, Symphony, Villa, Everest, and/or Grand Lifestyles network of supportive living and/or skilled nursing facilities, who are eligible for and approved to receive Medicaid benefits pursuant to Medicaid eligibility and approval and/or a contract with one or more Defendant MCOs, and who have submitted Medicaid claims to any of the Defendant MCOs and have failed to receive payment for said claim(s) pursuant to the

Defendant MCOs' requirement to provide for claims payment procedures which ensure that 90 per centum of claims for payment made for services covered under the plan are paid within 30 days of the date of receipt of such claims and that 99 per centum of such claims are paid within 90 days of the date of the receipt of such claims.

## V. STATEMENT OF FACTS

1.      The named Plaintiffs are members of the class they seek to represent.  The class consists of supportive living and/or nursing facility residents residing at facilities, who were provided twenty-four hour skilled nursing care and/or supportive living services, and who were insolvent and/or disabled, and entitled to receive Medicaid benefits pursuant to federal and state law and are "qualified individuals with a disability," as defined under the ADA, 42 U.S.C. § 12132 et. seq. and 28 C.F.R. § 35.130 *et. seq.*

2.      The Illinois State Medicaid Plan operates under the statutory authority of Title XIX of the Social Security Act Medical Assistance Program.

3.      As a condition of receiving federal funds, Defendant HFS is required to administer the Medicaid program in the state of Illinois in compliance with the Federal Medicaid Act, 42 U.S.C. § 1396a(a)(8), and implementing regulations.

4.      Defendant HFS contracts with Defendant MCOs to provide health care services for patients who qualify for Medicaid in the state of Illinois.

5.      The actions of the MCOs as alleged herein are imputed to Defendant HFS.

6.      The Defendant MCOs acted under color of state law for purposes of 42 U.S.C. § 1983 as Defendant MCOs are willing participants in joint action with Defendant HFS.

7.      Defendant MCOs and Defendant HFS jointly acted and/or conspired against Plaintiffs by failing to comply with the Federal Medicaid Act with respect to submitting to Plaintiffs Medicaid benefits for which they are eligible for and are approved to receive.

8.     Defendant MCOs acted, pursuant to its contract with Defendant HFS, as the state actor in providing Medicaid benefits to Plaintiffs.

9.     Pursuant to 42 U.S.C. § 1396u-2 and 42 C.F.R. § 438.10 states may choose to contract with MCOs in the administration of the state's Medicaid program.

10.     Pursuant to 42 U.S.C. §§ 1396(a), 1902(a)(37)(A), the MCOs are required to provide for claims payment procedures which "ensure that 90 per centum of claims for payment made for services covered under the plan…are paid within 30 days of the date of receipt of such claims and that 99 per centum of such claims are paid within 90 days of the date of the receipt of such claims."

11.     Defendant MCOs have failed to reimburse the Plaintiff residents/Medicaid beneficiaries within the time periods mandated by federal law.

12.     As a direct result of the MCOs failure to reimburse Medicaid claims to the supportive living and/or skilled nursing facilities, the Plaintiff residents/Medicaid beneficiaries have failed to receive public assistance and necessary medical benefits to which they are entitled pursuant to federal law.

13.     Defendant HFS and Defendant MCOs have failed to provide a system which ensures that medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to all individuals meeting specified financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

14.     As a direct result of the Defendant's failure to timely process their Medicaid benefits and claims, Plaintiff residents/Medicaid beneficiaries have failed to receive supportive living and/or nursing facility services provided by Defendants, which they are entitled pursuant to federal law.

15.     In light of the Defendants' failure to comply with federal and state Medicaid laws, the Plaintiff residents/Medicaid beneficiaries have been unable to pay for their room, board, care and services as Defendants have failed to provide the medical benefits Plaintiff residents/Medicaid beneficiaries are entitled to.

16.     Such actions by the Defendants places the Plaintiff residents/Medicaid beneficiaries at risk of being discharged from the supportive living and/or nursing home facility where they receive medical care and supportive living and/or nursing facility services, and jeopardizes their health, safety, and well-being.

17.     All of the Plaintiff residents/Medicaid beneficiaries are "qualified individuals with a disability," as defined under the ADA, 42 U.S.C. § 12132 *et. seq.,* the Rehabilitation Act of 1973, 29 U.S.C. § 705 *et. seq.*, and 28 C.F.R. § 35.130 *et. seq.*

18.     The Defendants' failure to afford the Plaintiff residents/Medicaid beneficiaries public benefits and services, to which they are entitled under federal law, and failure to grant the Plaintiff residents/Medicaid beneficiaries Medicaid benefits as a reasonable accommodation, constitutes actual or predictable discrimination in violation of the ADA, 42 U.S.C. § 12132 *et seq.,* the Rehabilitation Act of 1973, 29 U.S.C. § 705 *et. seq.*, and 28 C.F.R. § 35.130 e*t seq.*

19.     By failing to pay for services rendered to persons eligible for and approved to receive Medicaid benefits, the Defendants have failed to comply with federal law, as preempted by the Supremacy Clause of the United States Constitution, Article VI. The burden placed on the Defendants, should the Court grant the relief requested in this action, is that Defendants will be required to comply with federal Medicaid laws and provide for supportive living and/or nursing facility services to Plaintiffs. The Defendants stand to suffer diminutive, if any, burden by the

timely rendering of payment of Plaintiffs' Medicaid claims to Plaintiff residents/Medicaid beneficiaries.

## VI. CAUSES OF ACTION

## COUNT ONE  - DECLARATORY JUDGMENT RELIEF

20.     Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

21.     Pursuant to 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure, Plaintiffs seek a declaration by this Court.

22.     It is well settled that the district court's exercise of discretion in a declaratory judgment action should be informed by a number of prudential factors, including: (1) considerations of practicality and efficient judicial administration; (2) the functions and limitations of the federal judicial power; (3) traditional principles of equity, comity, and federalism; (4) Eleventh Amendment and other constitutional concerns; and (5) the public interest. *Smith & Usaha, supra* note 2, at 116, *citing* . *Wilton v. Seven Falls Company, 515 U.S. 288 (1995); Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Rickover*, 369 U.S. 111 at 112-13; *Public Service Commission of Utah v. Wycoff Company*, 344 U.S. 237, 243-47 (1952). Perhaps the most important factors are whether a declaratory judgment will serve a useful purpose and resolve the controversy between the parties. *Smith & Usaha, supra not*e 2, at 116 (collecting cases); *Wilton*, 515 U.S. at 288; *Green v. Mansour*, 474 U.S. 64, 74 (1985); *Rickover*, 369 U.S. 111 at 112-13*G*; *Wycoff*, 344 U.S. at 244.

23.     The Illinois State Medicaid Plan operates under the statutory authority of Title XIX of the Social Security Act Medical Assistance Program.

24.     As a condition of receiving federal funds, Defendant HFS is required to administer the Medicaid program in the state of Illinois in compliance with the Federal Medicaid Act, 42 U.S.C. § 1396a(a)(8), and implementing regulations.

25.     Defendant HFS contract with Defendant MCOs to provide health care services for patients who qualify for Medicaid in the state of Illinois.

26.     The actions of the MCOs as alleged herein are imputed to Defendant HFS.

27.     Defendant MCOs and Defendant HFS jointly acted and/or conspired against Plaintiffs by failing to comply with the Federal Medicaid Act with respect to submitting to Plaintiffs Medicaid benefits for which they are eligible for and are approved to receive.

28.     Pursuant to 42 U.S.C. § 1396u-2 and 42 C.F.R. § 438.10 states may choose to contract with MCOs in the administration of the state's Medicaid program.

29.     Pursuant to 42 U.S.C. §§ 1396(a), 1902(a)(37)(A), the MCOs are required to provide for claims payment procedures which "ensure that 90 per centum of claims for payment made for services covered under the plan…are paid within 30 days of the date of receipt of such claims and that 99 per centum of such claims are paid within 90 days of the date of the receipt of such claims."

30.     Defendant MCOs have failed to reimburse the Plaintiff residents/Medicaid beneficiaries within the time periods mandated by federal law.

31.     As a direct result of the MCOs failure to reimburse Medicaid claims to the supportive living and/or skilled nursing facilities, the Plaintiff residents/Medicaid beneficiaries have failed to receive public assistance and necessary medical benefits to which they are entitled pursuant to federal law.

32.     Defendant HFS and Defendant MCOs have failed to provide a system which ensures that medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to all individuals meeting specified financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

33.     As a direct result of the Defendant's failure to timely process their Medicaid benefits and claims, Plaintiff residents/Medicaid beneficiaries have failed to receive supportive living and/or nursing facility services provided by Defendants, which they are entitled pursuant to federal law.

34.     In light of the Defendants' failure to comply with federal and state Medicaid laws, the Plaintiff residents/Medicaid beneficiaries have been unable to pay for their room, board, care and services as Defendants have failed to provide the medical benefits Plaintiff residents/Medicaid beneficiaries are entitled to.

35.     Such actions by the Defendants places the Plaintiff residents/Medicaid beneficiaries at risk of being discharged from the supportive living and/or nursing home facility where they receive medical care and nursing facility services, and jeopardizes their health, safety, and well-being.

36.     All of the Plaintiff residents/Medicaid beneficiaries are "qualified individuals with a disability," as defined under the ADA, 42 U.S.C. § 12132 *et. seq.,* the Rehabilitation Act of 1973, 29 U.S.C. § 705 *et. seq.*, and 28 C.F.R. § 35.130 *et. seq.*

37.     The Defendants' failure to afford the Plaintiff residents/Medicaid beneficiaries public benefits and services, to which they are entitled under federal law, and failure to grant the Plaintiff residents/Medicaid beneficiaries Medicaid benefits as a reasonable accommodation,

constitutes actual or predictable discrimination in violation of the ADA, 42 U.S.C. § 12132 *et seq.,* the Rehabilitation Act of 1973, 29 U.S.C. § 705 *et. seq.*, and 28 C.F.R. § 35.130 e*t seq.*

38.    By failing to pay for services rendered to persons eligible for and approved to receive Medicaid benefits, the Defendants have failed to comply with federal law, as preempted by the Supremacy Clause of the United States Constitution, Article VI. The burden placed on the Defendants, should the Court grant the relief requested in this action, is that Defendants will be required to comply with federal Medicaid laws and provide for supportive living and/or nursing facility services to Plaintiffs. The Defendants stand to suffer diminutive, if any, burden by the timely rendering of payment of Plaintiffs' Medicaid claims to Plaintiff residents/Medicaid beneficiaries.

39.    Plaintiffs seek a declaratory judgment from this Court declaring that Defendants are in violation of the Federal Medicaid Act by failing to timely submit to Plaintiff residents/Medicaid beneficiaries medical benefits as required under 42 U.S.C. §§ 1396(a), 1902(a)(37)(A) and for its failure to ensure that medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to all individuals meeting specified financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

## COUNT TWO - VIOLATION OF THE FEDERAL MEDICAID ACT'S MEDICAL ASSISTANCE, AND NURSING FACILITY SERVICES MANDATE

40.    The Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

41.    In violation of the medical assistance and nursing facility services provisions of the Medicaid Act, 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4)(A), the Defendants, while acting under the color of law, have failed to provide the Plaintiff residents/Medicaid beneficiaries with

supportive living and/or nursing facility services necessary for the health and welfare of these disabled Plaintiffs.

42.    The Defendants' violations, which have been repeated and knowing, entitle the Plaintiffs to relief under 42 U.S.C. § 1983.

## COUNT THREE - VIOLATION OF THE FEDERAL MEDICAID ACT'S REASONABLE PROMPTNESS REQUIREMENT

43.    The Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

44.    The Plaintiffs residents/Medicaid beneficiaries are all Medicaid-eligible individuals who require supportive living and/or nursing facility services and reside in Illinois.

45.    The Defendants are engaged in the repeated, ongoing failure to arrange and provide medical assistance and supportive living and/or nursing facility services despite the fact that medical assistance and supportive living and/or nursing facility services are medically necessary for all named Plaintiffs.

46.    In violation of 42 U.S.C. § 1396a(a)(8) of the Federal Medicaid Act, the Defendants, while acting under the color of law, failed to provide services to the Plaintiffs with "…reasonable promptness…". Furthermore, the Defendant is required to administer the Medicaid program in compliance with 42 C.F.R. §435.930 (requiring applicants be afforded Medicaid benefits without any delay).

47.    The Defendants' violations, which have been repeated and knowing, entitle the Plaintiffs to relief under 42 U.S.C. § 1983.

## COUNT FOUR – VIOLATION OF THE "AMERICANS WITH DISABILITIES ACT" ("ADA"), 42 U.S.C. §12132

48.    The Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

49.    The Defendants have failed to provide a system which ensures that medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to all individuals meeting specified financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

50.    All of the Plaintiffs are "qualified individuals with a disability," as defined under the ADA, 42 U.S.C. § 12132 *et. seq*. and 28 C.F.R. § 35.130 *et. seq*.

51.    The Defendant's failure to afford the Plaintiffs public benefits and services, to which they are entitled under federal law, and failure to grant the residents Medicaid benefits as a reasonable accommodation, constitutes actual or predictable discrimination in violation of the ADA, 42 U.S.C. § 12132 *et seq*. and 28 C.F.R. § 35.130 *et seq*.

52.    As a consequence of' Defendant's actions as described herein, Plaintiffs have suffered damages, including compensatory, mental anguish and other damages.

## COUNT FIVE – VIOLATION OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 794

53.    The Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

54.    Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits public entities and recipients of federal funds from discriminating against any individual by reason of disability. Policies, practices, and procedures that have the effects of unjustifiably denying access to public services and benefits to persons with disabilities constitute prohibited discrimination under the Rehabilitation Act.

55.    Defendants are recipients of federal funds under the Rehabilitation Act. The Plaintiffs are qualified individuals with a disability under Section 504 of the Rehabilitation Act.

56.    The actions by Defendants constitute unlawful discrimination under 29 U.S.C. § 794(a), violate the mandate that no qualified handicapped person should be denied benefits on the

basis of handicap, and violate the regulations implementing this statutory prohibition.  28 C.R.R. § 41.51(d).

57.    Plaintiffs are individuals who require supportive living and/or skilled nursing care for their health, welfare, and survival.  The Defendant's failure to provide supportive living and/or nursing facility services to Plaintiffs violates § 504 of the Rehabilitation act of 1973 and its implementing regulations.

58.    As a consequence of' Defendant's actions as described herein, Plaintiffs have suffered damages, including compensatory, mental anguish and other damages.

## COUNT SIX – VIOLATION OF DUE PROCESS
## AND EQUAL PROTECTION (42 U.S.C. § 1983)

59.    The Plaintiffs incorporate all paragraphs set out above as if fully set out herein

60.    Defendants deprived Plaintiffs of their property interest to which Plaintiffs have a legitimate claim of entitlement.  The procedures implemented by Defendants to deprive Plaintiffs of their property interest are constitutionally insufficient.

61.    To comply with the procedural Due Process guarantees under the United States Constitution, the Defendants must provide the Plaintiffs with a meaningful notice that apprises them of the reasons for a denial of assistance, the authority for the denial, and an opportunity to appeal such denial of assistance.

62.    Plaintiffs are entitled to a hearing when such benefits are denied to them, or sought to be terminated, or recouped, or sought to be recouped, for the reasons enumerated under the Federal Medicaid act.

63.    Defendants' failure to allow for a sufficient hearing process for with respect to Plaintiffs' interest in Medicaid benefits, does not adequately apprise Plaintiffs of the actions against them, or of the reasons for actions taken against them, or the authority for the actions

taken against them.  Such actions by Defendants are inconsistent with the Due Process Clause of

the United States Constitution, Amendment XIV and the Medicaid Act, Title XIX of the Social

Security Act, Title 42 § 1396a, et seq., and its implementing regulations.

64.     Defendants have deprived Plaintiff of his property interests under color of law

without due process of law in violation of the Due Process Clause of the Fifth and Fourteenth

Amendments to the United States Constitution.

65.     Plaintiffs' property interests are of a type protected by the Fifth and Fourteenth

Amendments to the United States Constitution.

66.      Plaintiffs possess a legitimate claim of entitlement and justifiable expectation in

their property interests.

67.     The Defendants acted wilfully, knowingly, and purposefully with the specific

intent to deprive Plaintiffs of their rights, privileges, and immunities secured by the Constitution

and laws by the Fourteenth Amendment to the Constitution of the United States and by 42

U.S.C. §1983.

68.     The above acts were committed under color of state law by the Defendants. Said

acts were committed by the Defendants by and through representatives of the Defendants acting

under color of state law and in their official capacities pursuant to the statutes, ordinances, laws

and policies of the Defendants.

## COUNT SEVEN – TEMPORARY AND PERMANENT INJUNCTION

69.     The Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

70.     The above acts were committed under color of state law by the Defendant. Said acts

were committed by and through representatives of the Defendants acting in their official capacities

pursuant to the statutes, ordinances, laws and policies of the Defendants.

71.     The Plaintiffs demand temporary and permanent injunctive relief requiring that the Defendant provide for supportive living and/or nursing facility services for approved Medicaid benefits and claims.

72.     Issue an Order requiring the Defendants to automatically provide for nursing facility services to Plaintiffs.

## VII. REQUESTS FOR RELIEF

1.      Certify this case to proceed as a class action under Fed. R. Civ. P. 23(b)(2);

2.      Issue a Declaratory Judgment in favor of the Plaintiffs and the Class, requiring Defendant to adhere to the requirements of the Medicaid Act, the Americans with Disabilities Act, and the Rehabilitation Act;

3.      Declare unlawful the Defendant's failure to arrange for medical assistance and/or supportive living and/or nursing facility services to the Plaintiffs and Class;

4.      Issue Preliminary and Permanent Injunctive relief enjoining the Defendant from subjecting the Plaintiffs and the Class to practices that violate their rights under the Medicaid Act, the Americans with Disabilities Act, and the Rehabilitation Act;

5.      Issue Preliminary and Permanent Injunctive relief requiring the Defendant to arrange for medical assistance and/or supportive living and/or nursing facility services to the Plaintiffs and Class pursuant to the requirements of 42 U.S.C. §§ 1396(a), 1902(a)(37)(A);

6.      Award Plaintiffs and the Class the costs of this action, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205; § 504 of the Rehabilitation Act, and 42 U.S.C. § 1988; and,

7.      Award such other relief as the Court deems just and appropriate, including, but not limited to, compensatory and punitive damages, interest, expenses and costs.

**PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY.**

Respectfully submitted,

/s/ Katie Z. Van Lake
ARDC# 6292120
SB2, Inc.
1426 N. 3rd Street, Suite 200
Harrisburg, PA 17102
Telephone: (516) 509-1289
Facsimile: (717) 909-5925
kvanlake@sb2inc.com
*Attorney for Plaintiffs*

# CIVIL COVER SHEET

The ILND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(See instructions on next page of this form.)*

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
*(Except in U.S. plaintiff cases)*

County of Residence of First Listed Defendant _____
*(In U.S. plaintiff cases only)*
*Note: In land condemnation cases, use the location of the tract of land involved.*

**(c)** Attorneys *(firm name, address, and telephone number)*

Attorneys *(if known)*

## II. BASIS OF JURISDICTION *(Check one box, only.)*

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
*(U.S. Government not a party)*

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
*(Indicate citizenship of parties in Item III.)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(For Diversity Cases Only.)*
*(Check one box, only for plaintiff and one box for defendant.)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business in This State | 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business in Another State | 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Check one box, only.)*

| CONTRACT | TORTS | | PRISONER PETITIONS | LABOR | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 510 Motions to Vacate Sentence | ☐ 710 Fair Labor Standards Act | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | **Habeas Corpus:** | ☐ 720 Labor/Management Relations | ☐ 376 Qui Tam (31 USC 3729 (a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | ☐ 530 General | ☐ 740 Railway Labor Act | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | ☐ 535 Death Penalty | ☐ 751 Family and Medical | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & Slander | Pharmaceutical | ☐ 540 Mandamus & Other | Leave Act | ☐ 430 Banks and Banking |
| & Enforcement of Judgment | ☐ 330 Federal Employers' | Personal Injury | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation | ☐ 450 Commerce |
| ☐ 151 Medicare Act | Liability | Product Liability | ☐ 555 Prison Condition | ☐ 791 Employee Retirement | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury | ☐ 560 Civil Detainee – Conditions | Income Security Act | ☐ 470 Racketeer Influenced and |
| Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Product Liability | of Confinement | | Corrupt Organizations |
| ☐ 153 Recovery of Veteran's Benefits | ☐ 350 Motor Vehicle | | | | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | **PERSONAL PROPERTY** | | **PROPERTY RIGHTS** | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | Product Liability | ☐ 370 Other Fraud | | ☐ 820 Copyrights | ☐ 850 Securities/Commodities/ |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | | ☐ 830 Patent | Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury – | ☐ 380 Other Personal | | ☐ 835 Patent – Abbreviated | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | Property Damage | | New Drug Application | ☐ 891 Agricultural Acts |
| | | ☐ 385 Property Damage | | ☐ 840 Trademark | ☐ 893 Environmental Matters |
| | | Product Liability | | | ☐ 895 Freedom of Information Act |
| | | | | | ☐ 896 Arbitration |

| REAL PROPERTY | CIVIL RIGHTS | BANKRUPTCY | FORFEITURE/PENALTY | SOCIAL SECURITY | |
|---|---|---|---|---|---|
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 422 Appeal 28 USC 158 | ☐ 625 Drug Related Seizure | ☐ 861 HIA (1395ff) | ☐ 899 Administrative Procedure |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 423 Withdrawal 28 USC 157 | of Property 21 USC 881 | ☐ 862 Black Lung (923) | Act/Review or Appeal of |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | | ☐ 690 Other | ☐ 863 DIWC/DIWW (405(g)) | Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | | | ☐ 864 SSID Title XVI | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | Accommodations | **IMMIGRATION** | | ☐ 865 RSI (405(g)) | State Statutes |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 462 Naturalization Application | | | |
| | Employment | ☐ 463 Habeas Corpus – | | | |
| | ☐ 446 Amer. w/Disabilities - | Alien Detainee | | **FEDERAL TAXES** | |
| | Other | (Prisoner Petition ) | | ☐ 870 Taxes (U.S. Plaintiff | |
| | ☐ 448 Education | ☐ 465 Other Immigrant | | or Defendant) | |
| | | Actions | | ☐ 871 IRS—Third Party | |
| | | | | 26 USC 7609 | |

## V. ORIGIN *(Check one box, only.)*

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation
☐ 8 Multidistrict Litigation Direct File

## VI. CAUSE OF ACTION *(Enter U.S. Civil Statute under which you are filing and write a brief statement of cause.)*

## VII. Previous Bankruptcy Matters *(For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter previously adjudicated by a judge of this Court. Use a separate attachment if necessary.)*

## VIII. REQUESTED IN COMPLAINT:

☐ Check if this is a **class action** under Rule 23, F.R.CV.P.

DEMAND $

Check Yes only if demanded in complaint.
JURY DEMAND: ☐ Yes ☐ No

## IX. RELATED CASE(S) IF ANY *(See instructions)*

Judge

Case Number

## X. Is this a previously dismissed or remanded case? ☐ Yes ☐ No If yes, Case #

Date

Signature of attorney of record

Name of Judge

# APPENDIX "8"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| APERION CARE, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 17-cv-8920 |
| v. | ) | |
| | ) | Hon. Charles R. Norgle |
| FELICIA F. NORWOOD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Defendant Felicia Norwood's Motion to Dismiss [35] is granted; Cook County Defendants and Defendant MCO's Omnibus Motion to Dismiss [28] is granted; Plaintiffs' Complaint is dismissed with prejudice in its entirety. Civil case terminated. The Clerk shall enter judgment pursuant to Rule 58.

## STATEMENT

Plaintiffs Aperion Care, Inc.; Bria Health Services, LLC; Everest Care Group, LLC; Grand Lifestyles, LLC; ICare Financial Services, Inc.; ITEX Company, Inc.; Legacy Healthcare Financial Services, LLC; Maestro Consulting services, LLC; and Willa Financial Services, LLC (collectively "Plaintiffs") as Authorized Representatives of Illinois Medicaid beneficiaries bring this putative class action against Defendants Felicia Norwood, ("Norwood") in her official capacity as the Director of the Illinois Department of Healthcare and Family Services ("DHFS") and multiple entities contracted with DHFS to provide Medicaid to residents of Illinois ("Defendant MCOs"), and Cook County Health and Hospital System and CountyCare Health Plan ("Cook County Defendants"), (collectively "Defendants") for violations of 42 U.S.C. § 1396 *et seq*, the Americans with Disabilities Act (the "ADA"), as codified at 42 U.S.C. §12132 *et seq*, the Rehabilitation Act of 1973 (the "Rehab Act"), as codified at 29 U.S.C. § 794 *et seq*, and 42 U.S.C. § 1983. Before the Court is Defendant Norwood's motion to dismiss and Defendant MCOs and Cook County Defendants' omnibus motion to dismiss are granted. For the reasons provided, both motions are granted.

The Medicaid program was established under Title XIX of the Social Security Act, 42 U.S.C. §1396 et seq. (the "Medicaid Act") and is designed to provide health coverage for low-income individuals. Each state administers its own Medicaid program, and submits a plan to the federal Government for approval detailing the nature and scope of that state's Medicaid program. Id. at § 1396(a)(a) The state's plan must be in accordance with certain parameters established by the Federal government. A state is permitted to implement their Medicaid programs through a fee for service model or a managed care model. Under the managed care model, the state contracts with managed care organizations ("Medicaid MCOs") to allow those companies to

MCOs are required to contract with a sufficient number of health care providers to establish an adequate network. See 42 C.F.R. § 438.68.

Additionally, it is the responsibility of the state agency to monitor all Medicaid MCO programs. 42 C.F.R. § 438.66(a), (b). The state Medicaid agency must ensure that the Medicaid MCO's provide payment to the health care providers for services furnished to Medicaid beneficiaries on a timely basis. 42 U.S.C. § 1936a(a)(37)(A) (the "Payment Procedures Statute") (requiring "that 90 per centum of claims for payment … made for services covered under the plan and furnished by health care practitioners … are paid within 30 days of the date of receipt of such claims and that 99 per centum of such claims are paid within 90 days of the date of receipt of such claims[.]"). Importantly, the Medicaid beneficiaries that receive services from health care providers cannot be held liable for the costs of services provided to that individual. 42 U.S.C. § 1396u-2(b)(6)(B).

Plaintiffs filed their putative class action Complaint on December 12, 2017. Plaintiffs allege that nursing homes and other long-term care facilities ("LTC Facilities") performed services for Medicaid beneficiaries (the "Residents") who reside at the respective LTC Facilities. Plaintiffs aver that the LTC Facilities submitted claims to MCO Defendants for payments of services rendered. MCO Defendants purportedly did not pay the claims in accordance with the time schedule set forth in the Payment Procedures Statute. As a result of MCO Defendants' failure to make timely payments, Plaintiffs assert that the Residents have "significant outstanding balance[s]" owed to the respective LTC Facilities.

The Plaintiffs here are not the Residents who received services from the LTC Facilities, rather Plaintiffs are organizations initiating this lawsuit on behalf of the Residents. In a footnote, Plaintiffs contend that they are permitted to act as authorized representatives of the Residents pursuant to 42 C.F.R. § 435.923.

Defendants' motions to dismiss both argue that Plaintiffs lack standing to bring these claims. A motion to dismiss pursuant to Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint. Fed. R. Civ. P. 12(b)(1). "When ruling on a motion to dismiss for lack of subject matter jurisdiction under [Rule] 12(b)(1), the district court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff." Ezekiel v. Michel, 66 F.3d 894, 897 (7th Cir.1995). But "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." Capitol Leasing Co. v. F.D.I.C., 999 F.2d 188, 191 (7th Cir. 1993) (quoting Grafon Corp. v. Hausermann, 602 F.2d 781, 783 (7th Cir. 1979)). "[I]f the complaint is formally sufficient, but the contention is that there is in fact no subject matter jurisdiction, the movant may use affidavits and other material to support the motion." United Phosphorus, Ltd. v. Angus Chem. Co., 322 F.3d 942, 946 (7th Cir. 2003), overruled on other grounds by Minn–Chem, Inc. v. Agrium, Inc., 683 F.3d 845 (7th Cir. 2012). "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." Id.

Defendants first argue that Plaintiffs do have standing under the 42 C.F.R. § 435.923 to bring this case. "Standing is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action." Freedom from Religion Found. v. Zielke, 845 F.2d 1463, 1467 (7th Cir. 1988). "Whether a party has standing to bring a 'case or controversy' before the court is a question of law." Winkler v. Gates, 481 F.3d 977, 982 (7th Cir. 2007). The pertinent federal regulation states:

2

(a)(1)- The agency must permit applicants and beneficiaries to designate an individual or organization to act responsibly on their behalf in assisting with the individual's application and renewal of eligibility and other ongoing communications with the agency. Such a designation must be in accordance with paragraph (f) of this section, including the applicant's signature, and must be permitted at the time of application and at other times.

(b)- Applicants and beneficiaries may authorize their representatives to: (1) Sign an application on the applicant's behalf; (2) Complete and submit a renewal form; (3) Receive copies of the applicant or beneficiary's notices and other communications from the agency; (4) Act on behalf of the applicant or beneficiary in all other matters with the agency.

42 C.F.R. § 435.923(a)(1), (b)

    Plaintiffs argue that the above regulation permits them to bring a civil lawsuit on behalf of the Residents for Defendants' failure to timely pay claims. Plaintiffs focus on § 435.923(b)(4)'s language that the representative may "[a]ct on behalf of the applicant or beneficiary *in all other matters* with the agency." (emphasis added). Despite the rest of the language in both (a) and (b) relating to the application and renewal process, Plaintiffs argue that the language of (b)(4) should be interpreted broadly and to include prosecuting civil lawsuits. The Court disagrees.

    The first issue then is "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Exelon Generation Co., LLC v. Local 15, IBEW, 676 F.3d 566, 570 (7th Cir. 2012). "When interpreting statutory language, the meaning attributed to a phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." River Rd. Hotel Partners, LLC v. Amalgamated Bank, 651 F.3d 642, 649 (7th Cir. 2011).

    Reading the statutory language as a whole—not (b)(4) in isolation—prevents the Court from adopting Plaintiffs' argument. The language of the statute limits the representation to the "individual's application and renewal of eligibility and other ongoing communications with the agency" 42 C.F.R. § 435.923(a)(1). The language in § 435.923(b) further relates to assisting individuals with the application process. Reading (b)(4) in light of the (a) and (b)'s specific references to the application and renewal of benefits and ongoing communications with the agency does not support Plaintiffs' broad interpretation.

    The purpose offered in the public comment section in the Federal Register regarding § 435.923 also does not comport with Plaintiffs' interpretation. Rather, the public comments evince the statute intended to narrowly permit "authorized representative to act on behalf of applicants and beneficiaries *in applying for and maintaining coverage*." 78 Fed. Reg. at 42174 (July 15, 2013) (emphasis added). The Public comments go on to say that "[a]uthorized representatives have historically provided valuable support to individuals needing *help navigating the application and enrollment process,* as well as ongoing communications with the agency, particularly to seniors and individuals with disabilities, and we expect their role to continue." Id. (emphasis added). It is plain from the public comments that the intent and purpose of authorization under § 435.923 was to aid Medicaid beneficiaries in matters pertaining to the application, enrollment, renewal and communications processes. This intent is aligned with the Court's

decision to reject Plaintiff's broad interpretation of § 435.923(b)(4)—permitting authorized representative to bring civil lawsuits. Plaintiffs' interpretation was not the purpose of § 435.923.

Accordingly, Plaintiffs lack standing as authorized representatives of the Residents—Medicaid beneficiaries that receive services from healthcare providers without liability to the costs—to bring this civil rights lawsuit. Defendant Norwood's motion to dismiss is granted. Defendant MCOs and Cook County Defendants' omnibus motion to dismiss is granted. Plaintiffs' Complaint is dismissed with prejudice. Civil case closed.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: August 28, 2018

4