No. 18-3076

───────────────────────────────

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

───────────────────────────────

APERION CARE, INC., et al.,

Plaintiffs-Appellants,

v.

FELICIA NORWOOD, in her official capacity, et al.,

Defendants-Appellees.

───────────────────────────────

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division
Case No. 17-cv-8920
The Honorable Judge Charles R. Norgle

───────────────────────────────

**CONSOLIDATED BRIEF OF DEFENDANTS-APPELLEES AETNA BETTER HEALTH INC. D/B/A AETNA BETTER HEALTH OF ILLINOIS; COOK COUNTY HEALTH & HOSPITALS SYSTEM D/B/A COUNTYCARE HEALTH PLAN, COMMUNITY CARE ALLIANCE OF ILLINOIS, L3C; CIGNA CORP.; HEALTH CARE SERVICE CORPORATION D/B/A BLUE CROSS AND BLUE SHIELD OF ILLINOIS; HUMANA INC.; ILLINICARE HEALTH PLAN, INC.; MERIDIAN HEALTH PLAN OF ILLINOIS, INC.; MOLINA HEALTHCARE OF ILLINOIS, INC.; NEXTLEVEL HEALTH PARTNERS, INC.; AND HARMONY HEALTH PLAN, INC.**

───────────────────────────────

Edwin E. Brooks
Steven D. Hamilton
MᴄGᴜɪʀᴇWᴏᴏᴅs LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
312-849-8100
ebrooks@mcguirewoods.com
shamilton@mcguirewoods.com
*Attorneys for Defendants-Appellees*
*Aetna Better Health Inc. d/b/a Aetna*
*Better Health of Illinois; Community*
*Care Alliance of Illinois, L3C; Health*

Christopher MacNeil Murphy
Daniel Ray Campbell
Krista Marie Pikus
MᴄDᴇʀᴍᴏᴛᴛ Wɪʟʟ & Eᴍᴇʀʏ LLP
444 West Lake Street Suite 4000
Chicago, IL 60606-0029
(312) 372-2000
cmurphy@mwe.com
dcampbell@mwe.com
kpikus@mwe.com
*Attorneys for Defendant-Appellee*
*Cigna Corp.*

*Care Service Corporation d/b/a Blue Cross and Blue Shield of Illinois; IlliniCare Health Plan, Inc.; Meridian Health Plan of Illinois, Inc.; NextLevel Health Partners, Inc., and Harmony Health Plan, Inc.*

Paul Castiglione
Prathima Yeddanapudi
COOK COUNTY STATES' ATTORNEYS
OFFICE
Assistant State's Attorneys
Civil Rights Litigation
500 Richard J. Daley Center
Chicago, IL 60602
(312) 603-5967
paul.castiglione@cookcountyil.gov
prathima.yeddanapudi@cookcountyil.gov
*Attorneys for Defendant-Appellee Cook County Health & Hospitals System d/b/a CountyCare Health Plan*

Kirstin Beth Ives
FALKENBERG IVES LLP
30 N. LaSalle St.
Suite 4020
Chicago, IL 60602
312-566-4803
kbi@falkenbergives.com
maz@falkenbergives.com
*Attorneys for Defendant-Appellee Humana Inc.*

Molly Anne Arranz
Michael Resis
SMITH AMUNDSEN, LLC
150 North Michigan Avenue
Suite 3300
Chicago, IL 60601
(312) 894-3200
marranz@salawus.com
mresis@salawus.com

Michael D. Roth
BOIES SCHILLER FLEXNER LLP
725 South Figueroa Street, 31st Floor
Los Angeles, CA 90017
(213) 629-9040
mroth@bsfllp.com
*Attorneys for Defendant-Appellee Molina Healthcare of Illinois, Inc.*

**ORAL ARGUMENT REQUESTED**

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 18-3076

Short Caption: Aperion Care, Inc., et al. v. Felicia Norwood, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[✓]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

See Appendix A

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

McGuireWoods LLP

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

See Appendix B (information regarding Aetna Better Health Inc. is revised)

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

See Appendix B (information regarding Aetna Better Health Inc. is revised)

Attorney's Signature: s/ Edwin E. Brooks     Date: 4/8/2019

Attorney's Printed Name: Edwin E. Brooks

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☒     No ____

Address: 77 W. Wacker Drive, Suite 4100, Chicago, IL 60601

Phone Number: 312-849-3060     Fax Number: 312-920-3681

E-Mail Address: ebrooks@mcguirewoods.com

rev. 01/15 GA

## Appendix A

**(1)**     **The full name of every party that the attorney represents in the case:**

1. Aetna Better Health Inc. d/b/a Aetna Better Health of Illinois, improperly named in the complaint as "Aetna Medicaid Administrators, LLC d/b/a Aetna Better Health, Inc.";

2. Community Care Alliance of Illinois, L3C, improperly named in the complaint as "Community Care Alliance of Illinois, LLC";

3. Harmony Health Plan, Inc., improperly named in the complaint as "WellCare Health Plans, Inc. d/b/a as Harmony";

4. Health Care Service Corporation, a Mutual Legal Reserve Company, d/b/a Blue Cross Blue Shield of Illinois;

5. IlliniCare Health Plan, Inc.;

6. Meridian Health Plan, Inc.; and

7. NextLevel Health Partners, Inc.

## Appendix B

### Defendant Aetna Better Health Inc. d/b/a Aetna Better Health of Illinois

(3)(i)   Aetna Better Health Inc. d/b/a Aetna Better Health of Illinois is an indirect wholly-owned subsidiary of CVS Health Corporation.

(3)(ii)  CVS Health Corporation indirectly owns 10% or more of Aetna Better Health Inc.

### Defendant Community Care Alliance of Illinois, L3C

(3)(i)   Community Care Alliance of Illinois, L3C is a wholly-owned subsidiary of Family Health Network, Inc.

(3)(ii)  No publicly-held entity owns 10% or more of Defendant Community Care Alliance of Illinois, L3C.

### Defendant Harmony Health Plan, Inc.

(3)(i)   Harmony Health Plan, Inc. is an indirect wholly-owned subsidiary of WellCare Health Plans, Inc.

(3)(ii)  WellCare Health Plans, Inc. indirectly owns 10% or more of Defendant Harmony Health Plan, Inc.

### Defendant Health Care Service Corporation

(3)(i)   Health Care Service Corporation, a Mutual Legal Reserve Company, d/b/a Blue Cross Blue Shield of Illinois, has no parent corporation.

(3)(ii)  No publicly-held entity owns 10% or more of Defendant Health Care Service Corporation.

### Defendant IlliniCare Health Plan, Inc.

(3)(i)   IlliniCare Health Plan, Inc. is a wholly-owned subsidiary of Centene Corporation.

(3)(ii)  Centene Corporation.

### Defendant Meridian Health Plan, Inc.

(3)(i)   Defendant Meridian Health Plan, Inc. is an indirect wholly-owned subsidiary of WellCare Health Plans, Inc.

(3)(ii)  WellCare Health Plans, Inc. indirectly owns 10% or more of Defendant Meridian Health Plan, Inc.

**Defendant NextLevel Health Partners, Inc.**

(3)(i)   Defendant NextLevel Health Partners, Inc. is a wholly-owned subsidiary of NextLevel Health Innovations, Inc.

(3)(i)   No publicly-held entity owns 10% or more of Defendant NextLevel Health Partners, Inc.

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>18-3076</u>

Short Caption: <u>Aperion Care, Inc., et al. v. Felicia Norwood, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    **[✓]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    See Appendix A

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    McGuireWoods LLP

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

        See Appendix B (information regarding Aetna Better Health Inc. is revised)

    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

        See Appendix B (information regarding Aetna Better Health Inc. is revised)

Attorney's Signature: <u>s/ Steven D. Hamilton</u>    Date: <u>4/8/2019</u>

Attorney's Printed Name: <u>Steven D. Hamilton</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes _____    No ✗

Address: <u>77 W. Wacker Drive, Suite 4100, Chicago, IL 60601</u>

Phone Number: <u>312-849-8232</u>    Fax Number: <u>312-698-4526</u>

E-Mail Address: <u>shamilton@mcguirewoods.com</u>

## **Appendix A**

**(1)**     **The full name of every party that the attorney represents in the case:**

1.  Aetna Better Health Inc. d/b/a Aetna Better Health of Illinois, improperly named in the complaint as "Aetna Medicaid Administrators, LLC d/b/a Aetna Better Health, Inc.";

2.  Community Care Alliance of Illinois, L3C, improperly named in the complaint as "Community Care Alliance of Illinois, LLC";

3.  Harmony Health Plan, Inc., improperly named in the complaint as "WellCare Health Plans, Inc. d/b/a as Harmony";

4.  Health Care Service Corporation, a Mutual Legal Reserve Company, d/b/a Blue Cross Blue Shield of Illinois;

5.  IlliniCare Health Plan, Inc.;

6.  Meridian Health Plan, Inc.; and

7.  NextLevel Health Partners, Inc.

## Appendix B

### Defendant Aetna Better Health Inc. d/b/a Aetna Better Health of Illinois

(3)(i)  Aetna Better Health Inc. d/b/a Aetna Better Health of Illinois is an indirect wholly-owned subsidiary of CVS Health Corporation.

(3)(ii)  CVS Health Corporation indirectly owns 10% or more of Aetna Better Health Inc.

### Defendant Community Care Alliance of Illinois, L3C

(3)(i)  Community Care Alliance of Illinois, L3C is a wholly-owned subsidiary of Family Health Network, Inc.

(3)(ii)  No publicly-held entity owns 10% or more of Defendant Community Care Alliance of Illinois, L3C.

### Defendant Harmony Health Plan, Inc.

(3)(i)  Harmony Health Plan, Inc. is an indirect wholly-owned subsidiary of WellCare Health Plans, Inc.

(3)(ii)  WellCare Health Plans, Inc. indirectly owns 10% or more of Defendant Harmony Health Plan, Inc.

### Defendant Health Care Service Corporation

(3)(i)  Health Care Service Corporation, a Mutual Legal Reserve Company, d/b/a Blue Cross Blue Shield of Illinois, has no parent corporation.

(3)(ii)  No publicly-held entity owns 10% or more of Defendant Health Care Service Corporation.

### Defendant IlliniCare Health Plan, Inc.

(3)(i)  IlliniCare Health Plan, Inc. is a wholly-owned subsidiary of Centene Corporation.

(3)(ii)  Centene Corporation.

### Defendant Meridian Health Plan, Inc.

(3)(i)  Defendant Meridian Health Plan, Inc. is an indirect wholly-owned subsidiary of WellCare Health Plans, Inc.

(3)(ii)  WellCare Health Plans, Inc. indirectly owns 10% or more of Defendant Meridian Health Plan, Inc.

**Defendant NextLevel Health Partners, Inc.**

(3)(i)    Defendant NextLevel Health Partners, Inc. is a wholly-owned subsidiary of NextLevel Health Innovations, Inc.

(3)(i)    No publicly-held entity owns 10% or more of Defendant NextLevel Health Partners, Inc.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 18-3076

Short Caption: Aperion Care, Inc., et al. v. Felicia Norwood, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[   ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Cigna Corp.

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

McDermott will & Emery

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

    The Vanguard Group, Inc., T. Rowe Price Group, Inc., BlackRock, Inc., and Dodge & Cox, Inc.

Attorney's Signature: s/ Christopher M. Murphy    Date: 4/8/2019

Attorney's Printed Name: Christopher M. Murphy

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes  ✗  No _____

Address: 444 West Lake Street, Suite 4000, Chicago, IL 60606

Phone Number: 312-984-3607    Fax Number: 312-984-7700

E-Mail Address: cmurphy@mwe.com

rev. 01/15 GA

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 18-3076

Short Caption: Aperion Care, Inc., et al. v. Felicia Norwood, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    **[   ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Cigna Corp.

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

McDermott Will & Emery

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

The Vanguard Group, Inc., T. Rowe Price Group, Inc., BlackRock, Inc., and Dodge & Cox, Inc.

Attorney's Signature: s/ Daniel R.  Campbell    Date: 4/8/2019

Attorney's Printed Name: Daniel R. Campbell

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** _____   **No** ✕

Address:  444 West Lake Street, Suite 4000, Chicago, IL 60606

Phone Number: 312-984-2167    Fax Number: 312-984-7700

E-Mail Address: dcampbell@mwe.com

rev. 01/15 GA

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 18-3076

Short Caption: Aperion Care, Inc., et al. v. Felicia Norwood, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    **[　]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Humana Health Plan, Inc.

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Falkenberg Ives LLP

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

       Humana Inc.

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

       N/A

Attorney's Signature:  /s Kirstin B. Ives      Date:  4/8/2019

Attorney's Printed Name:  Kirstin B. Ives

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes  ✕  No _____

Address:  30 N. LaSalle Street, Suite 4020, Chicago, IL 60602

Phone Number:  312-566-4803      Fax Number:  312-566-4810

E-Mail Address:  kbi@falkenbergives.com

rev. 01/15 GA

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 18-3076

Short Caption: Aperion Care, Inc., et al. v. Felicia Norwood, et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

   [  ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Molina Healthcare of Illinois, Inc.

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

SmithAmundsen LLC

Boies Schiller Flexner LLP

(3)  If the party or amicus is a corporation:

   i)  Identify all its parent corporations, if any; and

Molina Healthcare, Inc.

   ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

Molina Healthcare, Inc.

Attorney's Signature:  /s Molly A. Arranz                                  Date: 4/8/2019

Attorney's Printed Name: Molly A. Arranz

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes  ☒    No _____

Address:   SmithAmundsen LLC, 150 North Michigan Ave., Suite 3300, Chicago, IL 60601

Phone Number:  312-894-3200                      Fax Number:  312-894-3210

E-Mail Address:  marranz@salawus.com

rev. 01/15 GA

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 18-3076

Short Caption: Aperion Care, Inc., et al. v. Felicia Norwood, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> **[  ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Molina Healthcare of Illinois, Inc.

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

SmithAmundsen LLC

Boies Schiller Flexner LLP

(3)  If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

Molina Healthcare, Inc.

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

Molina Healthcare, Inc.

Attorney's Signature: /s Michael Resis                      Date: 4/8/2019

Attorney's Printed Name: Michael Resis

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes  X    No _____

Address: SmithAmundsen LLC, 150 North Michigan Ave., Suite 3300, Chicago, IL 60601

Phone Number: 312-894-3200                      Fax Number: 312-894-3210

E-Mail Address: mresis@salawus.com

rev. 01/15 GA

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 18-3076

Short Caption: Aperion Care, Inc., et al. v. Felicia Norwood, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[  ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Molina Healthcare of Illinois, Inc.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

SmithAmundsen LLC

Boies Schiller Flexner LLP

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

Molina Healthcare, Inc.

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

Molina Healthcare, Inc.

Attorney's Signature: /s Michael D. Roth                    Date: 4/8/2019

Attorney's Printed Name: Michael D. Roth

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes  ☒    No _____

Address: Boies Schiller Flexner LLP, 725 South Figueroa Street, 31st Floor, Los Angeles, CA 90017

Phone Number: 213-629-9040                    Fax Number: 213-620-9022

E-Mail Address: mroth@bsfllp.com

rev. 01/15 GA

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ................................................................ 1

STATEMENT OF THE ISSUES PRESENTED .................................... 2

STATEMENT OF THE CASE...................................................................... 3

I.     INTRODUCTION .............................................................................. 3

II.    THE PARTIES ..................................................................................... 6

III.   THE ILLINOIS MEDICAID PROGRAM.................................... 7

IV.   PLAINTIFFS' PUTATIVE CLASS ACTION COMPLAINT ............................ 9

V.    THE DISTRICT COURT'S DISMISSAL OF THE COMPLAINT WITH PREJUDICE................................................................................. 11

SUMMARY OF THE ARGUMENT ................................................... 12

ARGUMENT ...................................................................................... 14

I.     STANDARD OF REVIEW ........................................................... 14

II.    THE DISTRICT COURT PROPERLY DISMISSED THE COMPLAINT FOR LACK OF STANDING. ................................................. 15

     A.    The Plain Language of Section 435.923 Does Not Grant Plaintiffs Standing to Bring this Lawsuit........................................... 15

          1.    Section 435.923 does not permit an "authorized representative" to bring a civil rights and discrimination lawsuit against an MCO.................................................. 16

          2.    There are no cases interpreting Section 435.923 to allow an "authorized representative" to bring a lawsuit against an MCO for the alleged untimely payment of claims. .............. 22

          3.    Plaintiffs' other attempts to contort Section 435.923 should be rejected. .................................................. 24

     B.    Plaintiffs Fail to Plead Any Facts Demonstrating a Valid Authorization.................................................................... 27

III.   THE DISTRICT COURT'S DECISION SHOULD BE AFFIRMED ON THE ALTERNATIVE GROUND THAT THE COMPLAINT FAILS TO ALLEGE ANY VIABLE CAUSE OF ACTION. ................................ 28

     A.    Plaintiffs' Section 1983 Claims Fail. ................................... 29

          1.    Plaintiffs' Section 1983 Claims (Counts Two, Three, and Six) Fail Because the MCO Defendants Are Not State Actors. ...................................................... 29

2.     Plaintiffs Were Not Deprived of a Constitutionally-Protected Right (Counts Two and Three). ................................ 33

3.     Plaintiffs Have Not and Cannot Plead a Viable Due Process Claim Under Section 1983 (Count Six). ...................... 37

B.     Plaintiffs Fail to State a Claim Under the Rehabilitation Act (Count Five). ........................................................................ 40

1.     Plaintiffs Do Not Adequately Allege That The Residents Are Qualified Individuals With Disabilities. ........................... 41

2.     Plaintiffs Fail to Allege That The Residents Were Excluded From Participation In Or Denied Benefits Of The Medicaid Program. ............................................................ 42

3.     Plaintiffs Do Not Allege That The Residents Were Denied Benefits Solely By Reason Of Their Purported Disabilities. ................................................................................ 43

C.     Plaintiffs Also Fail to State a Title II Claim (Count Four) ................ 44

1.     Plaintiffs Fail to Plead Any Facts Demonstrating that the Residents Were Denied Services By Reason of Their Disability. ................................................................................. 45

2.     The MCO Defendants Are Not "Public Entities." ...................... 46

D.     Plaintiffs' Claims for Declaratory and Injunctive Relief (Counts One and Seven) Likewise Fail. ................................................ 48

CONCLUSION ........................................................................................ 50

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*A.H. Holzmueller v. Illinois High Sch. Ass'n,*
    881 F.3d 587 (7th Cir. 2018) .................................................................... 44

*Am. Mfrs. Mut. Ins. Co. v. Sullivan,*
    526 U.S. 40 (1999) ................................................................................... 29

*Apex Digital, Inc. v. Sears, Roebuck & Co.,*
    572 F.3d 440 (7th Cir. 2009) .................................................................... 14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................... 15, 37

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2006) ................................................................................. 15

*Boucher v. Sch. Bd. of Sch. Dist. of Greenfield,*
    134 F.3d 821 (7th Cir. 1998) .................................................................... 49

*Bourbon Cmt. Hosp. LLC v. Coventry Health and Life Ins. Co.,*
    No. 3:15-cv-0455-JHM, 2016 WL 51269, at *6 (W.D. Ky. Jan. 4,
    2016) ........................................................................................................ 31

*CareSpring Healthcare Management, LLC v. Dungey,*
    No. 1:16-cv-1051, 2018 WL 1138428 (S.D. Ohio Mar. 3, 2018) ............ 22

*Carmichael v. The Payment Ctr., Inc.,*
    336 F.3d 636 (7th Cir. 2003) .................................................................... 16

*Carter v. Carson,*
    241 F. Supp. 3d 191 (D.D.C. 2017) ......................................................... 41

*Castle v. Eurofresh, Inc.,*
    731 F.3d 901 (9th Cir. 2013) .................................................................... 47

*City & Cty. of San Francisco, Calif. v. Sheehan,*
    135 S. Ct. 1765 (2015) ....................................................................... 44, 46

*Clapper v. Amnesty Intern. USA,*
    568 U.S. 398 (2013) ................................................................................. 45

i

*Cox v. Jackson,*
  579 F. Supp. 2d 831 (E.D. Mich. 2008) ................................................. 47

*Dertz v. City of Chicago,*
  No. 94 C 542, 1997 WL 85169 (N.D. Ill. Feb. 24, 1997) ........................ 43

*Dhakal v. Sessions,*
  895 F.3d 532 (7th Cir. 2018) ................................................................ 14

*Doctors Nursing & Rehab Ctr., LLC v. Norwood,*
  No. 16-cv-9837, 2017 WL 3838031 (N.D. Ill. Sept. 1, 2017) ................. 24

*Doctors Nursing & Rehabilitation Center, LLC v. Norwood,*
  No. 16-cv-9837, 2017 WL 2461544 (N.D. Ill. June 7, 2017) ............ 23, 36

*Doe v. Columbia-Brazoria Indep. Sch. Dist.,*
  855 F.3d 681 (5th Cir. 2017) ................................................................ 42

*Doherty v. City of Chicago,*
  75 F.3d 318 (7th Cir. 1996) .................................................................. 37

*Edison v. Douberly,*
  604 F.3d 1307 (11th Cir. 2010) ............................................................ 46

*Elward v. Electrolux Home Prod., Inc.,*
  214 F. Supp. 3d 701 (N.D. Ill. 2016) .................................................... 48

*Evans v. City of Chicago,*
  522 F. Supp. 789 (N.D. Ill. 1980) ......................................................... 39

*Feit v. Ward,*
  886 F.2d 848 (7th Cir. 1989) ................................................................ 49

*Gable v. City of Chicago,*
  296 F.3d 531, 540 (7th Cir. 2002) ........................................................ 37

*Green v. City of New York,*
  465 F.3d 65 (2d Cir. 2006) ................................................................... 46

*Hart v. Sheahan,*
  396 F.3d 887 (7th Cir. 2005) .......................................................... 26, 28

*Hudson v. City of Chicago,*
  374 F.3d 554 (7th Cir. 2004) ................................................................ 37

*Ill. Council on Long-Term Care v. Bradley,*
  957 F.2d 305 (7th Cir. 1992) ................................................................ 34

*Ioffe v. Skokie Motor Sales, Inc.*,
    414 F.3d 708 (7th Cir. 2005) ................................................................ 16

*Irwin v. Jimmy John's Franchise, LLC*,
    175 F. Supp. 3d 1064 (C.D. Ill. 2016) .................................................. 45

*Jackson v. Metro. Edison Co.*,
    419 U.S. 345 (1974) ............................................................................ 29

*Johnson v. Thompson-Smith*,
    203 F. Supp. 3d 895 (N.D. Ill. 2016), *aff'd*, 700 F. App'x 535 (7th Cir.
    2017) ..................................................................................................... 37

*Khan v. Bland*,
    630 F.3d 519 (7th Cir. 2010) ............................................................... 37

*Koss v. Norwood*,
    No. 17-cv-2762, 2018 WL 1535068 (N.D. Ill. Mar. 29, 2018) ............ 34

*L.P. v. Marian Catholic High Sch.*,
    852 F.3d 690 (7th Cir. 2017) ......................................................... 29, 31

*LaBella Winnetka, Inc. v. Vill. of Winnetka*,
    628 F.3d 937 (7th Cir. 2010) ............................................................... 40

*Lee v. City of Chicago*,
    330 F.3d 456 (7th Cir. 2003) ............................................................... 14

*Mallet v. Wisconsin Div. of Vocational Rehab.*,
    130 F.3d 1245 (7th Cir. 1997) ............................................................. 43

*Maxwell v. S. Bend Work Release Ctr.*,
    787 F. Supp. 2d 819 (N.D. Ind. 2011) ................................................. 46

*Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*,
    817 F. Supp. 2d 515 (E.D. Pa. 2011) .................................................. 34

*Morris v. Mfrs. Life Ins. Co.*,
    No. EV 95-142-CH/H, 1997 WL 534156 (S.D. Ind. Aug. 6, 1997) ....... 48

*Murphy v. Rychlowski*,
    868 F.3d 561 (7th Cir. 2017) ............................................................... 29

*Naperville Smart Meter Awareness v. City of Naperville*,
    69 F. Supp. 3d 830 (N.D. Ill. 2014) .................................................... 44

*Nelson v. Miller,*
  570 F.3d 868 (7th Cir. 2009) ................................................................ 49

*Novak v. Board of Trustees of Southern Ill. Univ.,*
  777 F.3d 966 (7th Cir. 2015) ................................................................ 40

*Onyango v. Downtown Entm't, LLC,*
  525 F. App'x 458 (7th Cir. 2013) ........................................................ 48

*Patients' Choice Med. Ctr. of Humphries Cnty., LLC v. Office of the
  Governor,*
  No. 08-696, 2009 WL 531861, at \*4 (S.D. Miss. Mar. 3, 2009) ............ 34

*Payton v. County of Kane,*
  308 F.3d 673 (7th Cir. 2002) ................................................................ 14

*Quinones v. UnitedHealth Grp. Inc.,*
  No. CIV. 14-00497 LEK, 2015 WL 4523499, at \*5 (D. Haw. July 24,
  2015)....................................................................................................... 31

*Reget v. City of La Crosse,*
  595 F.3d 691 (7th Cir. 2010) ................................................................ 37

*Rendell-Baker v. Kohn,*
  457 U.S. 830 (1982) .............................................................................. 32

*Rodriguez v. Plymouth Ambulance Services,*
  577 F.3d 816 (7th Cir. 2009) ........................................................... 32, 33

*Santana v. Cook Cty. Bd. of Review,*
  779 F. Supp. 2d 830 (N.D. Ill. 2011) .................................................... 37

*Schiavo ex rel. Schindler v. Schiavo,*
  403 F.3d 1289 (11th Cir. 2005) ............................................................ 47

*Sierakowski v. Ryan,*
  223 F.3d 440 (7th Cir. 2000) ................................................................ 48

*Simic v. City of Chi.,*
  851 F.3d 734 (7th Cir. 2017) ................................................................ 49

*Slaney v. The Int'l Amateur Athletic Fed'n,*
  244 F.3d 580 (7th Cir. 2001) ................................................................ 14

*Tipton v. Viaquest Behavioral Health of Penn., LLC,*
  No. 10-3573, 2010 WL 5258473, at \*3–4 (E.D. Pa. Dec. 23, 2010) ...... 31

*United Cerebral Palsy Ass'ns of New York State, Inc. v. Cuomo,*
966 F.2d 743 (2d Cir. 1992) ................................................................. 34

*U.S. ex rel. Berkowitz v. Automation Aids, Inc.,*
896 F.3d 834 (7th Cir. 2018) ............................................................... 15

*Valley Forge Christian Coll. v. Americans United for Separation of
Church & State, Inc.,*
454 U.S. 464 (1982) .............................................................................. 15

*Warth v. Seldin,*
422 U.S. 490 (1975) .............................................................................. 15

*Washington v. Indiana High School Athletic Ass'n, Inc.,*
181 F.3d 840 (7th Cir. 1999) ............................................................... 44

*Wicomico Nursing Home v. Padilla,*
910 F.3d 739 (4th Cir. Dec. 6, 2018) ...................................... 40, 41, 42

*Wilke v. Stublaski,*
No. 14-cv-639-wmc, 2016 WL 6998688 (W.D. Wis. Nov. 30, 2016) ..................... 39

*Wilkins-Jones v. Cty. of Alameda,*
859 F. Supp. 2d 1039 (N.D. Cal. 2012) ............................................... 48

*Wisconsin Cmty. Servs., Inc. v. City of Milwaukee,*
465 F.3d 737 (7th Cir. 2006) ......................................................... 43, 44

*Yates v. John Marshall Law Sch.,*
No. 08-C-4127, 2009 WL 1309516 (N.D. Ill. May 11, 2009).................. 41

*Youker v. Schoenenberger,*
22 F.3d 163 (7th Cir. 1994) ................................................................. 26

**State Cases**

*Evangelical Good Samaritan Soc'y v. N.D. Dep't of Human Servs.,*
862 N.W.2d 794 (N.D. 2015) ............................................................... 22

*Midwest Emergency Associates-Elgin Ltd. v. Harmony Health Plan of
Illinois, Inc.,*
382 Ill. App. 3d 973 (1st Dist. 2008) ........................................ 8, 30, 32

*State of Florida, Agency for Health Care Admin. v. MIED, Inc.,*
869 So.2d 13 (Fla. App. Ct. 2004) ....................................................... 34

*Tiggs v. Ohio Dept. of Job & Family Servs.*,
   No. 106022, 2018 WL 3815054 (Ohio Ct. App. Aug. 9, 2018) .............................. 22

**Federal Statutes**

28 U.S.C. § 2201 .......................................................................................... 10

29 U.S.C. § 294(a) ........................................................................................ 42

29 U.S.C. § 706(8)(B) ................................................................................... 41

29 U.S.C. § 794 ................................................................................... 5, 10, 43

42 U.S.C. § 1396d(a)(4)(A) .......................................................................... 33

42 U.S.C. § 1396a(a)(8) ........................................... 10, 23, 33, 34, 35, 36

42 U.S.C. § 1396a(a)(10)(A) .................................... 10, 23, 33, 34, 35, 36

42 U.S.C. § 1396a(a)(30)(A) ......................................................................... 7

42 U.S.C. § 1396a(a)(37) ............................................. 5, 7, 24, 33, 35

42 U.S.C. § 1396a(a), (b) .............................................................................. 7

42 U.S.C. § 1396b(m) ................................................................................... 8

42 U.S.C. § 1396d(a) ................................................................................... 35

42 U.S.C. § 1396u-2 ....................................... 8, 12, 21, 26, 36, 38, 39

42 U.S.C. § 1983 ........................................................... 5, 10, 31, 35

42 U.S.C. § 12131 ........................................................................................ 46

42 U.S.C. § 12132 ................................................................................. 5, 10

**State Statutes**

305 Ill. Comp. Stat. 5/5-16 ........................................................................ 30

305 Ill. Comp. Stat. 5/5-16.12 ................................................................... 30

**Rules**

Fed. R. App. P. 10(a) .......................................................................... 26, 28

Fed. R. Civ. P. 8(a)(2) ................................................................................. 15

FED. R. CIV. P. 12(b)(1) .................................................................. 11, 14

FED. R. CIV. P. 12(b)(6) ............................. 11, 13, 14, 15, 29, 37

## Regulations

28 C.F.R. pt. 35, Appendix B .................................................... 47

42 C.F.R. pt. 435 ......................................................................... 17

42 C.F.R. pt. 438 ........................................................................... 8

42 C.F.R. pt. 438, subpt. F ....................................................... 25

42 C.F.R. § 430.10 ......................................................................... 7

42 C.F.R. § 435.2 ......................................................................... 17

42 C.F.R. § 435.923 ............................................................. *passim*

42 C.F.R. § 435.923(a) ......................................................... 17, 18

42 C.F.R. § 435.923(b) ............................................................... 22

42 C.F.R. § 435.923(b)(1)-(2) ................................................... 17

42 C.F.R. § 435.923(b)(3)-(4) ................................. 18, 19, 20, 23

42 C.F.R. § 438.54 .......................................................................... 8

42 C.F.R. § 438.68 .......................................................................... 8

42 C.F.R. § 438.106 ........................................................... 8, 18, 21

42 C.F.R. § 438.106(b)(2) ................................................... 38, 39

42 C.F.R. §§ 438.400 *et seq.* ........................................... 25, 39

42 C.F.R. § 438.402(c)(1)(ii) ................................................... 25

42 C.F.R. § 447.45(b) ................................................................. 33

42 C.F.R. § 447.45(d) ........................................................... 33, 34

42 C.F.R. § 489.2(b) ................................................................... 33

78 Fed. Reg. 42160 (July 15, 2013) ................................. 18, 19

81 Fed. Reg. 27498 (May 6, 2016) ............................................................. 20

**Constitutional Provisions**

Eighth Amendment ....................................................................................... 33

## JURISDICTIONAL STATEMENT

Plaintiffs' jurisdictional statement is not complete and correct. Jurisdiction was proper in the District Court pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 2201 and 28 U.S.C. § 2202. Plaintiffs also contend that jurisdiction was proper pursuant to 28 U.S.C. § 1343(k), but 28 U.S.C. § 1343 does not contain a subpart (k). Although not asserted by Plaintiffs, jurisdiction may have been proper in the District Court pursuant to 28 U.S.C. § 1343(a)(3). Appellate jurisdiction is proper pursuant to 28 U.S.C. § 1291 because this matter is on appeal from a final order that disposed of all parties' claims. The District Court granted all Defendants' motions to dismiss and dismissed the Complaint with prejudice on August 28, 2018. Plaintiffs timely filed their Notice of Appeal on September 27, 2018.

## STATEMENT OF THE ISSUES PRESENTED

1.    Whether the District Court's dismissal of the Complaint should be affirmed because 42 C.F.R. § 435.923 does not grant Plaintiffs standing as alleged authorized representatives of Medicaid beneficiaries to assert federal civil rights and discrimination claims against Medicaid managed care organizations, when the only issue is the alleged untimely payment for services rendered by long-term care facilities.

2.    Whether the District Court's dismissal of Plaintiffs' claims should be affirmed on the alternative basis that each cause of action in the Complaint fails to state a claim upon which relief can be granted.

## STATEMENT OF THE CASE

### I.    INTRODUCTION

This appeal presents a straight-forward question:  Does 42 C.F.R. § 435.923 confer standing on "authorized representatives" of residents of certain long-term care facilities to bring federal civil rights and discrimination claims *in a representative capacity* against the Defendant Medicaid managed care organizations, where the underlying issue in dispute is the alleged untimely payment of claims for services rendered by those facilities?  As the District Court correctly concluded in analyzing the language and intent of 42 C.F.R. § 435.923, the answer to this question is unequivocally "no."

This case is, at most, a run-of-the-mill payment dispute between the long-term care facilities (the "LTC Facilities") and the Defendant managed care organizations ("MCO Defendants"). However, the Plaintiffs—who are alleged to be consultants to the LTC Facilities—seek to interject themselves and assert federal civil rights and discrimination claims against the MCO Defendants as purported authorized representatives of Medicaid beneficiaries pursuant to 42 C.F.R. § 435.923.

The District Court's standing ruling should be affirmed. Alternatively, this Court should affirm the dismissal of the Complaint because the representative Plaintiffs have not stated—and cannot state—civil rights and discrimination claims against the MCO Defendants for the allegedly untimely payment of claims for services rendered by the LTC Facilities.

Plaintiffs Bria Health Services, LLC, Everest Care Group, LLC, Grand Lifestyles, LLC, Icare Financial Services, Inc., Itex Company, Inc., Legacy

Healthcare Financial Services, Maestro Consulting Services, LLC, and Villa Financial Services, LLC (collectively, "Plaintiffs") allege they provide financial or business consulting services to the LTC Facilities. (Dkt. 1 at pp. 5–7, ¶¶ 1–9.)[1] Plaintiffs *do not*, however, bring this payment dispute on their own behalf or on behalf of the LTC Facilities. Instead, Plaintiffs claim to be acting pursuant to 42 C.F.R. § 435.923 ("Section 435.923") as the "authorized representatives" of 38 Medicaid beneficiaries who purportedly reside in the LTC Facilities (the "Residents").

Plaintiffs allege that the Residents have all been approved for Medicaid eligibility and are enrolled in one of the Medicaid health plans offered by MCO Defendants Aetna Better Health Inc. ("Aetna"), Cigna Corp. ("Cigna"), Community Care Alliance of Illinois, L3C ("CCAI"), Cook County Health & Hospitals System d/b/a CountyCare Health Plan ("CountyCare"), Health Care Service Corporation d/b/a Blue Cross and Blue Shield of Illinois ("BCBSIL"), Humana Health Plan, Inc. ("Humana"), IlliniCare Health Plan, Inc. ("IlliniCare"), Meridian Health Plan of Illinois, Inc. ("Meridian"), Molina Healthcare of Illinois, Inc. ("Molina"), NextLevel Health Partners, Inc. ("NextLevel"), and Harmony Health Plan, Inc., ("Harmony").[2] (*See*, *e.g.*, Dkt. 1 at n. 1 & pp. 5–7, ¶¶ 1–9, 10(a)–(*ll*).)

---

[1]    Aperion Care, Inc. voluntarily withdrew as a Plaintiff in this action. (Dkt. 64.)

[2]    In the Complaint, Aetna is incorrectly named as Aetna Medicaid Administrators, LLC d/b/a Aetna Better Health, Inc.; Cigna is incorrectly named as Cigna Corporation d/b/a Cigna-HealthSpring Care Plan of Illinois; CCAI is incorrectly named as Community Care Alliance of Illinois, LLC; Humana is incorrectly named as Humana Inc.; Meridian is

Plaintiffs contend that claims for payment for services rendered by the LTC Facilities were submitted to the MCO Defendants, but the MCO Defendants failed to timely pay the claims in violation of 42 U.S.C. § 1396a(a)(37)(A) (the "Payment Procedures Statute"). (*See* Dkt. 1 at pp. 7–29, ¶¶ 10(a)–10(*ll*) & p. 36, ¶¶ 10–11.) Based upon the alleged failure to timely pay claims for long-term care services, Plaintiffs—as alleged representatives of the Residents pursuant to Section 435.923—assert causes of action against the MCO Defendants under 42 U.S.C. § 1983 ("Section 1983"), the Rehabilitation Act, 29 U.S.C. § 794 (the "Rehabilitation Act"), and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("Title II"). Plaintiffs seek declaratory and injunctive relief, as well as damages, on behalf of an alleged class consisting of the Residents and other Medicaid beneficiaries who reside at and received services from the LTC Facilities, but for whom the MCO Defendants allegedly did not timely pay the LTC Facilities for the services rendered.

The District Court—after reviewing the plain language of Section 435.923, the regulation's purpose, and public and agency comments in the Federal Register— correctly concluded that the "Plaintiffs lack standing as authorized representatives of the Residents . . . to bring this civil rights suit," and dismissed the action with prejudice. (Dkt. 69 at 4.) The District Court's decision is correct because the plain language of Section 435.923 limits the role of an authorized representative to (1)

---

incorrectly named as Meridian Health Plan, Inc.; and Harmony is incorrectly named as WellCare Health Plans, Inc. d/b/a Harmony.

taking action on behalf of a person with respect to his or her *application and renewal for Medicaid eligibility*, and (2) engaging in communications and actions with the applicable *state Medicaid agency*. Contrary to Plaintiffs' arguments, Section 435.923 does *not* allow an authorized representative to file federal civil rights and discrimination causes of action on behalf of Medicaid beneficiaries against private health plans for their alleged failure to timely pay healthcare claims.

## II.     THE PARTIES

The MCO Defendants are private companies (except CountyCare, which is part of the Cook County Health & Hospital Systems) that operate as Medicaid managed care organizations or managed care community networks (collectively referred to as "Medicaid MCOs"). (*See* Dkt. 1 at p. 1 & p. 29–32, ¶¶ 11–23.) Defendant Felicia Norwood ("Defendant Norwood") was the Director of the Illinois Department of Healthcare and Family Services ("DHFS"). (*Id.*) Until December 31, 2017, all of the MCO Defendants had contracts with DHFS to administer Medicaid services to people who enrolled in each MCO Defendant's respective plans. (*Id.*)

Plaintiffs aver that they each "provide[] financial and business consulting services" to one or more of the LTC Facilities in which the Residents reside. (*See, e.g.*, Dkt. 1 at pp. 5–7, ¶¶ 1–9.) The LTC Facilities, in turn, are long-term care facilities that provide services to people who reside in the facility. (*Id.*) Plaintiffs do not allege that they actually rendered services to the Residents or have any other direct relationship with the Residents. They contend only that the LTC Facilities rendered long-term care to the Residents and that Plaintiffs are some type of

consultant, vendor, or affiliate to the LTC Facilities. (Dkt. 1 at pp. 5–7, ¶¶ 1–9.)
Plaintiffs nevertheless purport to bring this action pursuant to Section 435.923 as
"authorized representatives" of the 38 Residents who reside in the LTC Facilities.
(*See, e.g.*, Dkt. 1 at n. 1 & pp. 5–7, ¶¶ 1–9.)

### III. THE ILLINOIS MEDICAID PROGRAM

Medicaid is a health benefit program that the federal and state governments
jointly fund to deliver healthcare services to low-income individuals and families.
(Dkt. 29 at p. 4.) States must submit a "plan" to the federal government for approval
to operate the Medicaid program in the state. (*Id.* at pp. 4–5) (citing 42 U.S.C. §
1396a(a), (b); 42 C.F.R. § 430.10). Federal law outlines requirements that the state
Medicaid plan must contain, including compliance with the Payment Procedures
Statute. (*Id.* at p. 5) (citing 42 U.S.C. § 1396a(a)(37)). The Payment Procedures
Statute requires the state to "provide for claims payment procedures" to ensure
payment on 90% of all clean claims submitted by certain providers within 30 days
and 99% of all clean claims submitted by such providers within 90 days. (*Id.*)

States that participate in Medicaid generally do so through two programs.
Historically, the most common program was the "fee-for-service" program. (*Id.* at p.
5.) Under this program, the state directly pays physicians, hospitals, and other
healthcare providers for services rendered. (*Id.*) (citing 42 U.S.C. § 1396a(a)(30)(A)).
Alternatively, states can enter into a contract (a "State MCO Contract") with
private healthcare insurance companies—generally referred to as managed care
organizations ("MCOs")—to allow those companies to administer Medicaid services
to people who enroll in the companies' respective health plans. (*Id.*) (citing 42 U.S.C.

§ 1396u-2; 42 U.S.C. § 1396b(m); 42 C.F.R. Part 438). In Medicaid managed care, the state remains responsible for approving a person for Medicaid eligibility before the person enrolls in a Medicaid MCO. *See* 42 U.S.C. § 1396u-2(a)(1)A); *see also* 42 C.F.R. § 438.54 (discussing enrollment by Medicaid beneficiaries in managed care programs).

Medicaid MCOs are required to contract with a sufficient number of providers to establish an "adequate network." (*Id.* at p. 6) (citing 42 C.F.R. § 438.68). Providers, however, are not required to contract with Medicaid MCOs. If a provider is not a participating provider, but still renders care to a Medicaid beneficiary enrolled in a Medicaid MCO, the MCO will generally pay the provider the same amount that the traditional fee-for-service program pays. (*Id.*) (citing *Midwest Emergency Associates-Elgin Ltd. v. Harmony Health Plan of Illinois, Inc.*, 382 Ill. App. 3d 973, 976 (1st Dist. 2008); 42 U.S.C. § 1396u-2(f)). Regardless of the provider's participating status, the provider submits claims for payment directly to the Medicaid MCO for any services rendered and the Medicaid MCO pays the providers directly. (*Id.*) (citing 42 U.S.C. § 1396u-2(b)(6); 42 C.F.R. § 438.106; *see also* 42 U.S.C. § 1396u-2(f).

Prior to January 1, 2018, DHFS had multiple distinct Medicaid managed care programs that applied to different populations pursuant to separate State MCO Contracts. (Dkt. 29 at pp. 7–8.) On February 27, 2017, DHFS opened an RFP process to consolidate many of these programs into one, effective January 1, 2018. (Dkt. 29 at p. 8.) After completing the RFP process, on August 11, 2017 and

8

September 22, 2017, DHFS announced that BCBSIL, CountyCare, Harmony, IlliniCare, Meridian, Molina, and NextLevel all won a State MCO Contract for the consolidated program effective January 1, 2018. (*Id.* & Dkt. 29, Ex. 1.) As a result, Aetna, Cigna, and Humana no longer have a State MCO Contract. (*Id.*)

## IV.  PLAINTIFFS' PUTATIVE CLASS ACTION COMPLAINT

Plaintiffs filed their putative class action Complaint on December 12, 2017. (Dkt. 1.) In a footnote to the caption of the Complaint, Plaintiffs state that they are acting as "authorized representatives" of the Residents pursuant to Section 435.923. (*See*, *e.g.*, Dkt. 1 at p. 1, n. 1 & pp. 5–7, ¶¶ 1–9.) Plaintiffs allege that the MCO Defendants "have contracted with *certain* Illinois supportive living and/or skilled nursing home facilities" to provide care to members of the MCO Defendants' health plans, but do not allege if the MCO Defendants have contracted with each of the LTC Facilities. (*See* Dkt. 1 at pp. 29–31, ¶¶ 11–21, p. 32, § IV(A) (emphasis added).) Plaintiffs contend that the state agency has approved each of the 38 Residents to receive Medicaid benefits and that the Residents have received care at one of the LTC Facilities pursuant to that approval. (*See*, *e.g.*, Dkt. 1 at pp. 7–29, ¶¶ 10, 10(a)–(*ll*).)

Finally, Plaintiffs contend that the MCO Defendants have failed to timely pay for the services rendered by the LTC Facilities in violation of the Payment Procedures Statute. (*Id.*; *see also id.* at p. 32, § IV(A).) As a result, Plaintiffs aver that there are "significant outstanding balances" owed by the MCO Defendants. (*Id.* at pp. 7–29, ¶¶ 10(a)–(*ll*).) Although the facts of this case concern whether the MCO Defendants timely paid the LTC Facilities for their services, Plaintiffs purport to

represent a class of all *Medicaid beneficiaries*: (i) who received services at the LTC Facilities; (ii) for whom claims were submitted for payment to the MCO Defendants; and (iii) with respect to whom the MCO Defendants allegedly failed to timely pay those claims in violation of the Payment Procedures Statute. (Dkt. 1 at pp. 34–35 (Class Definition); *see also id.* at p. 36, ¶ 12.)

The Complaint asserts the following seven counts, all predicated upon the MCO Defendants' alleged violation of the Payment Procedures Statute:

- Count 1 – Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201, contending that the MCO Defendants have "fail[ed] to reimburse Medicaid claims to the supportive living and/or skilled nursing facilities . . . ." (Dkt. 1 at p. 38, ¶ 31.)

- Count 2 – Plaintiffs bring a claim pursuant Section 1983 for the alleged failure to make medical assistance available in violation of 42 U.S.C. § 1396a(a)(10)(A). (Dkt. 1 at pp. 40–42, ¶¶ 40–42.)

- Count 3 – Plaintiffs bring a claim under Section 1983 for the alleged violation of 42 U.S.C. § 1396a(a)(8) for the purported delay in providing benefits to the Residents. (Dkt. 1 at p. 42, ¶¶ 43–47.)

- Count 4 – Plaintiffs contend that the MCO Defendants violated Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, for alleged discrimination against the Residents. (Dkt. 1 at pp. 42–43, ¶¶ 48–52.)

- Count 5 – Plaintiffs contend that the MCO Defendants discriminated against the Residents in violation of the Rehabilitation Act, 29 U.S.C. § 794. (Dkt. 1 at pp. 43–44, ¶¶ 53–58.)

- Count 6 – Plaintiffs bring a claim under Section 1983 for the alleged violation of the Due Process and Equal Protection Clauses of the United States Constitution. (Dkt. 1 at pp. 44–45, ¶¶ 59–68.)

- Count 7 – Plaintiffs seek a temporary restraining order and permanent injunction. (Dkt. 1 at pp. 45–46, ¶¶ 69–72.)

## V.    THE DISTRICT COURT'S DISMISSAL OF THE COMPLAINT WITH PREJUDICE

On February 23, 2018, the MCO Defendants filed an omnibus motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Dkt. 28 & 29.) The MCO Defendants argued that Section 435.923 does not authorize Plaintiffs to bring their claims against the MCO Defendants and, therefore, Plaintiffs lack standing. (Dkt. 29 at pp. 12–17.) The MCO Defendants further argued that, even if Plaintiffs did have standing, the Complaint should be dismissed because it fails to state a claim. (*Id.* at pp. 17–36.) Defendant CountyCare joined most of the MCO Defendants' motion to dismiss and also filed a separate motion raising additional arguments applicable to CountyCare as part of Cook County. (Dkt. 27.)

On August 28, 2018, the District Court granted the MCO Defendants' omnibus motion to dismiss and dismissed the Complaint with prejudice (the "Dismissal Order"). (Dkt. 69.) The District Court reviewed the language of Section 435.923, the regulation's purpose, and public and agency comments in the Federal Register, and found that the regulation only allows an authorized representative to take action with respect to a Medicaid beneficiary's application for and renewal of eligibility for Medicaid benefits. (*Id.* at 3.) The District Court then held that Section 435.923 did not grant an authorized representative standing to "bring this civil rights lawsuit" against the MCO Defendants for the alleged untimely payment of claims, and dismissed the Complaint with prejudice. (*Id.* at 4.) Plaintiffs filed their Notice of Appeal of the Dismissal Order on September 27, 2018. (Dkt. 71.)

11

## SUMMARY OF THE ARGUMENT

The District Court properly dismissed the Complaint and its decision should be affirmed. The District Court correctly held that Section 435.923 does not grant Plaintiffs standing in this case as purported "authorized representatives" of the Residents. Section 435.923 requires state Medicaid agencies to allow a person to appoint a representative to "assist[] with the individual's application and renewal of eligibility and other ongoing communications with the agency," including allowing a representative to "[s]ign an application on the applicant's behalf," "[c]omplete and submit a renewal form," "[r]eceive copies of the applicant or beneficiary's notices and other communications from the agency," and "[a]ct on behalf of the applicant or beneficiary in all other matters with the agency." 42 C.F.R. § 435.923.

The plain language of Section 435.923 limits an authorized representative's role to (1) taking action on behalf of a person with respect to his or her application and renewal for Medicaid eligibility and (2) communicating or interacting with the applicable state Medicaid agency. This regulation does *not* allow an authorized representative to file federal civil rights and discrimination claims against private health plans for their alleged failure to timely pay providers of long-term care services. (Dkt. 69 at 4) ("Plaintiffs lack standing as authorized representatives of the Residents . . . to bring this civil rights lawsuit."). It also does not make sense to interpret Section 435.923 as permitting an authorized representative to bring a lawsuit for the untimely payment of claims on behalf of a Medicaid beneficiary, because Medicaid MCOs pay providers directly for their services and *do not pay the beneficiary. See, e.g.,* 42 U.S.C. § 1396u-2(f).

Although the District Court did not reach the MCO Defendants' arguments pursuant to Fed. R. Civ. P. 12(b)(6), the District Court's dismissal should be affirmed for several independent reasons that were fully briefed in the lower court.

*First*, even assuming that Plaintiffs could have standing to sue on behalf of the Residents, the Complaint fails to plead *any facts* showing the Residents actually granted Plaintiffs an authorization. Instead, Plaintiffs merely allege in a single footnote, without any factual support, that they are authorized representatives of the Residents. Plaintiffs' failure to plead facts in support of their purported status as "authorized representatives" is fatal to the Complaint as a whole, particularly given Plaintiffs' allegations that they are consultants to the LTC Facilities and the LTC Facilities are the entities that actually rendered services to the Residents.

*Second*, Plaintiffs' Section 1983 claims (Counts Two, Three, and Six) fail because: (1) the MCO Defendants are not state actors; (2) the Medicaid statutes upon which Plaintiffs base their claims do not confer a protected right that is enforceable by Plaintiffs and do not apply to the payment of claims by MCOs; and (3) Plaintiffs cannot plead a viable due process claim on behalf of the Residents based on the MCO Defendants' alleged untimely payments.

*Third*, Plaintiffs' Rehabilitation Act Claim (Count Five) fails because it is devoid of any allegations that the Residents are qualified individuals with a disability or that any Residents were denied benefits (or even what benefits were denied) based upon an alleged disability.

*Fourth*, Plaintiffs' claim under Title II of the ADA (Count Four) fails to state a claim because the MCO Defendants are not "public entities" as required for liability under Title II and, further, the Complaint contains no facts plausibly demonstrating that the MCO Defendants discriminated against the Residents on the basis of a disability.

*Fifth*, Plaintiffs' claims for declaratory and injunctive relief (Counts One and Seven) fail because the underlying claims fail and there are no allegations of continuing harm, especially with respect to certain of the MCO Defendants that are no longer participating in the Illinois Medicaid program.

## ARGUMENT

### I. STANDARD OF REVIEW

This Court reviews a motion to dismiss for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1) under a *de novo* standard. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003); *Payton v. County of Kane*, 308 F.3d 673, 676 (7th Cir. 2002). Plaintiffs bear the burden of establishing standing. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009).

Although the District Court did not rule on these grounds, the MCO Defendants alternatively sought dismissal of Plaintiffs' Complaint pursuant to Rule 12(b)(6). This Court "may affirm the district court's dismissal on any ground supported by the record, even if different from the grounds relied upon by the district court." *Dhakal v. Sessions*, 895 F.3d 532, 536 (7th Cir. 2018) (citing *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001)). This Court reviews *de novo* a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *U.S. ex rel. Berkowitz*

*v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). Under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2006)). Therefore, a plaintiff must do more than demonstrate the "mere possibility of misconduct" and, instead, must plead sufficient facts to show he or she is entitled to relief. *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)). Legal conclusions that are unsupported by sufficient factual allegations must be disregarded. *Id.* at 678.

## II.   THE DISTRICT COURT PROPERLY DISMISSED THE COMPLAINT FOR LACK OF STANDING.

### A.   The Plain Language of Section 435.923 Does Not Grant Plaintiffs Standing to Bring this Lawsuit.

Standing "subsumes a blend of constitutional requirements and prudential considerations." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). Under the prudential considerations, a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Here, Plaintiffs contend that they have standing as "authorized representative[s] of" the Residents pursuant to Section 435.923. (*See* Dkt. 1 at pp. 1-2, n. 1; *see also* Dkt. 1 at pp. 41–41, ¶¶ 39, 41, 44 & 46.) The District Court, however, properly held that Section 435.923 applies exclusively to an individual's "application and renewal of eligibility and other ongoing communications with the agency." (Dkt. 69 at p. 3.) The plain language of the regulation does not allow a Medicaid beneficiary's

"authorized representative" to bring federal civil rights and discrimination claims against a private Medicaid MCO relating to the alleged untimely payment of claims for services rendered by LTC Facilities.

> 1.   *Section 435.923 does not permit an "authorized representative" to bring a civil rights and discrimination lawsuit against an MCO.*

Statutes and regulations "should be read as a whole and, where possible, afforded a harmonious interpretation." *Carmichael v. The Payment Ctr., Inc.*, 336 F.3d 636, 640 (7th Cir. 2003). In interpreting a regulation, this Court looks to the plain and unambiguous meaning of the regulation's language. *See, e.g., Ioffe v. Skokie Motor Sales, Inc.*, 414 F.3d 708, 710 (7th Cir. 2005). Section 435.923 states, in relevant part:

> (a) The [State Medicaid] agency must permit applicants and beneficiaries to designate an individual or organization to act responsibly on their behalf *in assisting with the individual's application and renewal of eligibility and other ongoing communications with the agency*.
>
> (b) Applicants and beneficiaries may authorize their representatives to--
>
> > (1)   Sign an *application* on the applicant's behalf;
> >
> > (2)   Complete and submit a *renewal form*;
> >
> > (3)   Receive copies of the applicant or beneficiary's notices and other communications *from the agency*;
> >
> > (4)   Act on behalf of the applicant or beneficiary in all other matters *with the agency*.

42 C.F.R. § 435.923 (emphases added). Here, the District Court properly held that Section 435.923—when read as a whole—does not grant Plaintiffs standing in this case. (Dkt. 69 at 3.) Specifically, Section 435.923 authorizes Medicaid applicants

and beneficiaries to designate an authorized representative to act on their behalf in only two types of matters.

First, Section 435.923 permits a designated representative to assist a person with his or her application or renewal of Medicaid eligibility. The plain language of Section 435.923(a) states that the State Medicaid agency must permit a Medicaid applicant to "designate an individual or organization to act responsibly on their behalf *in assisting with the individual's application and renewal of eligibility . . ."* 42 C.F.R. § 435.923(a) (emphases added). Consistent with Section 435.923(a), subsections 435.923(b)(1)-(2) expressly allow the Medicaid applicant to authorize a representative to assist with the application and renewal process by "sign[ing] an application on the applicant's behalf" and "complet[ing] and submit[ting] a renewal form." 42 C.F.R. § 435.923(b)(1)-(2). This language makes clear that the regulation is limited to issues concerning Medicaid eligibility applications and renewal applications—*not* payment of claims by private MCOs for services rendered by the LTC Facilities.

Consistent with the plain language of Section 435.923, that regulation is part of Title 42, Part 435 of the Code of Federal Regulations, which delineates the requirements for eligibility for Medicaid benefits. *See* 42 C.F.R. § 435.2 (explaining that Part 435 of the regulations "sets forth . . . [t]he eligibility requirements and procedures that the Medicaid agency must use in determining and redetermining eligibility [for the Medicaid program] . . ."). In contrast, the regulations regarding the payment of claims by Medicaid MCOs are contained in an entirely separate

17

section of the Code of Federal Regulations—*i.e.*, Title 42, Part 438. *See, e.g.*, 42 C.F.R. § 438.106. The fact that Section 435.923 is expressly embedded in the section of the Code of Federal Regulations relating to Medicaid eligibility, as opposed to the section dealing with the payment of claims by Medicaid MCOs, further supports the conclusion that the regulation is intended to address only eligibility issues.

The applicable agency commentary reinforces that Section 435.923 relates to Medicaid "applicants and beneficiaries in applying for and maintaining coverage" because "[a]uthorized representatives have historically provided valuable support to individuals needing help navigating the application and enrollment process, as well as ongoing communications with the agency." 78 Fed. Reg. 42160, 42174 (July 15, 2013). The regulation clearly contemplates that authorized representatives will assist the individual to obtain eligibility and benefits—and, of course, the benefits obtained flow to the individual and *not* the authorized representative. On the other hand, as explained herein, the benefit from the payment of claims by the MCO Defendants flows to the *LTC Facilities* and not the Residents.

Second, Section 435.923 permits a designated representative to assist applicants and beneficiaries in navigating subsequent interactions with the state Medicaid agency. Specifically, Section 435.923(a) states that the State Medicaid agency must permit a Medicaid applicant to "designate an individual or organization to act responsibly on their behalf in assisting with the individual's . . . *other ongoing communications with the agency.*" 42 C.F.R. § 435.923(a) (emphasis added). Likewise, the plain language of Sections 435.923(b)(3)-(4) state that an authorized

18

representative may receive "communications *from the agency*" and act on "all other matters *with the agency."* 42 C.F.R. § 435.923(b)(3)-(4) (emphases added). Thus, any actions taken by an authorized representative are limited to interactions with the state Medicaid agency—and not private MCOs.

Although the language of Section 435.923 is clear and unambiguous, the Federal Register confirms that the term "authorized representative" in Section 435.923 is limited to a representative that acts on behalf of an individual in interactions with the applicable state Medicaid agency:

> We proposed to define the term "authorized representative" as an individual or organization that acts responsibly on behalf of an applicant or beneficiary in assisting with the *individual's application and renewal of eligibility and other ongoing communications with the Medicaid or CHIP agency*.

78 Fed. Reg. at 42174 (emphasis added).

Simply put, Section 435.923 does not grant Plaintiffs authority to file their lawsuit against private health plans like the MCO Defendants for the alleged untimely payment of claims in purported violation of the Payment Procedures Statute. Here, neither the Residents' application and renewal of eligibility nor any communications with the Medicaid agency (*i.e.*, DHFS) are at issue. To the contrary, Plaintiffs expressly aver that the Residents have already been approved for Medicaid eligibility and the *only* issue in dispute is the MCO Defendants' alleged failure to timely pay claims for services rendered by the *LTC Facilities* in accordance with the Payment Procedures Statute. (*See* Dkt. 1 at pp. 34–35 (Class Definition) & p. 37, ¶ 19.)

Ignoring the plain language of the regulation and the facts of this case, Plaintiffs argue that Section 435.923(b)(4) is broad enough to confer standing on Plaintiffs to bring a lawsuit generally. In support, Plaintiffs cite certain excerpts from the Federal Register to argue that a Medicaid beneficiary can define the scope of an authorized representative's authority under Section 435.923. (Appellants' Brief at 7.) However, a Medicaid member cannot authorize a representative to do something under Section 435.923 if the plain language of the regulation does not permit it. As set forth above, the plain language of Section 435.923 unambiguously limits what a representative may do (assist with applications and renewal of eligibility and related matters) and with whom that representative may interact (the Medicaid agency). The regulation does not authorize a representative to sue a private MCO for the alleged untimely payment of claims. If the Centers for Medicare & Medicaid Services ("CMS") intended to include claims payments by MCOs within the scope of Section 435.923 when it implemented the regulation in 2014, it would have done so. Further, CMS substantially overhauled the entire Medicaid managed care regulations in 2015 and 2016. *See*, *e.g.*, 81 Fed. Reg. 27498 (May 6, 2016). If CMS intended to include claims disputes or MCOs in the context of Section 435.923, it would have done so at that time. The fact is that CMS chose not to do so, and Plaintiffs cannot be permitted to interpret Section 435.923 in a contrary fashion.

Plaintiffs' interpretation of Section 435.923 not only defies the regulation's plain language; it also contradicts other Medicaid statutes and regulations. As the applicable Medicaid managed care statute states, Medicaid MCOs "shall make

20

payment *to health care providers*" for items and services. *See* 42 U.S.C. § 1396u-2(f)

(emphasis added). The statute does not reference to *any* payment due and owing to

the Medicaid beneficiaries. Further—and significantly—if the services are covered

and properly payable, the Residents are *not* liable to the health care provider for

any untimely or even unpaid claims by the MCO Defendants. *See* 42 C.F.R. §

438.106. The core issue in this case is the MCO Defendants' alleged untimely

payment of claims for services rendered to Residents by the LTC Facilities. (Dkt. 1

at pp. 7–28, ¶¶ 10, 10(a)–(*ll*).) Accordingly, Plaintiffs' position that Section 435.923

allows them to bring claims on behalf of the Residents is irreconcilable with the

applicable statutes that state the MCO Defendants pay the providers and not the

Residents.

Thus, the District Court properly held that Section 435.923 does not grant

Plaintiffs standing in this case to sue the MCO Defendants on behalf of the

Residents for the alleged untimely payment of claims.[3]

---

[3]    In their opening brief, Plaintiffs at times refer to the Residents as "individual
Plaintiffs-Appellants" and the Plaintiffs as "Organizational Plaintiffs-Appellants,"
suggesting that the Residents are somehow also plaintiffs to this case. (*See, e.g.*,
Appellants' Brief at pp. 1 & 3.) Plaintiffs' attempt to create two sets of Plaintiffs contradicts
the Complaint, which alleges that each Plaintiff is a purported "authorized representative"
of the Residents. Likewise, Plaintiffs (*i.e.*, the purported authorized representatives) are the
only parties that filed the Notice of Appeal. (*See* Dkt. 71) (stating that "NOTICE IS
HEREBY GIVEN that taking the appeal as Plaintiffs-Appellants are APERION CARE,
INC., as Authorized Representative of: Francisca Delgado, et al. . . . ."). Lest there be any
doubt, Plaintiffs state that the Issue Presented is whether Section 435.923 "permits
Plaintiffs-Appellants to bring claims on behalf of their residents under the circumstances
arising in this case." (Appellants' Brief at p. 1.) Accordingly, the only plaintiffs in this case
are the entities identified as purported "authorized representatives" of the Residents.

### 2. There are no cases interpreting Section 435.923 to allow an "authorized representative" to bring a lawsuit against an MCO for the alleged untimely payment of claims.

Plaintiffs do not cite a single case holding that Section 435.923 grants a long-term care facility (let alone a consultant to such a facility) standing as an "authorized representative" of a Medicaid recipient to sue a private MCO for the allegedly untimely payment of claims—because there are none. Rather, the cases that have construed Section 435.923 as allowing authorized representatives to bring a lawsuit on behalf of a Medicaid enrollee have found standing to sue *only* in the context of eligibility determinations, and *only* against the state agency. *See, e.g.*, *CareSpring Healthcare Management, LLC v. Dungey*, No. 1:16-cv-1051, 2018 WL 1138428, at *7 (S.D. Ohio Mar. 3, 2018) (holding that an authorized representative had standing under Section 435.923 to bring a lawsuit *against the Ohio Medicaid agency* relating to the improper calculation of Medicaid benefits, explaining: "Fairly read, 42 C.F.R. § 435.923(b) permits an authorized representative to act broadly, *but only on the narrow topic of Medicaid benefits.*") (emphasis added); *Tiggs v. Ohio Dept. of Job & Family Servs.,* No. 106022, 2018 WL 3815054, at *5 (Ohio Ct. App. Aug. 9, 2018) (holding that a facility had standing to pursue a claim relating to Medicaid eligibility under Section 435.923 and Ohio law); *Evangelical Good Samaritan Soc'y v. N.D. Dep't of Human Servs.*, 862 N.W.2d 794 (N.D. 2015)

22

(allowing a long-term care facility to act as an authorized agent under Section

435.923 to sue a state agency over the denial of a Medicaid application).[4]

In their opening brief, Plaintiffs lean heavily upon *Doctors Nursing &*

*Rehabilitation Center, LLC v. Norwood,* No. 16-cv-9837, 2017 WL 2461544 (N.D. Ill.

June 7, 2017). This case, however, is fundamentally different. In *Doctors Nursing*,

several facilities brought claims against Director Norwood alleging that DHFS

"failed to process plaintiffs' Medicaid applications, render eligibility determinations,

and provide benefits with reasonable promptness" in violation of 42 U.S.C.

§ 1396a(a)(8) and 1396a(a)(10)(A). *See id.* at *1. The district court found the

facilities had standing to sue the state Medicaid agency under Section 435.923

because Section 435.923(b)(4) states that a representative may "[a]ct on behalf of

the applicant or beneficiary in all other matters with the agency." *Id.* at *4. The

district court concluded that litigation *against the agency* "arguably" falls within

this language because a "beneficiary's legal claim that an agency has deprived her

of Medicaid benefits . . . is a matter in dispute with that agency." *Id.*

*Doctors Nursing* is inapposite because that case was brought against *the agency*

and not private MCOs. Moreover, the core issue in dispute here is the MCO

Defendants' alleged failure to comply with the Payment Procedures Statute by

*timely paying* the LTC Facilities. Subsequent decisions in the *Doctors Nursing*

litigation confirmed that the Payment Procedures Statute was not at issue. *See*

---

[4]     Notably, the same law firm representing Plaintiffs in this case represented all of the
plaintiffs in these cited cases. Each of those cases involved issues relating to applications
and eligibility for Medicaid benefits.

*Doctors Nursing & Rehab Ctr., LLC v. Norwood*, No. 16-cv-9837, 2017 WL 3838031, at *5, n.15 (N.D. Ill. Sept. 1, 2017) (confirming that the Payment Procedures Statute (42 U.S.C. § 1396a(a)(37)) was not at issue in that case). Accordingly, neither *Doctors Nursing* nor any other case supports Plaintiffs' position that they can sue the MCO Defendants as representatives of the Residents for the alleged violation of the Payment Procedures Statute.[5]

> ### 3. *Plaintiffs' other attempts to contort Section 435.923 should be rejected.*

Finding no support in the language of Section 435.923 or the case law, Plaintiffs turn to various other sources in an attempt to shore up their standing argument. Each of these efforts should be rejected.

Plaintiffs first cite certain provisions within an unauthenticated, draft contract for the Medicare-Medicaid Alignment Initiative program to argue that MCOs must allow an enrollee to appoint a representative to file a "grievance" on behalf of the enrollee. (Appellants' Brief at 12–14 & Appendix Ex. 5.)[6]  At the outset, Plaintiffs have failed to demonstrate how this Court may consider this document and,

---

[5]     Plaintiffs also cite an unpublished and non-precedential order from a trial court in Lynchburg, Virginia, to argue that Section 435.923 allows an authorized representative to pursue litigation on behalf of a Medicaid recipient. (Appellants' Brief at 10 & Appendix Ex. 2.) Beyond the fact that the order was not raised below, like the *Doctors Nursing* case, the Virginia trial court merely held that the authorized representative could assert claims in court for the alleged improper denial by the state Medicaid agency of a person's application for Medicaid benefits. (*See* Appendix at p. 23.)

[6]     Although Plaintiffs included this document in their response to the MCO Defendants' motion to dismiss in the District Court (*see* Dkt. 41-2), they never demonstrated the origin of this document or any basis for judicial notice of it. (*See* Dkt. 41 at pp. 8–10.)

therefore, it should be ignored. But even if this Court were to consider the document, it does not support Plaintiffs' standing argument under Section 435.923. A "grievance" is an internal complaint brought by an MCO enrollee to an MCO relating to issues other than benefit determinations. *See* 42 C.F.R. § 438.400 (defining "grievance"). Grievances are governed by 42 C.F.R. Part 438, Subpart F. *See* 42 C.F.R. §§ 438.400 *et seq.* Section 435.923 has nothing to do with grievances; rather, 42 C.F.R. § 438.402(c)(1)(ii), permits an MCO enrollee to appoint a representative to file a grievance on his/her behalf. Accordingly, the contract provisions that Plaintiffs cite merely reflect the ability of a representative under 42 C.F.R. § 438.402(c)(1)(ii) to file an internal grievance with the MCO on behalf of an enrollee relating to issues other than benefits.

Plaintiffs also argue that the Residents are "still applying for and attempting to establish eligibility" and that "[a]pplying for benefits encompasses every aspect of the application process." (Appellant Brief at 11-12.) Plaintiffs' argument is baseless because it contradicts the repeated allegations of the Complaint that the Residents have already been approved for Medicaid eligibility. (*See* Dkt. at pp. 7–28, ¶¶ 10 (alleging the Residents "are approved Medicaid beneficiaries") & 10(a)–10(*ll*) (alleging that each Resident was receiving services "[p]ursuant to Medicaid eligibility and approval").)

Plaintiffs then assert that there is "no other alternative" but to file a lawsuit "if, as here, the state agency commits errors, or violates constitutional or due process, or other rights." (*Id.* at 12.) Plaintiffs' argument misses the point. The MCO

Defendants—not the state agency—are responsible for adjudicating and paying the LTC Facilities directly for proper claims they submitted for payment. 42 U.S.C. § 1396u-2(f). Thus, any alleged violation by the state agency has nothing to do with the issue of claims payments by the MCO Defendants.

Finally, Plaintiffs cite orders from probate courts in Clinton County, Illinois, Whiteside County, Illinois, and Pinellas County, Florida, and an order from the Court of Common Pleas, Luzerne County, Pennsylvania (the "Probate Orders"), to argue that authorized representatives can "pursue any rights on behalf of the [the applicant] afforded by law or statute or regulation." (Appellants' Brief at 14–15 & Appendix Ex. 6.) However, like the unauthenticated draft contract, these documents are not part of the Record on Appeal and should be stricken. *See* Fed. R. App. P. 10(a); *see also Hart v. Sheahan*, 396 F.3d 887, 894 (7th Cir. 2005) ("To present new evidence at the appeal stage is improper and in appropriate cases sanctionable.") (citing *Youker v. Schoenenberger*, 22 F.3d 163, 169 (7th Cir. 1994)). Nor are they relevant because no Plaintiff alleges that it has previously been appointed by a court to act as an authorized Medicaid representative for a deceased beneficiary.

At bottom, Plaintiffs' arguments are misguided. Although Plaintiffs focus on whether Section 435.923 generally allows an authorized representative to bring a lawsuit, this Court need not resolve that broad issue. The limited issue in this case is whether an authorized representative has standing to bring a lawsuit against private MCOs for the alleged untimely payment of claims in violation of the

Payment Procedures Statute. Plaintiffs' arguments do not substantiate standing in this context. Nor does any authority support such standing.

### B.     Plaintiffs Fail to Plead Any Facts Demonstrating a Valid Authorization.

Even assuming Section 435.923 grants Plaintiffs standing in this case, the District Court's dismissal of the Complaint was still proper because Plaintiffs have not pled any facts relating to the alleged authorization that they purportedly received from the Residents, including the scope of that authorization, the terms of the authorization, and whether it is written as required by Section 435.923(f). Instead, Plaintiffs' Complaint contains a single footnote—in the case caption— asserting the bare legal conclusion that Section 435.923 "*permit[s]* applicants and beneficiaries to designate an individual or organization to act responsibly on their behalf in assisting with the individual's application and renewal of eligibility and other ongoing communications with the state agency." (*See* Dkt. 1 at p. 1, n. 1 (emphasis added).) This statement is insufficient on its face. Indeed, Plaintiffs allege that they are consultants *to the LTC Facilities*, yet there is not a single factual allegation demonstrating how the Plaintiffs received an authorization from the Residents. Nor can receipt of an authorization be inferred because it is the LTC Facilities—not the Plaintiffs as "consultants" to the LTC Facilities—that rendered the care to the Residents and, therefore, have direct interaction with the Residents. In other words, Plaintiffs are several steps removed from the Residents, and the Complaint alleges no facts regarding the existence and content of purported authorizations from the Residents designating Plaintiffs to act on their behalf.

In an attempt to remedy their pleading deficiencies in the lower court, Plaintiffs attached to their response brief an unauthenticated document entitled "Designation of Authorized Representative" for Resident Francisca Delgado. (Dkt. 41 at pp. 7–8 & Ex. A.)[7]  Now, on appeal, Plaintiffs attach to their opening brief a different document entitled "Designation of Authorized Representative" for Resident Dannah Norwood, allegedly appointing a facility named "California Gardens" as her authorized representative. (Appellants' Brief at 8 & Appendix Ex. 4.) This document is not properly part of the Record on Appeal and, thus, should be stricken. *See* Fed. R. App. P. 10(a); *see also Hart*, 396 F.3d at 894. Nevertheless, even if the Court considers this document, it is irrelevant because the plain language of Section 435.923 *does not* grant the Plaintiffs standing to assert causes of action relating to the alleged improper payment of claims. Further, "California Gardens" is not a Plaintiff and the Complaint does not even mention that facility (let alone a consultant to that facility).

## III.   THE DISTRICT COURT'S DECISION SHOULD BE AFFIRMED ON THE ALTERNATIVE GROUND THAT THE COMPLAINT FAILS TO ALLEGE ANY VIABLE CAUSE OF ACTION.

For the reasons set forth above, the District Court correctly dismissed the Plaintiffs' Complaint for lack of standing. However, even if this Court were to conclude that the Plaintiffs have standing, this Court should affirm the District

---

[7]     Like all documents that Plaintiffs attached to their brief in the lower court and in this Court, Plaintiffs failed to authenticate this document or explain how the Court may take judicial notice of it. Therefore, it should be ignored.

Court's ruling on the grounds that the Complaint fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

### A.   Plaintiffs' Section 1983 Claims Fail.

#### 1.   Plaintiffs' Section 1983 Claims (Counts Two, Three, and Six) Fail Because the MCO Defendants Are Not State Actors.[8]

Counts Two, Three, and Six allege statutory and constitutional violations against the MCO Defendants under Section 1983. To state a claim under Section 1983, Plaintiffs must allege:  (1) the MCO Defendants acted under the color of state law—*i.e.*, were "state actors"; and (2) the MCO Defendants deprived the Residents (as the persons whose interests the Plaintiffs purport to represent) of a constitutional right. *See Murphy v. Rychlowski*, 868 F.3d 561, 565 (7th Cir. 2017). Plaintiffs cannot establish either of these elements.

Private actors, such as the MCO Defendants, cannot be liable under Section 1983 unless the plaintiff demonstrates "a sufficient nexus between the state and the private actor to support a finding that the deprivation committed by the private actor is 'fairly attributable to the state.'"  *L.P. v. Marian Catholic High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017). Even a private actor that is publicly funded by the state, heavily regulated by the state, contracts with the state, and/or serves a public function is *not* a state actor for purposes of Section 1983. *See*, *e.g.*, *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 58 (1999); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974) (a "heavily regulated, privately owned" entity is not a state actor).

---

[8]     CountyCare does not join this subsection.

Here, the MCO Defendants are private entities that contract with DHFS to administer Medicaid benefits for their members in Illinois. (*See* Dkt. 1 at p. 35, ¶ 4.) Accordingly, they are not state actors and, therefore, cannot be liable on a Section 1983 claim. In fact, the state Medicaid statute requires that the MCO Defendants remain independently responsible for all of the traditional duties of health insurers, including developing a network of providers, underwriting coverage and assuming the risk for that underwriting, and administering, adjudicating, and paying healthcare claims that are submitted by providers. *See*, *e.g.*, 305 ILL. COMP. STAT. 5/5-16; 305 ILL. COMP. STAT. 5/5-16.12 (requiring MCOs but not DHFS to comply with the applicable provisions of the Illinois Insurance Code governing all managed care organizations). As the Illinois Appellate Court has explained:

> Under Illinois's managed care program, HFS enters into a contract for furnishing health services by a managed care organization (MCO agreement) with an MCO. MCO agreements provide that the MCOs, rather than HFS, underwrite and administer coverage for Medicaid enrollees. Thus, the MCOs – and not HFS – reimburse providers for services rendered to the MCO enrollees.
>
> The delivery of services in an MCO arrangement is structured as follows: MCOs establish provider networks through private contracts with healthcare providers. An MCO's Medicaid enrollees are required to utilize healthcare providers within their MCO networks. Providers and MCOs negotiate rates of reimbursement for services that may differ from the rates paid by the state in a fee-for-service arrangement.

*Midwest Emergency Associates-Elgin Ltd.*, 382 Ill. App. 3d at 976.

In light of the private and risk-bearing status of Medicaid MCOs, numerous courts have held that MCOs are *not* state actors for purposes of Section 1983. *See*,

30

*e.g.*, *Bourbon Cmt. Hosp. LLC v. Coventry Health and Life Ins. Co.*, No. 3:15-cv-0455-JHM, 2016 WL 51269, at *6 (W.D. Ky. Jan. 4, 2016) (holding that MCOs are not "state actors" and not subject to Section 1983 liability); *Quinones v. UnitedHealth Grp. Inc.,* No. CIV. 14-00497 LEK, 2015 WL 4523499, at *5 (D. Haw. July 24, 2015) (holding that an MCO was not a "state actor," explaining: "[i]f contracting, funding, and regulating was sufficient to create state action, nearly every government contract would produce the possibility of § 1983 liability against the government contractor. Congress did not intend this result, and such a decision by this Court would conflict with clear Supreme Court precedent on this point."); *Tipton v. Viaquest Behavioral Health of Penn., LLC*, No. 10-3573, 2010 WL 5258473, at *3–4 (E.D. Pa. Dec. 23, 2010)  (holding that a Medicaid MCO was not a state actor for purposes of Section 1983). The reasoning of these cases equally applies here and the outcome should be the same.

Plaintiffs' Complaint contains the conclusory allegation that, because DHFS contracts with the MCO Defendants, "[t]he actions of the MCOs as alleged herein are imputed to [DHFS]" and the MCO Defendants "are willing participants in joint action with [DHFS]." (Dkt. 1 at p. 35–36, ¶¶ 4–6, 8.) This Court has explained, however, that under the "joint activity" or "nexus" test, to find that a private party is a "state actor" the plaintiff must allege a "*concerted effort*" between a state actor and the private party such that they "had a meeting of the minds and thus reached an understanding with a state actor to deny plaintiffs a constitutional right." *L.P.*, 852 F.3d at 69 (emphasis in original). The Complaint does not allege that there was

a "concerted effort" or "meeting of the minds" between DHFS and the MCO Defendants, nor can such allegations be levied because in managed care the alleged failure to timely pay claims is the responsibility of the MCO Defendants and not DHFS. Where, as here, the state agency and the MCOs each perform their own distinct, specified roles, they cannot meet the "joint activity" test.

Plaintiffs also argued in the District Court that the MCO Defendants are state actors because they were exercising "public functions" traditionally reserved to the state. (Dkt. 41 at pp. 22–26.) Under the "public function" test, "the relevant question is not simply whether a private group is serving a 'public function' [but rather] . . . whether the function performed has been traditionally the *exclusive* prerogative of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982). The function alleged to be at issue here—*i.e.*, the timely payment of claims for people enrolled in each MCO Defendants' respective health plan—is without question the sole responsibility of the MCO under applicable law and *not* the responsibility of the state Medicaid program. *See*, *e.g.*, *Harmony Health Plan of Illinois, Inc.*, 382 Ill. App. 3d at 976. Indeed, managed care offers an alternative to, and is fundamentally different from, the traditional Medicaid fee-for-service program. *Id.* Accordingly, the MCO Defendants are not state actors under the "public function" test and the District Court's dismissal of Plaintiffs' Section 1983 claims should be affirmed.[9]

---

[9]     In the District Court, Plaintiffs cited *Rodriguez v. Plymouth Ambulance Services*, 577 F.3d 816 (7th Cir. 2009), to argue that this Court has "concluded that the administration of Medicaid programs to indigent citizens satisfies the exclusive state function test." (Dkt. 41 at p. 24.) However, *Rodriguez* did not involve the Medicaid program—it addressed whether a hospital was a state actor when it provided medical services to incarcerated people. This Court followed prior precedent that states have an

## 2. *Plaintiffs Were Not Deprived of a Constitutionally-Protected Right (Counts Two and Three).*

In Counts Two and Three, Plaintiffs attempt to shoehorn the alleged violation of the Payment Procedures Statute into purported violations of 42 U.S.C. § 1396a(a)(8) and 42 U.S.C. § 1396a(a)(10)(A). (Dkt. 41 at pp. 28–29) (the MCO Defendants' "violation of 42 C.F.R. § 447.45(d) and 42 U.S.C. § 1396a(a)(37)(A) [*i.e.*, the Payment Procedures Statute] constitutes a denial of 42 U.S.C. §§1396a(a)(10)(A), 1396d(a)(4)(A), and 1396a(a)(8)"). Plaintiffs' theory fails for three reasons.

First, the Payment Procedures Statute does not apply to claims submitted by the LTC Facilities, which are long-term care facilities. (*See*, *e.g.*, Dkt. 1 at pp. 5–7, ¶¶ 1–9.) Rather, the statute only requires a state Medicaid "plan" to provide for "*claims payment procedures*" for claims submitted by "*health care practitioners through individual or group practices or through shared health facilities.*" 42 U.S.C. § 1396a(a)(37)(A) (emphases added). Because this statute is limited to claims for "practitioners through individual or group practices or through shared health facilities," this Court and numerous other courts have explained that it does not apply to claims submitted by long-term care facilities like those alleged to be at issue in this case. *See* 42 C.F.R. § 447.45(b) ("The term [shared health facility] does not include a provider of services (as specified in § 489.2(b) of this chapter) . . . ."); 42 C.F.R. § 489.2(b) (identifying skilled nursing facilities as within the definition of

---

exclusive obligation under the Eighth Amendment to render medical care to inmates and explained that the hospital was a state actor because the state outsourced that exclusive state function to the hospital. Thus, *Rodriguez* is inapplicable.

a provider of services); *Ill. Council on Long-Term Care v. Bradley*, 957 F.2d 305, 306–308 (7th Cir. 1992) (noting that the "30-day/90-day rule for practitioners' claims" does not apply to claims for nursing home services); *United Cerebral Palsy Ass'ns of New York State, Inc. v. Cuomo*, 966 F.2d 743, 744-45 (2d Cir. 1992) (claims for services by intermediate care facilities for developmentally disabled people did not need to be paid within the 30/90 timeframe of the Payment Procedures Statute); *State of Florida, Agency for Health Care Admin. v. MIED, Inc.*, 869 So.2d 13, 20 (Fla. App. Ct. 2004) (finding that a skilled nursing facility is not a "practitioner" for purposes of 42 C.F.R. § 447.45(d)). Accordingly, because the Payment Procedures Statute does not apply to the types of claims at issue in this case, Plaintiffs cannot assert any causes of action that are based upon its alleged violation.

Second, because the plain language of the Payment Procedures Statute only requires the state Medicaid "plan" to have *procedures* to pay certain percentages of claims from healthcare practitioners within certain timeframes, it is not privately enforceable. *See Koss v. Norwood*, No. 17-cv-2762, 2018 WL 1535068, at *8 (N.D. Ill. Mar. 29, 2018) (declining to find the Payment Procedures Statute was privately enforceable, despite the fact that the plaintiffs alleged DHFS also violated 42 U.S.C. § 1396a(a)(8) and 1396a(a)(10)); *Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 524-25 (E.D. Pa. 2011) (explaining that the focus of the statute is on procedures and does not require that all providers be paid within the statutory time frames); *Patients' Choice Med. Ctr. of Humphries Cnty., LLC v. Office of the Governor*, No. 08-696, 2009 WL 531861, at *4 (S.D. Miss. Mar. 3, 2009)

34

("[Because § 1396a(a)(37)(A) speak[s] only in terms of institutional policy and practice, has an aggregate rather than individualized focus and is not concerned with whether the needs of any particular person or class of individuals have been satisfied, it does not appear to create a private right enforceable under § 1983.") (citation and internal quotations omitted). Plaintiffs cannot attempt to enforce an otherwise unenforceable statute by piggybacking it on a Section 1983 claim.

Finally, 42 U.S.C. § 1396a(a)(8) and 42 U.S.C. § 1396a(a)(10)(A) are not applicable to the MCO Defendants. Specifically, these statutes expressly impose obligations *on the state* to ensure that applications for Medicaid eligibility are promptly processed so that all available medical benefits are furnished with reasonable promptness. *See* 42 U.S.C. § 1396a(a)(8) ("A State plan for medical assistance must . . . provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals."); *see also* 42 U.S.C. § 1396a(a)(10)(A) ("A State plan for medical assistance must . . . . provide—for making medical assistance available, including at least the care and services listed in paragraphs (1) through (5), (17), (21), and (28) of [42 U.S.C. § 1396d(a)]" to all eligible individuals). These statutes do not impose obligations on MCOs or address issues related to claims payment by MCOs and, consequently, are inapplicable to the MCO Defendants.

In the District Court, Plaintiffs nevertheless attempted to conflate the alleged untimely payment of claims by the MCO Defendants with the denial of benefits.

Specifically, Plaintiffs argued that courts have allowed Section 1983 claims for alleged violations of 42 U.S.C. §§ 1396a(a)(8) and (a)(10)(A) and that the term "medical assistance" as used in 42 U.S.C. §§ 1396a(a)(8) and (a)(10)(A) includes the payment for services. (Dkt. 41 at pp. 27–29.) While 42 U.S.C. § 1396a(a)(8) and (a)(10)(A) may create enforceable rights vis-à-vis the state Medicaid agency in certain circumstances, they do not do so with respect to the MCO Defendants or their alleged untimely payment of claims. Specifically, those statutes create requirements as to what the state Medicaid agency must do in operating its Medicaid program, including providing that all individuals wishing to apply for "medical assistance" shall have the opportunity to do so, such assistance shall be furnished with "reasonable promptness," and "medical assistance" shall be available to all individuals who qualify. 42 U.S.C. §§ 1396a(a)(8) & (a)(10)(A). Thus, where courts have allowed Medicaid beneficiaries to enforce 42 U.S.C. § 1396a(a)(8) and (a)(10)(A) through Section 1983, those cases were solely against the state Medicaid agency for the alleged failure to ensure that the state's Medicaid plan was properly enforced. *See, e.g., Doctors Nursing & Rehab. Ctr., LLC*, 2017 WL 2461544, at *7. By their plain language, those statutes do not create any obligations with respect to the MCO Defendants, especially as it relates to the payment of claims because different statutes govern that topic. *See* 42 U.S.C. § 1396u-2(f). In short, 42 U.S.C. §1396a(a)(8) and (a)(10)(A) are *not* enforceable against *the MCO Defendants* for the alleged failure to timely pay claims; thus, Plaintiffs' Section 1983 claims fail.

### 3. *Plaintiffs Have Not and Cannot Plead a Viable Due Process Claim Under Section 1983 (Count Six).*

Count Six likewise fails because Plaintiffs have not alleged facts sufficient to support a due process violation.[10] To survive a Rule 12(b)(6) challenge to their due process claim, Plaintiffs must plausibly allege facts demonstrating: "(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) (quoting *Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004)); *see also Santana v. Cook Cty. Bd. of Review*, 779 F. Supp. 2d 830, 836-37 (N.D. Ill. 2011) (applying *Iqbal*'s requirements to a procedural due process claim and granting motion to dismiss where plaintiff had not "plausibly alleged" that his interests were violated). Moreover, whether a violation of due process occurred "requires a determination of what process is due." *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996). For example, a "plaintiff bringing a procedural due process claim must allege and prove that he availed himself of post-deprivation remedies or that the available remedies were inadequate . . . and [f]ailure to do so is fatal to a procedural due process claim." *Johnson v. Thompson-Smith*, 203 F. Supp. 3d 895, 906 (N.D. Ill. 2016), *aff'd*, 700 F. App'x 535 (7th Cir. 2017); *see also Gable v. City of Chicago*, 296

---

[10]     Plaintiffs purport to characterize their Section 1983 claim as a claim for "violation of due process and equal protection." (Dkt. 1 at p. 44.) Aside from this cursory reference to equal protection in the heading, however, the Complaint includes no allegations—not even conclusory ones—alleging that Plaintiffs were "discriminate[d] [against] on the basis of membership in a protected class or irrationally target[ed] . . . for discriminatory treatment as a so-called 'class of one'." *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010) (stating essential elements of an equal protection claim) (citation omitted).

F.3d 531, 540 (7th Cir. 2002) (holding that for class action plaintiffs asserting a Section 1983 claim there was "no due process violation so long as a meaningful post deprivation remedy was available").

First, Plaintiffs have not and cannot allege that the Residents have a protectable property interest in the receipt of any payments from the MCO Defendants because MCOs are required to pay the LTC Facilities directly. *See* 42 U.S.C. § 1396u-2(f); *see also* 42 C.F.R. § 438.106(b)(2). Indeed, applicable federal law expressly states that Medicaid MCOs "shall make payment *to health care providers* for items and services . . . ." 42 U.S.C. § 1396u-2(f) (emphasis added). Thus, the Residents do not receive payments from the MCO Defendants and, therefore, do not have a protectable property interest in them. Plaintiffs erected a straw man by arguing that the Residents have a due process right to receive the medical benefits for which they qualify under Medicaid.[11] (*See* Dkt. 41 at pp. 30–31 & 33.) Yet, the Complaint alleges that the Residents have been approved for and are receiving Medicaid benefits, so the Residents have not been denied anything. (Dkt. 1 at pp. 7–29, ¶¶ 10, 10(a)–(*ll*).) Rather, the core issue is the alleged failure by the MCO Defendants to pay claims in purported violation of the Payment Procedures Statute, which requires the MCO Defendants to reimburse *the LTC Facilities* for appropriate

---

[11]    Plaintiffs' conclusory allegations that the Residents failed to receive "supportive living and/or nursing facility services" from the MCO Defendants and are "at risk of being discharged from their facilities," (Dkt. 1 at 36, ¶¶ 14-16), does not establish a deprivation of a protectable property interest. (*See* Resp. at 31-32.) Such vague and "naked assertions" with no factual support are plainly insufficient to state a claim. *See Santana*, 779 F. Supp. 2d at 835-37. Plaintiffs do not allege that any Residents they purportedly represent were actually denied any particular services or discharged from a facility.

claims. *See* 42 U.S.C. § 1396u-2(f); 42 C.F.R. § 438.106(b)(2). Accordingly, Plaintiffs' attempt to make an end run around this element fails.

Second, even if the Residents did have a protectable property interest in the LTC Facilities' timely receipt of payment from the MCO Defendants, Plaintiffs' vague allegation that the MCO Defendants delayed certain payments, (Dkt. 1 p. 7, ¶ 10 & pp. 36, 44–45, ¶¶ 14, 60–64), does not plausibly allege the deprivation of such an interest. As multiple courts in this circuit have held, "there are, of course, unavoidable delays which take place in the payment of money," some of which may be "de minimis" and "certainly not significant enough for a hearing to be required" to comport with due process. *E.g.*, *Evans v. City of Chicago*, 522 F. Supp. 789, 797 (N.D. Ill. 1980); *see also Wilke v. Stublaski*, No. 14-cv-639-wmc, 2016 WL 6998688, at *3, 5 (W.D. Wis. Nov. 30, 2016) (dismissing due process claim based on delayed proceedings where plaintiff failed to allege facts as to "the length of the delay" and the specific defendant's "role in the delay").

Finally, Plaintiffs allege that the Residents are "entitled to a hearing when such benefits are denied to them," but Plaintiffs fail to allege what hearing they claim was due. (*See* Dkt. 1 at p. 44, ¶ 62.) Importantly, the applicable Medicaid regulations set forth comprehensive requirements for notices to enrollees relating to benefit determinations and appeals of benefit determinations, including internal appeals with the MCO and state fair hearings where the enrollee can have an administrative hearing. *See* 42 C.F.R. §§ 438.400 *et seq.* Plaintiffs certainly do not allege *any* facts related to any notices received or not received, any internal appeals

39

pursued, or any state fair hearings as provided for under the Medicaid regulations. Plaintiffs' conclusory and insufficient allegations are another reason why Count Six should be dismissed. *See*, *e.g.*, *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 944 (7th Cir. 2010) (dismissing procedural due process claim where plaintiff alleged "neither that it availed itself of state post-deprivation remedies, nor that the available remedies are inadequate").

### B. Plaintiffs Fail to State a Claim Under the Rehabilitation Act (Count Five).

To state a claim under Section 504 of the Rehabilitation Act, a plaintiff must allege he or she was: (1) an individual with a disability; (2) qualified to participate in the program in question; and (3) either excluded from participating in or denied the benefits of the program based on his disability. *Novak v. Board of Trustees of Southern Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015). Bare bones allegations will not suffice. *See*, *e.g.*, *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 749–750 (4th Cir. Dec. 6, 2018) (affirming dismissal of Title II and Rehabilitation Act claims against the state Medicaid agency on behalf of a nursing home relating to the denial of a resident's Medicaid application).

The Fourth Circuit's December 2018 decision in *Wicomico Nursing Home* is applicable here. In *Wicomico Nursing Home*, the plaintiff nursing homes, acting as authorized representatives of their residents (and represented by the same law firm as in this case), brought Title II and Rehabilitation Act claims against the state Medicaid agency relating to the alleged improper denial of the residents' Medicaid applications. *See Wicomico Nursing Home*, 910 F.3d at 744–745. The district court

dismissed the case on immunity grounds, which the Fourth Circuit affirmed. *Id.* at 746–748. In addition, the Fourth Circuit affirmed the dismissal on the alternative basis that the complaint failed to allege any facts to support the Title II and Rehabilitation Act claims, including that the residents were disabled or that they were discriminated against due to their disability. *Id.* at 749–751. As elaborated below, like *Wicomico Nursing Home,* this Court should affirm the dismissal of this case on the same grounds.

### 1.   *Plaintiffs Do Not Adequately Allege That The Residents Are Qualified Individuals With Disabilities.*

Plaintiffs' Complaint is devoid of any facts demonstrating that the Residents are qualified individuals with a disability, who are defined by the Rehabilitation Act as individuals who "(i) [have] a physical . . . impairment which substantially limits one or more of [their] major life activities, (ii) [have] a record of such an impairment, or (iii) [are] regarded as having such an impairment." 29 U.S.C. § 706(8)(B); *see also Yates v. John Marshall Law Sch.*, No. 08-C-4127, 2009 WL 1309516, at *5 (N.D. Ill. May 11, 2009); *Carter v. Carson*, 241 F. Supp. 3d 191, 196 (D.D.C. 2017) (because "disability" is a term of art, the court dismissed claims where the plaintiff did not specify any major life activity that is impacted by his various ailments).

Instead, Plaintiffs allege, at most, physical or mental ailments for certain Residents, but do not allege how such ailments limit those Residents' major life activities. (*See* Dkt. 1 at pp. 7–28, ¶¶ 10(a)-(*ll*).) For example, Plaintiffs allege that one Resident suffers from "major depressive disorder, among other severe medical conditions" but do not identify how that affects any of his major life activities. (Dkt.

41

1 ¶ 10(t).) For other Residents, Plaintiffs allege solely that they suffer from "severe medical conditions" without any more detail. (*See, e.g.*, Dkt. 1 at pp. 15–17, ¶¶ 10(o), (q), (r).) These bare-boned assertions and formulaic recitations of this element are insufficient to demonstrate that the Residents are indeed qualified individuals with a disability as defined by the Rehabilitation Act. *See Wicomico Nursing Home*, 910 F.3d at 749–751.

### 2.     *Plaintiffs Fail to Allege That The Residents Were Excluded From Participation In Or Denied Benefits Of The Medicaid Program.*

Plaintiffs' claim under the Rehabilitation Act also fails because Plaintiffs do not allege the Residents were "excluded from participation in," "denied the benefits of," or "subjected to discrimination" under the Medicaid program. *See* 29 U.S.C. § 294(a); *see also Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 690 (5th Cir. 2017) (Rehabilitation Act claim fails where plaintiff did not allege that the defendant excluded him from any education benefit). To the contrary, Plaintiffs allege that the Residents are currently residing at, and receiving services from, one of the LTC Facilities. (*See* Dkt. 1 at pp. 7–29, ¶¶ 10(a)–(*ll*).) Accordingly, on the face of Plaintiffs' Complaint, the Residents have not been denied benefits or services under the Medicaid program and Plaintiffs' Section 504 claim fails.

Nor do Plaintiffs' hypothetical allegations that the purported untimely payment of claims places the Residents "at risk of being discharged from the supportive living and/or nursing home facility" and "jeopardizes their health, safety, and well-being," (Dkt. 1 at p. 37, ¶ 16), save their Section 504 claim because those allegations are pure conjecture devoid of any factual support. Moreover, allegations of potential

future harm are not actionable under the Rehabilitation Act. *See*, *e.g.*, *Dertz v. City of Chicago*, No. 94 C 542, 1997 WL 85169, at *14 (N.D. Ill. Feb. 24, 1997) (allegations that the City might refile charges to terminate police officer was insufficient to support claim under the Rehabilitation Act).

### 3. *Plaintiffs Do Not Allege That The Residents Were Denied Benefits Solely By Reason Of Their Purported Disabilities.*

Finally, Plaintiffs alleged no facts showing that the Residents were denied Medicaid benefits "solely by reason of" their disability. Claims under Section 504 are only actionable if a plaintiff was denied benefits "solely by reason of" his disability. *See* 29 U.S.C. § 794(a). "The word solely provides the key: the discrimination must result from the handicap and from the handicap alone." *Mallet v. Wisconsin Div. of Vocational Rehab.*, 130 F.3d 1245, 1257 (7th Cir. 1997). The "by reason of disability" language requires a showing of "but for" causation. *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 752 (7th Cir. 2006).

Here, Plaintiffs fail to allege that the MCO Defendants would have timely paid the LTC Facilities' claims but for the Residents' purported disabilities. Rather, Plaintiffs merely make conclusory statements that the MCO Defendants' alleged failure to timely pay benefits constitutes unlawful discrimination under the Rehabilitation Act. (*See*, *e.g.*, Dkt. 1 at pp. 43–44, ¶¶ 56-57.) These conclusory allegations do not demonstrate that the MCO Defendants' alleged failure to timely pay the LTC Facilities' claims was "solely by reason of" the Residents' purported disabilities. Accordingly, Plaintiffs fail to state a claim under Section 504 of the

Rehabilitation Act and the District Court's dismissal of Count Five should be affirmed on this alternative basis.[12]

### C. Plaintiffs Also Fail to State a Title II Claim (Count Four).

Like the Rehabilitation Act claim, Plaintiffs' claim under Title II of the ADA is also fatally flawed. To state a claim under Title II, a plaintiff must allege that he or she (1) is an individual with a disability, (2) is qualified for the benefits sought, (3) was denied those benefits because of his or her disability, and (4) the defendant is a public entity. *Naperville Smart Meter Awareness v. City of Naperville*, 69 F. Supp. 3d 830, 843 (N.D. Ill. 2014) (citations omitted). Title II also requires Plaintiffs to plead facts establishing that they were "excluded" from "participating in" or otherwise "denied" the "benefits of the services, programs, or activities of a public entity." *Sheehan*, 135 S. Ct. at 1773. In addition, Title II "requires the plaintiff to show that, 'but for' his disability, he would have been able to access the services or benefits desired." *Wisconsin Cmty. Servs., Inc.*, 465 F.3d at 752.

---

[12]    In the District Court, Plaintiffs attempted to avoid the "but for" causation element by citing *Washington v. Indiana High School Athletic Association, Inc.,* 181 F.3d 840 (7th Cir. 1999), and arguing that the MCO Defendants' conduct "created a disparate impact on disabled Plaintiffs" and that the MCO Defendants refused to make a reasonable accommodation. (Dkt. 41 at p. 36.) However, this Court has held that "but for" causation is necessary in a Rehabilitation Act claim even under the "reasonable accommodation" analysis in *Washington. See Wisc. Community Servs., Inc.*, 465 F.3d a 748 (7th Cir. 2006); *see also A.H. Holzmueller v. Illinois High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018).

### 1. *Plaintiffs Fail to Plead Any Facts Demonstrating that the Residents Were Denied Services By Reason of Their Disability.*

Here, the Complaint fails to allege a single fact identifying any service, program, or activity that the Residents were denied as a result of the MCO Defendants' alleged failure to timely make claims payments. To the contrary, Plaintiffs allege that the Residents received care and the only thing at issue is an unspecified "outstanding balance" due to the LTC Facilities for each Resident. (*See* Dkt. 1 at pp. 7–29, ¶¶ 10 & 10(a)–(*ll*).) Further, the mere "risk" of the Residents' potential discharge at a future date based on the MCO Defendants' alleged untimely payments is speculative and insufficient to establish a potential claim. *See Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1073-74 (C.D. Ill. 2016) ("'[A]llegations of possible future injury are not sufficient.'") (quoting *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013)). Significantly, Plaintiffs' Complaint contains no factual allegations that plausibly demonstrate how, but for the Residents' disabilities, the MCO Defendants would have timely paid the LTC Facilities' claims for services rendered to the Residents. Instead, they offer mere threadbare recitals of the elements for Title II. (*See* Dkt. 1 at p. 43, ¶ 51.) As such, Plaintiffs' Title II claim falls well short of federal pleading requirements for a discrimination claim.

### 2.     *The MCO Defendants Are Not "Public Entities."*[13]

"Only public entities are subject to potential liability under Title II." *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1773 (2015). A "public entity" is defined as "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). "[T]he term 'instrumentality of the state' refers to governmental units or units created by them." *Maxwell v. S. Bend Work Release Ctr.*, 787 F. Supp. 2d 819, 822 (N.D. Ind. 2011) (quoting *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010)) (internal quotations omitted); *see also Green v. City of New York*, 465 F.3d 65, 79 (2d Cir. 2006) (an "instrumentality of the State" under Title II must be "a creature of the municipality or state whose ends it serves").

In this case, all of the MCO Defendants are private companies (with the exception of CountyCare) that contract with DHFS to provide healthcare services to Illinois citizens that are eligible for Medicaid. (Dkt. 1 at p. 35, ¶ 4.) Under these facts, the MCO Defendants (with the exception of CountyCare) are not "public entities." *See Maxwell*, 787 F. Supp. 2d at 822 (finding that a private corporation that contracts with and employs prisoners from a unit of the Indiana Department of Corrections is not a public entity); *Edison*, 604 F.3d at 1310 ("Even where such a private entity contracts with a government to perform a traditional and essential government function, it remains a private company, not a public entity."); *Green*, 465 F.3d at 79 ("A private hospital performing services pursuant to a contract with

---

[13]     CountyCare does not join this subsection.

a municipality, even if it does so according to the municipality's rules and under its direction, is not a creature of any governmental entity."); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1293 (11th Cir. 2005) (a hospice in receipt of federal funds is not a public entity); *Cox v. Jackson*, 579 F. Supp. 2d 831, 852 (E.D. Mich. 2008) ("A private contractor does not become a 'public entity' under Title II merely b[y] contracting with a governmental entity to provide governmental services.").

In the District Court, Plaintiffs improperly attached State MCO Contracts to their response brief and cited certain provisions therein to argue that the MCO Defendants are "public entities" because they are required to "abide by all federal and State laws," including the ADA, and must "reasonably accommodate Enrollees and ensure that the programs and services are accessible . . . to an individual with disabilities as they are to an individual without disabilities." (Dkt. 41 & 41-2, 41-3 & 41-4.) Those contract provisions, however, reflect the *state's* obligation (which is a "public entity" under Title II of the ADA) to ensure its contractors comply with the ADA. *See, e.g.*, 28 C.F.R. Pt. 35, App. B ("[T]itle II applies to anything a public entity does . . . . All governmental activities of public entities are covered, even if they are carried out by contractors. For example, a State is obligated by [T]itle II to ensure that the services, programs, and activities of a State park inn operated under contract by a private entity are in compliance with [T]itle II's requirements."); *Castle v. Eurofresh, Inc.,* 731 F.3d 901, 910 & n. 15 (9th Cir. 2013) (a state is "obligated to ensure that [the private company]—like all other State contractors—complies with federal laws prohibiting discrimination on the basis of

47

disability"). The state's oversight obligation does not render the MCO Defendants "public entities" for purposes of Title II of the ADA. *See*, *e.g.*, *Wilkins-Jones v. Cty. of Alameda*, 859 F. Supp. 2d 1039, 1046–48 (N.D. Cal. 2012) (although public entities can be responsible for ADA violations by contracted companies, a private company does not become a "public entity" because of that contract). Accordingly, Plaintiffs' claim under Title II of the ADA fails and affirming the dismissal is proper on this alternative ground.

### D.   Plaintiffs' Claims for Declaratory and Injunctive Relief (Counts One and Seven) Likewise Fail.

Declaratory judgments and permanent injunctions are not claims; they are remedies that require an underlying cause of action. *See*, *e.g.*, *Elward v. Electrolux Home Prod., Inc.*, 214 F. Supp. 3d 701, 708 (N.D. Ill. 2016) ("[T]he Declaratory Judgment Act does not create an independent cause of action. It provides only an additional form of relief . . . . Similarly, [a]n injunction is a type of remedy, as distinct from an underlying claim for relief.") (quoting *Onyango v. Downtown Entm't, LLC*, 525 F. App'x 458, 460 (7th Cir. 2013) and *Morris v. Mfrs. Life Ins. Co.*, No. EV 95-142-CH/H, 1997 WL 534156, at *10 (S.D. Ind. Aug. 6, 1997)). Here, Plaintiffs do not have a valid underlying cause of action and, thus, do not have a basis to assert Counts One and Seven.

Moreover, even if any of Plaintiffs' underlying counts were somehow able to survive, a plaintiff must plead facts sufficient to show a reasonable risk of a recurring violation in the future and cannot rely merely upon past alleged harms. *See Sierakowski v. Ryan*, 223 F.3d 440, 443 (7th Cir. 2000) (affirming dismissal of

48

injunction claim on the grounds that past exposure to unconstitutional practices does not show a present case or controversy sufficient to confer standing regarding injunctive relief because any prospects of future injury were purely speculative); *see also Nelson v. Miller*, 570 F.3d 868, 882 (7th Cir. 2009) (cessation of challenged behavior moots a claim for injunctive relief unless plaintiff pleads sufficient facts to show "some cognizable danger of recurrent violation, something more than the mere possibility"); *Feit v. Ward*, 886 F.2d 848, 857 (7th Cir. 1989) (affirming dismissal of declaratory relief action where conduct occurred in the past and where plaintiff was no longer impacted by defendant's actions).

Plaintiffs have not alleged a single fact suggesting that any of the MCO Defendants will fail to timely pay claims in the future. Indeed, any alleged harm from past denials or delays in payment of Medicaid claims can be remedied by an action at law (brought by a proper plaintiff) and for damages, rendering injunctive and declaratory relief improper and unnecessary. To be sure, prospective relief *cannot be granted* against Aetna, Cigna and Humana because those defendants are no longer Medicaid MCOs in Illinois, effective January 1, 2018. (*See* Dkt. 29 at p. 8.)

Finally, an injunction is an equitable remedy warranted only when the plaintiff has no adequate remedy at law, such as monetary damages. *Boucher v. Sch. Bd. of Sch. Dist. of Greenfield*, 134 F.3d 821, 823 (7th Cir. 1998) ("An injunction is an equitable remedy warranted only when the plaintiff has no adequate remedy at law, such as monetary damages."); *see also Simic v. City of Chi.*, 851 F.3d 734, 738–39 (7th Cir. 2017) (denying plaintiff's claims for declaratory relief and injunctive relief

for failure to show real and immediate threat of future injury). The gravamen of Plaintiffs' complaint is the alleged failure to pay money for services. By the very nature of Plaintiffs' allegations, it is clear they have an adequate remedy at law— *i.e.*, money damages. Accordingly, the dismissal of Counts One and Seven is proper on these alternative grounds.

## CONCLUSION

The District Court properly held that Plaintiffs lack standing pursuant to the plain language of Section 435.923. When the Complaint is washed of its conclusory allegations, this case is, if anything, a routine dispute over the payment of healthcare claims where the real parties in interest are neither the Residents nor the Plaintiffs who claim to be their authorized representatives. This Court should thus affirm the District Court's dismissal of the Complaint with prejudice because Plaintiffs lack standing to bring the claims asserted. Alternatively, this Court should affirm the District Court's dismissal because Plaintiffs have not and cannot allege claims pursuant to Section 1983, Section 504 of the Rehabilitation Act, Title II of the ADA, or for declaratory and injunctive relief.

Dated: April 8, 2019                    Respectfully submitted,

AETNA BETTER HEALTH INC. D/B/A AETNA BETTER HEALTH OF ILLINOIS; CIGNA CORP.; COMMUNITY CARE ALLIANCE OF ILLINOIS, L3C; COOK COUNTY HEALTH & HOSPITALS SYSTEM D/B/A COUNTYCARE HEALTH PLAN; HEALTH CARE SERVICE CORPORATION D/B/A BLUE CROSS AND BLUE SHIELD OF ILLINOIS; HUMANA INC.; ILLINICARE HEALTH PLAN, INC.; MERIDIAN HEALTH PLAN OF ILLINOIS, INC.; MOLINA HEALTHCARE OF ILLINOIS, INC.;

NEXTLEVEL HEALTH PARTNERS, INC., AND,
HARMONY HEALTH PLAN, INC.

By: /s/ Steven D. Hamilton

Edwin E. Brooks
Steven D. Hamilton
MCGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
312-849-8100
ebrooks@mcguirewoods.com
shamilton@mcguirewoods.com
*Attorneys for Aetna Better Health Inc. d/b/a
Aetna Better Health of Illinois; Community
Care Alliance of Illinois, L3C; Health Care
Service Corporation d/b/a Blue Cross and
Blue Shield of Illinois; IlliniCare Health
Plan, Inc.; Meridian Health Plan of Illinois,
Inc.; NextLevel Health Partners, Inc., and
Harmony Health Plan, Inc.*

By: /s/ Christopher MacNeil Murphy

Christopher MacNeil Murphy
Daniel Ray Campbell
Krista Marie Pikus
MCDERMOTT WILL & EMERY LLP
444 West Lake Street Suite 4000
Chicago, IL 60606-0029
(312) 372-2000
cmurphy@mwe.com
dcampbell@mwe.com
kpikus@mwe.com
*Attorneys for Cigna Corp.*

By: /s/ Paul Castiglione

Paul Castiglione
Prathima Yeddanapudi
COOK COUNTY STATES' ATTORNEYS OFFICE
Assistant State's Attorney
Civil Rights Litigation
500 Richard J. Daley Center

51

Chicago, IL 60602
(312) 603-5967
paul.castiglione@cookcountyil.gov
prathima.yeddanapudi@cookcountyil.gov
*Attorneys for Cook County Health &*
*Hospitals System d/b/a CountyCare Health*
*Plan*

By:/s/ Kirstin B. Ives.

Kirstin Beth Ives
FALKENBERG IVES LLP
30 N. LaSalle St.
Suite 4020
Chicago, IL 60602
312-566-4803
kbi@falkenbergives.com
maz@falkenbergives.com
*Attorneys for Humana Inc.*

By: /s/ Michael Resis

Molly Anne Arranz
Michael Resis
SMITH AMUNDSEN, LLC
150 North Michigan Avenue
Suite 3300
Chicago, IL 60601
(312) 894-3200
marranz@salawus.com
mresis@salawus.com

Michael D. Roth
BOIES SCHILLER FLEXNER LLP
725 South Figueroa Street, 31st Floor
Los Angeles, CA 90017
(213) 629-9040
mroth@bsfllp.com
*Attorneys for Molina Healthcare of Illinois,*
*Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(a)(7)</u>

I hereby certify that this document complies with the type-volume limit of

Federal Rule of Appellate Procedure 32(a)(7) and Circuit Rule 32(c) because,

excluding the parts of the document exempted by Fed. R. App. P. 32(f), this

document contains 13,476 words.  This document further complies with the typeface

and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) & (6)

and Circuit Rule 32(b) because this document uses Century 12 point font for the

body of the brief and 11 point font for footnotes.

> /s/ Steven D. Hamilton
> Steven D. Hamilton
> MCGUIREWOODS LLP
> 77 West Wacker Drive, Suite 4100
> Chicago, IL 60601
> 312-849-8100
> shamilton@mcguirewoods.com

53

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Steven D. Hamilton
Steven D. Hamilton
McGuireWoods LLP

*Attorneys for Defendants-Appellees Aetna Better Health Inc. d/b/a Aetna Better Health of Illinois; Community Care Alliance of Illinois, L3C; Health Care Service Corporation d/b/a Blue Cross and Blue Shield of Illinois; IlliniCare Health Plan, Inc.; Meridian Health Plan of Illinois, Inc.; NextLevel Health Partners, Inc., and Harmony Health Plan, Inc.*

114367546_6