No. 18-3076

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| APERION CARE, INC.; BRIA HEALTH SERVICES, LLC; EVEREST CARE GROUP, LLC; GRAND LIFESTYLES, LLC; ICARE FINANCIAL SERVICES, INC.; ITEX CO., INC.; LEGACY HEALTHCARE FINANCIAL SERVICES, LLC; MAESTRO CONSULTING SERVICES, LLC; and VILLA FINANCIAL SERVICES, LLC; | ) Appeal from the<br>) United States<br>) District Court for<br>) the Northern<br>) District of Illinois,<br>) Eastern Division<br>) |
| Plaintiffs-Appellants, | ) |
| v. | ) |
| | ) No. 1:17-cv-08920 |
| THERESA EAGLESON; AETNA BETTER HEALTH, INC.; COOK COUNTY, ILLINOIS; COOK COUNTY HEALTH & HOSPITALS SYSTEM; COUNTYCARE HEALTH PLAN; CIGNA CORPORATION; MOLINA HEALTHCARE OF ILLINOIS, INC.; HUMANA HEALTH PLAN, INC.; MERIDIAN HEALTH PLAN; COMMUNITY CARE ALLIANCE OF ILLINOIS, L3C; HARMONY HEALTH PLAN, INC.; HEALTHCARE SERVICE CORP.; ILLINICARE HEALTH PLAN, INC.; and NEXTLEVEL HEALTH PARTNERS, INC.; | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) The Honorable<br>) CHARLES R.<br>) NORGLE, SR., |
| Defendants-Appellees. | ) Judge Presiding. |

**BRIEF OF STATE DEFENDANT-APPELLEE THERESA EAGLESON**

**SARAH A. HUNGER**
Assistant Attorney General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-7122
shunger@atg.state.il.us

**KWAME RAOUL**
Attorney General
State of Illinois

100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-3312

Attorney for Theresa Eagleson

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT.................................................................. 1

ISSUES PRESENTED FOR REVIEW ........................................................... 4

STATEMENT OF THE CASE ......................................................................... 5

     A.     The Medicaid Act and Managed Care Programs. ...................................... 5

     B.     The Federal Action.......................................................................... 9

     C.     The Dismissal Motions. .................................................................. 11

     D.     The Dismissal Order. ...................................................................... 13

SUMMARY OF ARGUMENT ...................................................................... 15

ARGUMENT .................................................................................................. 17

I.     The Standard of Review Is *De Novo*. ................................................... 17

II.    The District Court Correctly Determined that the Representatives
      Were Not Authorized To Bring Suit on Behalf of the Residents. ..................... 17

     A.     Section 435.923 Does Not Authorize the Representatives To Bring a
          Civil Action on Behalf of the Residents. ................................................. 19

     B.     The Complaint Did Not Sufficiently Allege Authorization. .................... 31

     C.     Plaintiffs Lack Article III Standing. ......................................................... 33

III.   Plaintiffs' § 1983 and ADA Claims Against Eagleson Are Barred by the
      Eleventh Amendment. ...................................................................... 36

IV.   Plaintiffs Failed To State a Claim Against Eagleson. ........................................ 41

CONCLUSION ................................................................................................ 46

i

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Abraham Lincoln Mem'l Hosp. v. Sebelius*,
  698 F.3d 536 (7th Cir. 2012) ................................................................ 5

*Allen v. Wright*,
  468 U.S. 737 (1984) ............................................................................ 20

*Amundson v. Wisconsin Dep't of Health Servs.*,
  721 F.3d 871 (7th Cir. 2013) .................................................... 35, 37, 38

*Banks v. Secretary of Ind. Family & Soc. Servs. Admin*,
  997 F.2d 231 (7th Cir. 1993) .................................................... 35, 42, 44

*Bensman v. U.S. Forest Serv.*,
  408 F.3d 945 (7th Cir. 2005) .............................................................. 21

*Bertrand ex rel. Bertrand v. Maram*,
  495 F.3d 452 (7th Cir. 2007) .............................................................. 42

*BT Bourbonnais Care, LLC v. Norwood*,
  866 F.3d 815 (7th Cir. 2017) ........................................................ 37, 41

*Brown v. Budz*,
  398 F.3d 904 (7th Cir. 2005) .............................................................. 37

*CommuniCare, LLC v. Dungey*,
  No. 2:17-CV-934, 2018 WL 1762445 (S.D. Ohio Apr. 12, 2018) .......... 33

*Conn. Nat'l Bank v. Germain*,
  503 U.S. 249 (1992) ............................................................................ 22

*Council 31 of AFSCME, AFL-CIO v. Quinn*,
  680 F.3d 875 (7th Cir. 2012) ........................................................ 17, 36

*Deveraux v. City of Chi.*,
  14 F.3d 328 (7th Cir. 1994) ................................................................ 45

*Doctors Nursing Rehab v. Norwood*,
  No. 1:16-cv-9837, 2017 WL 2461544 (N.D. Ill. June 7, 2017) ............ 29

*Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*,
  515 F.3d 718 (7th Cir. 2008) .............................................................. 38

*Edelman v. Jordan*,
    415 U.S. 651 (1974) ........................................................................ 16, 39

*Ex parte Young*,
    209 U.S. 123 (1908) ............................................................................... 36

*Exelon Generation Co., LLC v. Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO*,
    676 F.3d 566 (7th Cir. 2012) ..................................................... 22, 25, 27

*Family & Children's Ctr., Inc. v. Sch. City of Mishawaka*,
    13 F.3d 1052 (7th Cir. 1994) ................................................................. 20

*Forgue v. City of Chicago*,
    873 F.3d 962 (7th Cir. 2017) ................................................................. 44

*Fund Democracy, LLC v. S.E.C.*,
    278 F.3d 21 (D.C. Cir. 2002) ................................................................ 21

*G&S Holdings LLC v. Continental Cas. Co.*,
    697 F.3d 534 (7th Cir. 2012) ................................................................. 20

*Gross v. Town of Cicero*,
    619 F.3d 697 (7th Cir. 2010) ................................................................. 18

*Hart v. Sheahan*,
    396 F.3d 887 (7th Cir. 2005) ................................................................. 32

*Haythe v. Dep't of Med. Assistance Servs.*,
    No. CL 17-322 (Va. Cir. Nov. 1, 2017) ................................................. 29

*Hernandez v. Cook County Sheriff's Office*,
    634 F.3d 906 (7th Cir. 2011) ................................................................. 17

*Hollingsworth v. Perry*,
    570 U.S. 693 (2013) ............................................................................... 36

*Holly Hill Nursing LLC v. Padilla*, No. 8:17-CV-03554-PWG,
    2018 WL 5013826 (D. Md. Oct. 16, 2018) ........................................... 40

*Illinois Council on Long Term Care v. Bradley*,
    957 F.2d 305 (7th Cir. 1992) ................................................................... 6

*In re Davis*,
    194 F.3d 570 (5th Cir. 1999) ................................................................. 21

*Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin.*,
    603 F.3d 365 (7th Cir. 2010) ................................................................... 2

*Keller v. United States*,
   657 F.3d 675 (7th Cir. 2011)...................................................................... 1, 2

*Kobe v. Haley*,
   666 F. App'x 281 (4th Cir. 2016) ............................................................ 38

*Kowalski v. Tesmer*,
   543 U.S. 125 (2004) .................................................................................. 19

*Kroll v. Bd. of Trs. of Univ. of Ill.*,
   934 F.2d 904 (7th Cir. 1991)..................................................................... 37

*Krazlic v. Republic Title Co.*,
   314 F.3d 875 (7th Cir. 2002)..................................................................... 26

*Kubiak v. City of Chi.*,
   810 F.3d 476 (7th Cir. 2016)..................................................................... 17

*Lexmark International, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ............................................................................. 19, 22

*Matter of Lifeschultz Fast Freight Corp.*,
   63 F.3d 621 (7th Cir. 1995)....................................................................... 26

*McCauley v. City of Chi.*,
   671 F.3d 611 (7th Cir. 2011)..................................................................... 44

*McDonough Assocs., Inc. v. Grunloh*,
   722 F.3d 1043 (7th Cir. 2013)............................................................. 39, 41

*MCI Telecomms. Corp. v. Ill. Bell Tel. Co.*,
   222 F.3d 323 (7th Cir. 2000)..................................................................... 36

*Med. Assur. Co. v. Hellman*,
   610 F.3d 371 (7th Cir. 2010)..................................................................... 45

*Mercado v. Dart*,
   604 F.3d 360 (7th Cir. 2010)....................................................................... 2

*Midwest Emergency Assocs.-Elgin Ltd. v. Harmony Health Plan of Ill., Inc.*,
   888 N.E.2d 694 (Ill. App. 2008) ......................................................... 6, 7, 8

*Milliken v. Bradley*,
   433 U.S. 267 (1977) .................................................................................. 40

*MSA Realty Corp. v. Illinois*,
   990 F.2d 288 (7th Cir. 1993)............................................................... 39, 41

*Nielen-Thomas v. Concorde Investment Servs., LLC*,
  914 F.3d 524 (7th Cir. 2019)..................................... 24

*Radaszewski v. Maram*,
  383 F.3d 599 (7th Cir. 2004)..................................... 38

*Rawoof v. Texor Petroleum Co., Inc.*,
  521 F.3d 750 (7th Cir. 2008)..................................... 20

*Red Ball Leasing, Inc. v. Hartford Acc. & Indem. Co.*,
  915 F.2d 306 (7th Cir. 1990)..................................... 25

*Santiago v. Walls*,
  599 F.3d 749 (7th Cir. 2010)..................................... 17

*Schlaf v. Safeguard Property, LLC*,
  899 F.3d 459 (7th Cir. 2018)..................................... 26

*Sonnleitner v. York*,
  304 F.3d 704 (7th Cir. 2002)..................................... 38, 39

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ........................................... 33, 34

*State of N.Y. v. Cedar Park Concrete Corp.*,
  665 F. Supp. 238 (S.D.N.Y. 1987)................................. 20

*Tiggs v. Ohio Dep't of Job & Family Servs.*,
  2018-Ohio-3164 .................................................. 29

*Trs. of Chi. Painters & Decorators Pension, Health & Welfare, & Deferred Sav. Plan Tr. Funds v. Royal Int'l*, 493 F.3d 782 (7th Cir. 2007)...................... 19

*U.S. Nat'l Bank of Or. v. Independent Ins. Agents*,
  508 U.S. 439 (1993) .............................................. 26

*United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*,
  783 F.3d 607 (7th Cir. 2015).................................... 17, 19, 22

*United States v. Georgia*,
  546 U.S. 151 (2006) .............................................. 38

*Wagoner v. Lemmon*,
  778 F.3d 586(7th Cir. 2015)...................................... 43

*Warth v. Seldin*,
  422 U.S. 490 (1975) .............................................. 20

*Wicomico Nursing Home v. Padilla,*
   910 F.3d 739 (4th Cir. 2018) ........................................................................ 34, 41

*Wis. Dep't of Corrs. v. Schacht,*
   524 U.S. 381 (1998) .......................................................................................... 2

*Wojtas v. Capital Guardian Trust Co.,*
   477 F.3d 924 (7th Cir. 2007) ........................................................................... 18

**Statutes and Regulations**

28 U.S.C. § 1291 .................................................................................................. 3

28 U.S.C. § 1331 .................................................................................................. 2

28 U.S.C. § 2107(a) .............................................................................................. 3

28 U.S.C. § 2201 ............................................................................................. 2, 11

29 U.S.C. § 794 *et seq.* ......................................................................................... 2

42 C.F.R. § 430.0 .............................................................................................. 5, 6

42 C.F.R. § 430.10 ................................................................................................ 6

42 C.F.R. § 430.12(b) ........................................................................................... 6

42 C.F.R. § 438.66 ................................................................................................ 7

42 C.F.R. § 438.106 .......................................................................................... 8, 35

42 C.F.R. § 438.68 ................................................................................................ 7

42 C.F.R. § 435.923 ...................................................................................... *passim*

42 C.F.R. § 435.930 .................................................................................. 11, 42, 43

42 C.F.R. § 438.402(c) ........................................................................................ 30

42 C.F.R. § 438.408 ............................................................................................ 30

42 C.F.R. § 447.45(d)(4) ....................................................................................... 8

42 U.S.C. § 1302(a) ............................................................................................ 26

42 U.S.C. § 1396a(a) *et seq.* ............................................................................... 2, 6

42 U.S.C. § 1396a(a)(8) ................................................................................. *passim*

42 U.S.C. § 1396a(a)(10) ......................................................................... *passim*

42 U.S.C. § 1396a(37)(A)................................................................... 8, 43

42 U.S.C. § 1396u-2(f) ................................................................................ 8

42 U.S.C. § 1396d(a)(4)(A)...................................................... 11, 42, 43

42 U.S.C. § 1983 ................................................................................ *passim*

42 U.S.C. § 12131 *et seq.* ........................................................................ 2

215 ILCS 5/368a ......................................................................................... 8

305 ILCS 5/5-5.01a ................................................................................... 7

305 ILCS 5/5-30.1 ............................................................................... 6, 8

Title 42 C.F.R. 42 Ch. IV, SubCh. C, Pt. 435, Subpt. J ................. 26

## Rules

Circuit Rule 28(b) ..................................................................................... 1

Fed. R. App. P. 4(a)(1)(A) ....................................................................... 3

Fed. R. App. P. 43(c) ................................................................................ 1

Fed. R. Civ. P. 12(b) ..................................................................... *passim*

Fed. R. Civ. P. 17 ................................................................................... 20

## Other Authorities

13A Fed. Prac. & Proc. Juris. § 3531.9.6 (3d ed.) ......................... 31

Medicaid & Children's Health Insurance Programs,
    78 Fed. Reg. 42,174 (July 15, 2013) .................................. 13, 27, 28, 32

## JURISDICTIONAL STATEMENT

The jurisdictional statement of Plaintiffs-Appellants Bria Health Services, LLC; Everest Care Group, LLC; Grand Lifestyles, LLC; Icare Financial Services, Inc.; Itex Company, Inc.; Legacy Healthcare Financial Services, LLC; Maestro Consulting Services, LLC; and Villa Financial Services, LLC is not complete and correct.[1]  State Defendant-Appellee Theresa Eagleson[2] provides this jurisdictional statement as required by Circuit Rule 28(b).

On December 12, 2017, Plaintiffs—a group of financial consultants to medical service providers ("Representatives") purporting to act on behalf of Medicaid beneficiaries who reside in supportive living or skilled nursing facilities ("Residents")—filed a complaint in the district court against Defendants-Appellees Eagleson; Aetna Better Health Inc.; Cook County, Illinois; Cook County Health and Hospitals System; CountyCare Health Plan; Cigna Corporation; Molina Healthcare of Illinois, Inc.; Humana Health Plan, Inc.; Community Care Alliance of Illinois, L3C; Harmony Health Plan, Inc.; Health Care Service Corporation; IlliniCare Health Plan, Inc.; Meridian Health Plan, Inc.; and NextLevel Health Partners, Inc.  *See* Doc. 1.[3]

---

[1]  Aperion Care, Inc. is no longer a party to this action.  *See* Doc. 66.

[2]  Theresa Eagleson succeeded Norwood as Director of the Illinois Department of Healthcare and Family Services and should therefore be substituted as a Defendant-Appellee under Federal Rule of Appellate Procedure 43(c).

[3]  References to the district court's docket are identified by the docket number and the page number.  The Brief of Plaintiffs-Appellants is cited as "App. Br. at ___."  Many of the exhibits attached to that brief contain documents that do not appear to have been filed in the district court.  *See, e.g.*, Exs. 2, 4, 5 at 50-57, 6.  Accordingly, those documents should not be considered by this Court.  *See Keller v. United States*, 657 F.3d 675, 679 n.2 (7th Cir. 2011) (noting that this Court "generally decline[s] to

Plaintiffs brought claims under the Declaratory Judgment Act, 28 U.S.C. § 2201, and 42 U.S.C. § 1983, alleging violations of the Medicaid Act, 42 U.S.C. § 1396a(a) *et seq.*; its implementing regulations; and the Fourteenth Amendment to the United States Constitution.  Doc. 1 at 38-42, 44-45.  They also alleged violations of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*  Doc. 1 at 42-44.

As detailed below, *see infra* Section II.C, the district court lacked jurisdiction over these claims because Plaintiffs failed to establish Article III standing.  Moreover, to the extent that the Eleventh Amendment to the United States Constitution affects a court's subject matter jurisdiction, the district court lacked federal question jurisdiction over Plaintiffs' § 1983 and ADA claims.  *See infra* Section III; *Wis. Dep't of Corrs. v. Schacht*, 524 U.S. 381, 391 (1998) (Supreme Court has "not decided" whether "Eleventh Amendment immunity is a matter of subject-matter jurisdiction").  *Compare Mercado v. Dart*, 604 F.3d 360, 361 (7th Cir. 2010) ("[T]he eleventh amendment limits the jurisdiction of federal courts."), *with Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010) ("The Eleventh Amendment is unusual in that it does not strictly involve subject matter jurisdiction.").  Otherwise, the district court had jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331.

---

supplement the record with materials that were not before the district court") (internal quotation marks omitted).

On August 28, 2018, the district court granted Defendants' motions to dismiss the action under Federal Rule of Civil Procedure 12(b)(1), thereby disposing of all claims against all parties.  *See* Doc. 69.  A separate judgment was entered on the district court's docket under Rule 58 that same day.  *See* Doc. 70.  No post-judgment motions were filed.

On September 27, 2018, Plaintiffs filed a timely notice of appeal within 30 days of the entry of judgment.  *See* Doc. 71; 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A).  This Court has jurisdiction over the appeal from a final judgment pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1.      Whether the district court properly dismissed the complaint for lack of standing, where the Representatives did not have authority to bring this action on the Residents' behalf under 42 C.F.R. § 435.923, and where Plaintiffs have not alleged an injury-in-fact under Article III.

2.      Whether dismissal was proper, where Plaintiffs' § 1983 and ADA claims against Eagleson were barred by the Eleventh Amendment.

3.      Whether the district court properly dismissed the complaint, where Plaintiffs failed to state a claim against Eagleson on which relief may be granted.

## STATEMENT OF THE CASE

In 2017, Plaintiffs brought a federal civil rights action to recoup the "significant outstanding balance[s]" that Defendants allegedly owe to the service providers treating long-term care residents who are also Medicaid beneficiaries.  Doc. 1 at 8-29.  Rather than proceed against Defendants directly, the Representatives purported to bring this action on behalf of the Residents under 42 C.F.R. § 435.923.  By styling it in this way, Plaintiffs seek access to the rights and remedies available under § 1983, as well as the ADA and the Rehabilitation Act.  The district court rejected this approach and dismissed this action, concluding that § 435.923—which allows an authorized representative to participate on an applicant or beneficiary's behalf in agency proceedings—does not also permit the representative to pursue federal civil rights litigation over a service provider's payment dispute under a State plan.  *See* Doc. 69.  A full description of this procedural history, as well as the relevant federal and state statutory schemes, follows.

### A.    The Medicaid Act and Managed Care Programs.

The Medicaid Act is a "cooperative federal-state program that provides federal funding for state medical services to the poor."  *Abraham Lincoln Mem'l Hosp. v. Sebelius*, 698 F.3d 536, 543 (7th Cir. 2012) (internal quotation marks omitted).  Medicaid is jointly financed, but administered by the States.  *Id.* (citing 42 C.F.R. § 430.0).  Once a State elects to participate in Medicaid, "it must comply with the requirements imposed by the Medicaid Act and regulations promulgated by the Secretary."  *Id.*  To that end, participating States "must submit a State plan, i.e., a

Medicaid Plan, to [the U.S. Centers for Medicare and Medicaid Services ("CMS")] describing the nature and scope of its Medicaid program and affirming that it will be administered in conformity with [the Medicaid Act's] requirements." *Id.* (citing 42 U.S.C. § 1396a(a); 42 C.F.R. §§ 430.10 and 430.12(b)).

As relevant here, a State plan must "provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8). It must also ensure that medical assistance is made available to all eligible recipients. *Id.* § 1396a(a)(10)(A).

So long as their plans comply with the broad statutory requirements, the States have "wide latitude in designing and administering state Medicaid programs," including whether to implement a fee-for-service program, a managed care program, or both. *Midwest Emergency Assocs.-Elgin Ltd. v. Harmony Health Plan of Ill., Inc.*, 888 N.E.2d 694, 696 (Ill. App. 2008); *see also* 42 C.F.R. § 430.0. In traditional fee-for-service programs, the State "enters into direct provider plan agreements with healthcare service providers," and providers are reimbursed by the State at a predetermined rate. *Midwest Emergency Assocs.*, 888 N.E.2d at 696; *see also Illinois Council on Long Term Care v. Bradley*, 957 F.2d 305, 307-08 (7th Cir. 1992) (describing payment procedures for long-term care in Illinois).

In managed care programs, by contrast, the State enters into agreements with managed care organizations and pays them "on a capitated basis"—a flat fee per patient per month. 305 ILCS 5/5-30.1(a). Providers then seek reimbursement from

6

the managed care organizations.  *Id.* 5/5-30.1(g).  Although Illinois offers both types

of programs, at issue here are managed care programs for supportive living and

skilled nursing facilities.  *See* Doc. 1 at 34-37; 305 ILCS 5/5-5.01a (supportive living

facilities program).

A defining feature of a managed care program is its structure.  States contract

with managed care organizations, which, in turn, "establish provider networks

through private contracts with healthcare providers."  *Midwest Emergency Assocs.*,

888 N.E.2d at 697.  Medicaid beneficiaries who enroll in these programs are then

"required to utilize healthcare providers within their MCO networks."  *Id.*  Under

these programs, the States, managed care organizations, and service providers each

assume different statutory and regulatory responsibilities.

States, for instance, must have a monitoring system in effect to oversee "all

aspects of the managed care program, including the performance of each [managed

care organization] in" administration, management, appeal and grievance systems,

claims management, and availability and accessibility of services, among others.  42

C.F.R. § 438.66.  States must also develop and enforce "network adequacy

standards," such as time and distance standards for primary care, hospital, and

pharmacy providers.  *Id.* §§ 438.68(a), (b)(1).

Furthermore, the agency that administers the state plan "must permit

applicants and beneficiaries to designate an individual or organization to act

responsibly on their behalf in assisting with the individual's application and renewal

of eligibility and other ongoing communications with the agency."  *Id.*

§ 435.923(a)(1). Applicants and beneficiaries may authorize their representatives to "(1) Sign an application on the applicant's behalf; (2) Complete and submit a renewal form; (3) Receive copies of the applicant or beneficiary's notices and other communications from the agency; and (4) Act on behalf of the applicant or beneficiary in all other matters with the agency." *Id.* § 435.923(b).

Managed care organizations must "agree to comply with all rules and regulations governing the Medicaid program." *Midwest Emergency Associates-Elgin Ltd.*, 888 N.E.2d at 696. With respect to payment, they are required to "pay a claim within 30 days of receiving [it]." 305 ILCS § 5/5-30.1(g)(1); *see also* 215 ILCS 5/368a. Indeed, contracts between managed care organizations and providers "shall provide that the organization shall make payment to health care providers for items and services which are subject to the contract . . . on a timely basis consistent with the claims payment procedures described in section 1396(a)(37)(A)" unless they "agree to an alternate payment schedule." 42 U.S.C. § 1396u-2(f); *see* 42 U.S.C. 1396a(a)(37)(A) (requiring payment of 90% of claims within 30 days of receipt and 99% of claims within 90 days of receipt); 42 C.F.R. § 447.45(d)(4) (outlining 12-month processing period for non-clean claims and all other claims). These contracts must also ensure that "its Medicaid enrollees are not liable" for covered services provided to the enrollee but for which the State has not paid the managed care organization. 42 C.F.R. § 438.106.

### B.     The Federal Action.

Plaintiffs filed an action in the district court, alleging that Defendants violated the Medicaid Act, its implementing regulations, the ADA, the Rehabilitation Act, and the Fourteenth Amendment. *See* Doc. 1. The Representatives, who are named as plaintiffs in this action, are third-party entities "provid[ing] financial and business consulting services to [ ] network[s] of skilled nursing home facilities in Illinois." *Id.* at 5-7. For instance, Bria Health Services, LLC, provides consulting services to the Bria network, which is comprised of "skilled nursing home facilities in Illinois" that offer long-term care to disabled, insolvent residents. *Id.* at 5.

The Representatives seek to act as authorized representatives of the Residents—Medicaid beneficiaries receiving care in the networks of supportive living or skilled nursing facilities discussed above, but whose claims for services have not been paid by Defendants. *Id.* at 7. As one example, Winnie Boykin, a resident who was admitted to a Bria network skilled nursing facility in 2013, submitted claims to Defendant Meridian Health. *Id.* at 8. Because Meridian Health "has failed to provide to Boykin timely payment" for these services, Boykin maintains a "significant outstanding balance owed to Bria." *Id.*

Plaintiffs rely on 42 C.F.R. § 435.923 as support for this authorized representative relationship, alleging that "[f]ederal law requires state agencies to permit applicants and beneficiaries to designate an individual or organization to act responsibly on their behalf in assisting with the individual's application and renewal of eligibility and other ongoing communications with the state agency responsible for

issuing determinations on Medicaid eligibility." *Id.* at 1 n.1. Plaintiffs do not make any allegations about the scope of the authorizations here or the nature of their relationship with the Residents. *Id.*

Defendants include both public and private entities. Defendant Eagleson, sued in her official capacity, is the Director of the Illinois Department of Healthcare and Family Services. *Id.* at 32. The Department is responsible for providing Medicaid to Illinois residents. *Id.* at 4. Defendants also include various managed care organizations in Illinois that contract with supportive living and skilled nursing home facilities to provide Medicaid benefits to the residents of these facilities who receive long-term care Medicaid benefits (collectively, "Managed Care Organizations"). *Id.* at 29-31. Two of these organizations—Cook County Health and Hospitals Systems and CountyCare Health Plan—are agencies of Defendant Cook County (collectively, "Cook County Defendants"). *Id.* at 30.

Plaintiffs allege that Defendants violated their rights based on the following facts. The Department contracts with the Managed Care Organizations "to provide health care services for the patients who qualify for Medicaid" in Illinois. *Id.* at 35. The Department and the Managed Care Organizations "jointly acted and/or conspired against Plaintiffs by failing to comply with the Federal Medicaid Act with respect to submitting to Plaintiffs Medicaid benefits for which they are eligible . . . and are approved to receive." *Id.* Specifically, the Managed Care Organizations "have failed to reimburse" the Residents "within the time periods mandated by federal law." *Id.* at 36. As a result of this "failure to comply" with the applicable

laws, the Residents "have been unable to pay for their room, board, care and services." *Id.* at 37.  This failure "places the [residents] at risk of being discharged from the supportive living and/or nursing home facilit[ies]." *Id.*  According to Plaintiffs, all alleged actions of the Managed Care Organizations are imputed to the Department. *Id.* at 35.

Plaintiffs raise seven causes of action against Defendants, all of which center on their alleged failure to timely reimburse the providers for the Residents' services:

(1)     Declaratory judgment claim under 28 U.S.C. § 2201;

(2)     Section 1983 claim for violations of §§ 1396a(a)(10)(A) and 1396d(a)(4)(A) of the Medicaid Act;

(3)     Section 1983 claim for violations of § 1396a(a)(8) of the Medicaid Act and 42 C.F.R. § 435.930;

(4)     Discrimination claim under Title II of the ADA;

(5)     Discrimination claim under § 504 of the Rehabilitation Act;

(6)     Fourteenth Amendment claim; and

(7)     Temporary and permanent injunctive relief.

*Id.* at 38-46.  Plaintiffs seek compensatory and punitive damages, preliminary and permanent injunctive relief, and declaratory relief.  *Id.* at 46.

## C.     The Dismissal Motions.

Defendants moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6). *See* Docs. 27, 29, 35.  Eagleson made three independent arguments in her motion to dismiss.  *See* Doc. 35.  *First*, she asserted that the Representatives do not have the authority to bring an action to challenge payment of claims as an "authorized

representative" under 42 C.F.R. § 435.923.  Doc. 35 at 3.  Instead, the provision was intended "to codify the historical role played by authorized representatives in assisting applicants and beneficiaries in applying for and maintaining coverage or otherwise navigating the application and enrollment process."  *Id.* at 5.

*Second*, Eagleson contended that the Eleventh Amendment barred the claims against her in her official capacity because Plaintiffs sought monetary damages.  *Id.* at 6.  The Eleventh Amendment bar, Eagleson explained, also reaches those claims that nominally request injunctive or prospective relief.  Therefore, Plaintiffs could not "sidestep the Eleventh Amendment by framing their request for reimbursement of allegedly past-due balances as a prayer for prospective equitable relief."  *Id.* at 7.  *Third*, Eagleson argued that Plaintiffs failed to state a claim under Rule 12(b)(6).  *Id.* at 8.

The Managed Care Organizations also filed a motion to dismiss, contending first that Plaintiffs lacked standing to proceed under § 435.923 and Article III.  *See* Doc. 29 at 12, 16.  Alternatively, the Managed Care Organizations asserted that Plaintiffs did not sufficiently allege a valid authorization under § 435.923 and also failed to state a claim under Rule 12(b)(6).  *See id.* at 14, 17.  The Cook County Defendants adopted the arguments made by the Managed Care Organizations and asserted the alternative theory that the § 1983 claims were barred by the Illinois Tort Immunity Act.  *See* Doc. 27 at 1-5.  Plaintiffs opposed all of the motions, asserting primarily that they have standing to act as authorized representatives for the Residents and that they had stated claims under Rule 12(b)(6).  *See, e.g.*, Doc. 39 at 2;

12

Doc. 41 at 5. They also attached an authorization form, filed under seal, for one of the named Residents. *See* Doc. 39-1.

### D. The Dismissal Order.

The district court granted Defendants' motions to dismiss, concluding that 42 C.F.R. § 435.923 does not permit the Representatives to bring an action on behalf of the Residents for Defendants' failure to timely pay the facilities' claims. Doc. 69 at 3. It began its analysis with the regulatory text, which "limits the representation to the 'individual's application and renewal of eligibility and other ongoing communications with the agency.'" *Id.* (quoting 42 C.F.R. § 435.923(a)(1)). Plaintiffs' proposed interpretation, which would include a civil action over payment of claims, ran counter to that language. *Id.*

As further support for this conclusion, the court pointed to CMS's responses to the public comments for § 435.923, which showed that the regulation was "intended to narrowly permit 'authorized representative[s] to act on behalf of applicants and beneficiaries *in applying for and maintaining coverage*.'" *Id.* (quoting 78 Fed. Reg. at 42,174 (July 15, 2013)) (emphasis included in order). The court reasoned that "[i]t is plain from the public comments that the intent and purpose of authorization under § 435.923 was to aid Medicaid beneficiaries in matters pertaining to the application, enrollment, renewal and communications processes." *Id.*

In sum, the district court determined that the Representatives "lack standing as authorized representatives of the Residents—Medicaid beneficiaries that receive

services from healthcare providers without liability to the costs—to bring this

lawsuit." *Id*. at 4.  Plaintiffs appealed.  *See* Doc. 71.

## SUMMARY OF ARGUMENT

Plaintiffs ask this Court to hold that § 435.923—a federal regulation allowing a Medicaid beneficiary the assistance of an authorized representative when applying for and renewing benefits with the state agency—also confers authority on these representatives to take extra-agency actions, including pursuing a civil suit. What's more, they would have this Court extend that broad principle to encompass the circumstances here: a federal civil rights action brought by financial consultants on behalf of Medicaid beneficiaries to resolve a payment dispute between the service providers and the Managed Care Organizations. When faced with this same request, the district court rejected it and dismissed the case with prejudice. That decision was correct for four, independent reasons.

To begin, § 435.923 does not authorize the Representatives to bring this action on behalf of the Residents. The grant of authority in that regulation is limited to the intra-agency matters expressly identified in its text and reaffirmed by the context and history of its enactment. And even if § 435.923 supplied the authority that the Representatives seek, they have not alleged or otherwise established that their representative capacity extends to a civil action seeking reimbursement for delayed payments to the service providers. The dismissal order should also be upheld because Plaintiffs lack Article III standing. In particular, they fail to allege an injury in fact. The Residents are approved Medicaid beneficiaries and are presently receiving medical care. Moreover, the Residents cannot, as a matter of federal law, be held liable for any delayed payments to the service providers.

15

Alternatively, Plaintiffs' § 1983 and ADA claims against Eagleson are barred by the Eleventh Amendment because they do not seek prospective relief to remedy an ongoing violation of federal law. Instead, they are requesting reimbursement for medical services rendered. As the Supreme Court recognized in *Edelman v. Jordan*, 415 U.S. 651 (1974), the key data point is not the form of the relief requested, but rather its effect. And here, any injunction that a court could order against Eagleson would include as a primary remedy payments from the state treasury to satisfy a private debt.

Finally, Plaintiffs failed to state a claim against Eagleson on which relief may be granted. The § 1983 claims for medical assistance and reasonable promptness are insufficient because the Residents have all received favorable eligibility determinations and are currently receiving care. They are not awaiting a decision on Medicaid applications, nor are they lacking access to the medical treatment that they need. As to the ADA and Rehabilitation Act claims, Plaintiffs failed to allege that the purported denial of benefits was by reason of their disabilities. On the procedural due process claim, they do not identify a property interest or explain how Eagleson has deprived them of it.

## ARGUMENT

### I.     The Standard of Review Is *De Novo*.

This Court reviews *de novo* a district court's order granting a motion to dismiss for lack of standing, whether "constitutional, statutory, or prudential in form." *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 615 (7th Cir. 2015). It also reviews *de novo* a dismissal order on Eleventh Amendment grounds and for failure to state a claim under Rule 12(b)(6). *See Kubiak v. City of Chi.*, 810 F.3d 476, 480 (7th Cir. 2016) (failure to state a claim); *Council 31 of AFSCME, AFL-CIO v. Quinn*, 680 F.3d 875, 881 (7th Cir. 2012) (Eleventh Amendment). On *de novo* review, this Court applies the same legal and procedural standards as the district court in deciding whether to dismiss, *see Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010), and may affirm the dismissal on any ground supported by the record and law, *see Hernandez v. Cook County Sheriff's Office*, 634 F.3d 906, 912 (7th Cir. 2011). For the reasons outlined below, the district court's dismissal order may be upheld under either Rule 12(b)(1) or 12(b)(6).

### II.     The District Court Correctly Determined that the Representatives Were Not Authorized To Bring Suit on Behalf of the Residents.

The crux of Plaintiffs' complaint is that Defendants violated the Residents' rights by making delayed payments to the supportive living and skilled nursing facilities where the Residents are receiving treatment. These service providers, however, are not parties to this action. Nor do the Residents bring any claims on

their own behalves.[4]  Instead, a group of financial and business consultants to the *service providers* seeks to litigate these payment disputes on behalf of the *Residents* under 42 C.F.R. § 435.923.

But this regulation—which authorizes an applicant or beneficiary to designate an authorized representative for his or her dealings with the agency—does not apply here.  As the district court rightly concluded, § 435.923 contemplates assistance with eligibility and renewal determinations, not third-party payment disputes in federal court.  Plaintiffs' arguments to the contrary are not persuasive; they ignore the text of the regulation, the public comments, and the alleged relationship between the Residents and the Representatives here.  Moreover, neither the Residents nor the Representatives have alleged any harm sufficient to satisfy Article III standing.

---

[4]  On appeal, Plaintiffs do not challenge the district court's determination that the action was brought by the Representatives on behalf of the Residents, and not by the Residents themselves.  *See* App. Br. at 1 (issue presented); Doc. 69 at 2.  To the contrary, they state:  "Plaintiffs-Appellants by and through their respective authorized representatives file their opening brief in support of standing for their respective Authorized Representatives to sue on their behalf."  App. Br. at ii.  This approach is consistent with the caption of the complaint and the position Plaintiffs asserted below.  *See* Doc. 1 at 1; Doc. 39 at 2; Doc. 41 at 5.  Accordingly, any argument that the Residents brought claims on their own behalves has been waived and forfeited.  *See Gross v. Town of Cicero*, 619 F.3d 697, 704-05 (7th Cir. 2010); *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007).

Indeed, the Representatives have not even alleged a violation of their own statutory or constitutional rights.  This Court should uphold the dismissal order.

### A.     Section 435.923 Does Not Authorize The Representatives To Bring a Civil Action on Behalf of the Residents.

The district court correctly determined that § 435.923 did not confer standing or other authority on the Representatives to bring this action on behalf of the Residents.  *See* Doc. 69 at 4.  "The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance."  *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004).  In addition to constitutional limits on standing, a plaintiff must satisfy principles of statutory standing.  *See All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d at 615.

In *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), the Supreme Court collapsed the non-constitutional standing inquiries into the zone of interests test.  Under that standard, "a statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked."  *Id.* at 129 (internal quotation marks omitted).  This standard, however, does not perfectly align with the circumstances here, where the Representatives rely on a procedural regulation rather than a substantive statute to establish standing.  In fact, they do not even identify the statutes underlying their causes of action in their opening brief on appeal.  As such, any statutory standing theories based on those statutes have been forfeited.  *See Trs. of Chi. Painters & Decorators Pension, Health & Welfare, & Deferred Sav. Plan Tr. Funds v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782, 790 (7th Cir. 2007).

19

For these reasons, other principles may better guide the analysis of Plaintiffs' novel theory. For instance, this Court should take into account the "'general prohibition on a litigant's raising another person's legal rights.'" *Family & Children's Ctr., Inc. v. Sch. City of Mishawaka*, 13 F.3d 1052, 1059 (7th Cir. 1994) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Also relevant is the fact that Congress may override these limitations by statute and authorize access to federal courts "'on the basis of the legal rights and interests of others.'" *Id.* at 160 (quoting *Warth v. Seldin*, 422 U.S. 490, 500-01 (1975)).

A corollary to these principles is codified in Rule 17(a), "a procedural rule requiring that the complaint be brought in the name of the party to whom that claim belongs or the party who according to the governing substantive law, is entitled to enforce the right." *Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 756 (7th Cir. 2008) (internal quotation marks omitted). Although Rule 17(a)'s requirements "should not be confused with the jurisdictional doctrine of standing . . . [,] [s]ome courts have described Rule 17's real-party-in-interest requirement as essentially a codification of this nonconstitutional, prudential limitation on standing." *Id.* at 756-57; *see also G&S Holdings LLC v. Continental Cas. Co.*, 697 F.3d 534, 541 (7th Cir. 2012). Rule 17 identifies several exceptions to its general rule, including that a party may bring actions on behalf of individuals they represent when that representation is "authorized by statute." Fed. R. Civ. P. 17(a)(1)(G); *see also State of N.Y. v. Cedar Park Concrete Corp.*, 665 F. Supp. 238, 241 (S.D.N.Y. 1987) ("Under Rule 17(a), a party may sue on behalf of one it represents as long as the relevant underlying

20

federal and state statutes authorize such a suit.").  Regardless of the analytic framework applied, the end result is the same—the Representatives cannot bring this claim on behalf of the Residents under § 435.923.

As a threshold matter, Plaintiffs fail to identify any *statute* that would allow the Representatives to litigate on behalf of the Residents.  *See, e.g.*, *In re Davis*, 194 F.3d 570, 578 (5th Cir. 1999) ("Thus, an entity is the real party in interest when it is statutorily authorized to bring suit to enforce a claim.").  Instead, they rely exclusively on § 435.923, a federal regulation, *see* App. Br. at 6, without explaining how it could confer statutory standing or real-party-in-interest status in federal court.

As a general matter, whether and to what extent a party can participate in agency proceedings does not control their ability to do the same in Article III courts. This Court has referenced these principles in the context of constitutional standing, explaining that "'participation in agency proceedings is alone insufficient to satisfy judicial standing requirements.'"  *Bensman v. U.S. Forest Serv.*, 408 F.3d 945, 953 (7th Cir. 2005) (quoting *Fund Democracy, LLC v. S.E.C.*, 278 F.3d 21, 27 (D.C. Cir. 2002)).  This is so because agencies, which "are not constrained by Article III, . . . may permit persons to intervene in the agency proceedings who would not have standing to seek judicial review of the agency action."  *Id.* (internal quotation marks omitted).  In other words, participation in agency proceedings and proceeding as a proper party in federal court are distinct concepts.  Section 435.923 relates to the former, as even Plaintiffs implicitly acknowledge in their opening brief.  *See* App. Br.

at 11 (describing § 435.923 as a provision that "commands *agencies* to allow for representation of a person seeking assistance by another") (emphasis added).

Even assuming a regulation could confer statutory standing or real-party-in-interest status, the district court rightly concluded that by its terms the authorized representative designation in § 435.923 does not extend to representation in civil litigation. *See* Doc. 69 at 3. To determine whether a plaintiff falls within the class of persons authorized to bring an action, courts "apply traditional principles of statutory interpretation." *Lexmark Int'l, Inc.*, 572 U.S. at 128; *see also Exelon Generation Co., LLC v. Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO*, 676 F.3d 566, 570 (7th Cir. 2012) ("The same rules of construction apply to administrative rules as to statutes."). "The 'cardinal canon' of statutory interpretation is that [courts] look first to the text." *All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d at 622 (7th Cir. 2015) (quoting *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253 (1992)). When the regulation's meaning is unambiguous, the "inquiry starts and stops at the text." *Id.* "When it is ambiguous, however, it is necessary to resort to other interpretive methods, such as analysis of the rulemaking record." *Exelon Generation Co.*, 676 F.3d at 570.

***Regulatory Text.*** Here, the text of § 435.923 unambiguously limits the scope of the authorized representative designation to intra-agency matters. *See* Doc. 69 at 3. Section 435.923 addresses its scope in two different provisions, both of which refer only to intra-agency processes, with no indication that it would extend to suits brought in federal court. The first, § 435.923(a)(1), addresses this issue from the

state agency perspective.  It provides that the agency "must permit applicants and beneficiaries to designate an individual or organization to act responsibly on their behalf in assisting with the individual's application and renewal of eligibility and other ongoing communications with the agency."  42 C.F.R. § 435.923(a)(1).  The plain meaning of these terms indicates that a state agency must allow an authorized representative to assist the applicant or beneficiary at the agency level, a conclusion that even Plaintiff does not dispute.  *See* App. Br. at 1, 7, 11 (focusing on (b)(4)).

Section 435.923(b) differs slightly in that it addresses the authority that the applicant or beneficiary may delegate to the authorized representative.  As with subpart (a)(1), each of the four designations in (b) refers to interactions with the agency for purposes of eligibility and application.  First, an authorized representative may "[sign] an application on the applicant's behalf."  42 C.F.R. § 435.923(b)(1).  Signed applications are submitted to the agency or its designee, not a court.  Second, the representative may "[c]omplete and submit a renewal form," another process that occurs at the agency level.  *Id.* § 435.923(b)(2).  Third, the representative may "[r]eceive copies of the applicant or beneficiary's notices and other communications from the agency."  *Id.* § 435.923(b)(3).  This too, involves only the agency, as any communications or notices *from* the agency would necessarily occur at the agency level.  Fourth, a representative may "[a]ct on behalf of the applicant or beneficiary in all other matters with the agency."  *Id.* § 435.923(b)(4).

Like the other subparts, (b)(4) limits the representative's authority to intra-agency matters by what it includes and excludes from its terms.  For instance,

although it specifically refers to the agency, it does not mention any other entity or process. This language is consistent with the prior three subparts and (a)(1), all of which expressly identify intra-agency tasks. Furthermore, as a practical matter, the scope of an applicant's delegation of authority to the representative cannot exceed the scope of the authority that the state agency allows the applicant to confer. In other words, the "catchall" language in (b)(4) is necessarily limited by the terms of (a)(1) or a state-law analog. And in Illinois, the Department has not expanded the authorized representative authority beyond what is listed in § 435.923(a)(1).

Construing (b)(4) to apply only to intra-agency matters also gives meaning to the modifier "with the agency." Had CMS intended to include civil litigation within the scope of a representative's authority, it could have concluded (b)(4) at the phrase "all other matters." *See Nielen-Thomas v. Concorde Investment Servs., LLC*, 914 F.3d 524, 528 (7th Cir. 2019) (observing that courts must "if possible, give effect to every clause and word of a statute, taking care not to read words into the text or to treat any words as surplusage") (internal quotation marks omitted). But it did not, and that choice demonstrates that CMS intended to limit the scope of representation under § 435.923 to intra-agency matters.

Plaintiffs disagree, asserting on appeal that the phrase "all other matters with the agency" includes the pursuit of legal action "to enforce their rights to prompt payment." App. Br. at 7. But this interpretation would insert two concepts into the regulation that are not reflected in its text: civil litigation and payment of claims. This suit is not merely a natural extension of the agency procedures for applying for

benefits covered in subparts (a)(1) and (b)(1)-(3).  Rather, it is a separate civil rights action brought in federal court.  And that civil action, moreover, concerns payment of claims made to a service provider, not a Resident.  Accepting Plaintiffs' interpretation would have the additional effect of allowing providers or other entities to pursue their own monetary interests in federal civil rights actions.  Plaintiffs' attempt to expand the scope of a representative's authority from matters relating to a Resident's eligibility for benefits to litigating a claim for nonpayment to a service provider finds no support in (b)(4)'s text.

*Context.*  In addition, as the district court rightly noted, Plaintiffs' interpretation does not align with the other subparts of § 435.923:  "Reading (b)(4) in light of the (a) and (b)'s specific references to the application and renewal of benefits and ongoing communications with the agency does not support Plaintiffs' broad interpretation."  Doc. 69 at 3.  In fact, there is not a single example in § 435.923 that relates to a task performed outside of the agency or, as is relevant here, in a federal court.  *See Red Ball Leasing, Inc. v. Hartford Acc. & Indem. Co.*, 915 F.2d 306, 312 n.6 (7th Cir. 1990) ("the 'ejusdem generis rule' is, that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned").

All of these details are relevant because "[i]n regulatory and statutory construction, . . . context is critical."  *Exelon Generation Co., LLC*, 676 F.3d at 572.

Accordingly, courts should not "'be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.'" *Matter of Lifschultz Fast Freight Corp.*, 63 F.3d 621, (7th Cir. 1995) (quoting *U.S. Nat'l Bank of Or. v. Independent Ins. Agents*, 508 U.S. 439 (1993)). To that end, it is significant that § 435.923 is codified as a regulation, which typically governs what occurs at the agency level. Indeed, the implementing statute focuses on the administrative functions at the agency level, instructing the Secretary of Health and Human Services to "make and publish such rules and regulations . . . as may be necessary to the efficient administration of the functions with which each is charged." 42 U.S.C. § 1302(a).

Also relevant to a contextual analysis is the fact that § 435.923 is situated within the "Redeterminations of Medicaid Eligibility" section of the "Eligibility in the States and District of Columbia" subpart of the Code. *See* Title 42, Chapter IV, Subchapter C, Part 435, Subpart J. This subpart involves eligibility determinations made by state agencies and does not implicate federal actions. *Id.*; *see Schlaf v. Safeguard Prop., LLC*, 899 F.3d 459, 465 (7th Cir. 2018) ("We must interpret the plain language of the statute in light of its placement in the overall text of the statute."). Finally, as the district court noted, the other subparts of the provision itself describe administrative tasks performed at the agency level. Doc. 69 at 3. In short, here, the "context *reinforces* the implications of the statutory language." *Krzalic v. Republic Title Co.*, 314 F.3d 875, 880 (7th Cir. 2002).

***Public Comments.***  Moving outside of the regulation itself, CMS's statement of intent, as well as its responses to the public comments, provide additional support for this conclusion.  *See Exelon Generation Co.*, 676 F.3d at 574 (reviewing public comments and responses).  As the district court reasoned, "[i]t is plain from the public comments that the intent and purpose of authorization under § 435.923 was to aid Medicaid beneficiaries in matters pertaining to the application, enrollment, renewal and communications processes."  Doc. 69 at 3.

In its statement describing the intent of the rule, CMS focused on federalizing the "current state policy and practice" on "the definition, designation, and responsibilities of 'authorized representatives' to act on behalf of applicants and beneficiaries in applying for and maintaining coverage."  Medicaid & Children's Health Insurance Programs, 78 Fed. Reg. 42,174 (July 15, 2013) (to be codified at 42 C.F.R. § 435.923).  This historical role, as CMS described it, was to provide "valuable support to individuals needing help navigating the application and enrollment process, as well as ongoing communications with the agency, particularly to seniors and individuals with disabilities, and we expect their role to continue."  *Id.*  CMS thus "proposed to define the term 'authorized representative' as an individual or organization that acts responsibly on behalf of an applicant or beneficiary in assisting with the individual's application and renewal of eligibility and other ongoing communications with the Medicaid or CHIP agency."  *Id.*  Thus, this statement of intent confirms the focus on assistance with applications, renewals, and other communications with the state agencies.

27

Plaintiffs, however, point to an exchange in the public comments where a "commenter asked for clarification on whether the scope of the authorization is defined by the beneficiary or applicant, or whether, once invoked, the representative assumes all of the duties named in the regulations, including 'all other matters' with either agency." *Id.* In response, CMS "clarif[ied] that the scope of the authorization is defined by the Medicaid applicant or beneficiary." *Id.* According to Plaintiffs, this response supports their position that the "statutory language gives broad deference to the Medicaid applicant regarding the authority he/she gives the Designated Authorized Representative." App. Br. at 4; *id.* at 8.

Plaintiffs' interpretation is unpersuasive; this comment does not stand for the proposition that the Medicaid applicant or beneficiary can confer *any* authority to the representative, irrespective of the textual limitations. Instead, it means that the applicant or beneficiary can choose how much authority to grant her representative within the scope of the regulatory text. For example, she could choose to authorize the representative to assist with her initial application, but not renewal, or the renewal, but not ongoing communications with the agency. This principle is illustrated by another response in the same document, where CMS clarified that "the permissions given to the authorized representative may be granted in part." 78 Fed. Reg. 42,174. In the end, Plaintiffs' broad interpretation finds no support in CMS's responses to public comments.

***Other Sources.*** On appeal, Plaintiffs also rely heavily on the decisions of other courts. *See* App. Br. at 6, 9-10, 14-15. These decisions are inapposite and do

28

not control here.  *See, e.g.*, *Doctors Nursing Rehab. v. Norwood*, No. 1:16-cv-9837, 2017 WL 2461544 (N.D. Ill. June 7, 2017) (federal action on eligibility claims); *Tiggs v. Ohio Dep't of Job & Family Servs.*, 2018-Ohio-3164, ¶¶ 25-27 (state action on a Medicaid eligibility claim); *Haythe v. Dep't of Med. Assistance Servs.*, No. CL 17-322 (Va. Cir. Nov. 1, 2017) (state action on Medicaid eligibility claim).  And to the extent that these decisions recognize standing to pursue federal litigation under § 435.923, they are incorrect for the reasons already discussed.

Plaintiffs focus in particular on *Doctors Nursing Rehabilitation*, a district court decision addressing the parameters of § 435.923 in dicta.  There, unlike here, the court determined that the individual residents were plaintiffs to the action, and thus the court did not need to reach the authorized representative question.  *Doctors Nursing Rehab.*, 2017 WL 2461544, at *3.  Nonetheless, the district court opined that § 435.923 was broad enough to include "additional steps, like litigation, to secure a beneficiary's rights, . . . [s]o long as the beneficiary gives express authorization to his or her representative."  *Id.* at *4.  Again for the reasons discussed, reading the regulation to include federal civil litigation does not comport with its text, context, or purpose.

In any event, this incorrect interpretation would not apply here because it was made in a case involving the defendant's alleged failure "to process Medicaid applications and provide Medicaid benefits with reasonable promptness."  *Id.* at *1.  Here, the complaint itself admits that the Residents are approved to receive care, and are actually receiving that care.  *See* Doc. 1 at 7-29 (describing Medicaid approval and

the care received); *id.* at 32 (defining the proposed class as "Residents/Medicaid beneficiaries residing at supportive living or skilled nursing facilities"); *id.* at 36, 39 (alleging failure to reimburse).

Finally, Plaintiffs contend that civil litigation must fall within the scope of § 435.923 because litigation is the inevitable result of a denial of benefits or of a grievance. *See* App. Br. at 12. This is untrue and irrelevant. This case does not arise from an agency decision to deny benefits to a Resident, nor have Plaintiffs pointed to any examples of representatives proceeding under § 435.923 in Illinois state court without power of attorney, guardianship, or the like. Moreover, as discussed, nothing in the text or context of § 435.923 supports the conclusion that the authorized representative status extends beyond intra-agency matters, whether in state court review of an administrative decision or in a federal civil rights action.

To support their grievances argument, Plaintiffs point to contractual provisions that would require managed care organizations to allow the residents "to designate authorized representatives to act on their behalf with respect to grievances against the [managed care organizations]." *Id.* at 13. These draft contracts—which were not part of the complaint and were not authenticated—are not relevant here because the designation of a representative for the grievance process is not governed by § 435.923. *See* 42 C.F.R. §§ 438.402(c), 408. This separate designation process thus has no bearing here.

In sum, the Representatives cannot proceed as authorized representatives for the Residents because that arrangement is beyond the scope of § 435.923 as

understood by its text, context, and comments preceding its enactment.  This Court

should affirm the district court's decision.[5]

### B.     The Complaint Did Not Sufficiently Allege Authorization.

Even if the Residents could authorize the Representatives to pursue this civil

action, dismissal was appropriate because they did not sufficiently allege that the

Residents conferred that authority.  The only discussion of this alleged representative

relationship in the complaint is an "Authorized Representative" designation in the

caption and the following sentence in a footnote:  "Federal law requires state

agencies to permit applicants and beneficiaries to designate an individual or

organization to act responsibly on their behalf in assisting with the individual's

application and renewal of eligibility and other ongoing communications with the

state agency responsible for issuing determinations of Medicaid eligibility."  Doc. 1 at

1 n.1.  This was not sufficient.  *See* 13A Fed. Prac. & Proc. Juris. § 3531.9.6 (3d ed.)

("a party cannot assume the role of representative simply by self-designation").

As explained, *see supra* II.A, each applicant or beneficiary must not only

designate the person or organization as a representative, but also the scope of that

representation.  Each authorized representative relationship is different, depending

on the needs and wants of the resident navigating the application and renewal

process.  And as the text of § 435.923 and the public comments make clear, there is

no fallback designation outlining the scope of the relationship should the parties fail

---

[5]  Plaintiffs have not sought leave to amend their complaint, either in response
to the motions to dismiss or on appeal.  *See* Docs. 39, 41; App. Br. at 15.  Therefore,
there is no reason to disturb the district court's dismissal with prejudice.

to establish it themselves. *See* 78 Fed. Reg. 42,174. Here, Plaintiffs failed to make any allegations describing the scope of the Representatives' authority.

There is also no indication that all of the Residents have signed designations allowing the pursuit of civil litigation over a payment dispute. To the contrary, both of the documents that Plaintiffs have set forth demonstrate that no such authorization exists. *See* Doc. 39-1 (attached in opposition to the motion to dismiss); App. Br. Ex. 4 (attached to appellate brief). As a threshold matter, these forms were not referenced by or incorporated into the complaint. The authorization form attached to their brief on appeal was not part of the record below, and thus should be disregarded. *See Hart v. Sheahan*, 396 F.3d 887, 894 (7th Cir. 2005).

In any event, neither document supports Plaintiffs' implicit claim of authorization to bring this action. In the form presented on appeal, for example, a resident specifically authorized representation in three situations: (1) "[i]nitiating an application for Medicaid benefits"; "[p]articipating in all reviews of my eligibility for Medicaid benefits"; and "[t]aking action as necessary to establish my eligibility for Medicaid." App. Br. Ex. 4. Separately, the authorization states: "I understand and agree that any legal proceedings in regards to my Medicaid eligibility may be pursued either in my name or in the name of the facility." *Id.* For the reasons discussed above, this statement oversteps the bounds of § 435.923. Moreover, it could not control here, in a case that does not relate to Medicaid eligibility; even the complaint alleges that the Residents "are approved to receive long-term care Medicaid benefits" and are actually receiving care at the Managed Care Organization

facilities. *Id.* In other words, the cited designation form does not authorize this action. *See, e.g.*, *CommuniCare, LLC v. Dungey*, No. 2:17-CV-934, 2018 WL 1762445, at *5 (S.D. Ohio Apr. 12, 2018) (holding that the forms at issue did not "authorize the nursing facilities to initiate this lawsuit" under § 435.923).

As a final matter, Plaintiffs indicate in their opening brief on appeal that they "believe[ ]" that "the other institutional Plaintiffs/Appellants have also received executed, documented authorization from their respective individual Plaintiff/Appellant residents/patients to represent them in all legal proceedings in obtaining the relief requested." App. Br. at 2. To the extent Plaintiffs have included individuals in this action without any actual authorization to do so, that would be improper. All told, given their failure to allege the contours of their representative relationship, and the lack of evidence that an authorization to sue for late payments actually exists, this Court should uphold the district court's dismissal of their claims.

## C.    Plaintiffs Lack Article III Standing.

The district court's dismissal order was also correct for the independent reason that Plaintiffs do not sufficiently allege an injury in fact. To establish Article III standing, "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To satisfy the injury in fact requirement, "the first and foremost of standing's three elements," the "plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual

or imminent, not conjectural or hypothetical." *Id.* at 1547-48 (internal quotation marks omitted). This includes "the risk of real harm." *Id.* at 1549.

Here, neither the Residents nor the Representatives meet this standard. To begin, the Residents have not alleged that they are suffering any harm as a result of the delayed payments. According to their own allegations, the Residents are individuals "approved to receive long-term care Medicaid benefits, who receive nursing facility services and/or supportive living services and/or medical care at a supportive living facility and/or nursing home facilities" through the Managed Care Organizations. Doc. 1 at 7; *see also id.* at 7-29 (describing Medicaid approval and the care received for each resident); *id.* at 32 (defining the proposed class as "Residents/Medicaid beneficiaries residing at supportive living or skilled nursing facilities"); *id.* at 41 ("By failing to pay for services rendered to persons eligible for and approved to receive Medicaid benefits, the Defendants have failed to comply with federal law"). The problem, as the complaint puts it, is that the "Defendant MCOs have not rendered payment for [the] approved benefits." *Id.* at 7; *see also id.* at 36, 39.

This alleged "fail[ure] to reimburse," *id.* at 36, does not harm the Residents, who are still receiving the necessary care and who are not required to make any payments for those services, *id.* at 7, 32; *see Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 747 (4th Cir. 2018) (nursing home residents "lack a legally cognizable interest" because they "are all now receiving Medicaid benefits"). In fact, the federal regulations expressly state that "Medicaid enrollees are not liable" for covered

services provided to the enrollee but for which the State has not paid the managed

care organization.  42 C.F.R. § 438.106; *see Banks v. Secretary of Ind. Family & Soc.*

*Servs. Admin*, 997 F.2d 231, 243 (7th Cir. 1993) ("a Medicaid provider is prohibited

from seeking payment from a Medicaid recipient of amounts not reimbursed by the

state program").  Nor do Medicaid payments ever pass through the beneficiary;

instead, they are paid directly to the providers.  Consistent with this authority, the

complaint does not allege that any resident has been prevented from receiving care as

a result of delayed payments.

Plaintiffs do not address Article III standing in their opening brief on appeal,

but separately assert that the "MCOs' failures to timely pay for the residents'

necessary medical care places the Plaintiffs/Appellants residents/Medicaid

beneficiaries at risk of being discharged from the supportive living and/or nursing

home facility where they receive medical care and nursing facility services, and

jeopardizes their health, safety, and well-being."  App. Br. at 3; *see also* Doc. 1 at 37.

But as discussed, federal law does not allow the Residents to be held liable for the

Managed Care Organizations' late payment to service providers.  And should a

resident be improperly held liable, "they can return to court" when their claims are

ripe.  *Amundson v. Wis. Dep't of Health Servs.*, 721 F.3d 871, 874 (7th Cir. 2013)

("Wisconsin maintains that it has safeguards in place that will prevent any plaintiff

from being transferred to an institution.  The complaint does not give a sufficient

reason to think that these will fail.").

The Representatives likewise have not alleged an injury. According to the complaint, the Representatives are "financial and business consulting services" to networks of skilled nursing home facilities. Doc. 1 at 5-7. They are not the service providers themselves, nor have they alleged any financial stake in the service providers' timely receipt of payments. *Id.* These relationships, as well as the alleged authorized representative status, are not sufficient to confer Article III standing. *See Hollingsworth v. Perry*, 570 U.S. 693, 711 (2013) (cannot establish "that mere authorization to represent a third party's interests is sufficient to confer Article III standing on private parties with no injury of their own"). This Court should affirm the district court's order.

## III. Plaintiffs' § 1983 and ADA Claims Against Eagleson Are Barred by the Eleventh Amendment.

The district court's dismissal of Plaintiffs' § 1983 and ADA claims against Eagleson should be upheld on the alternative ground that they are barred by the Eleventh Amendment. As a general matter, the Eleventh Amendment "bars federal jurisdiction over suits brought against a state." *MCI Telecomms. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 336 (7th Cir. 2000). But Eleventh Amendment immunity is not absolute, and it will not preclude an action if: (1) Congress abrogates a state's immunity; (2) the state consents to being sued in federal court; or (3) the action seeks prospective injunctive relief against state officials under the doctrine articulated in *Ex parte Young*, 209 U.S. 123 (1908). *See Council 31 of AFSCME, AFL-CIO*, 680

F.3d at 882.  At issue here is the third exception, as Plaintiffs bring their claims against Eagleson in her official capacity.[6]

Official-capacity claims "are deemed to be against the entity of which an officer is an agency."  *Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991) (internal quotation marks omitted).  "Accordingly, official-capacity suits for retrospective relief—i.e., money damages payable from the state treasury—generally implicate the eleventh amendment in the absence of a waiver by the state or a valid congressional override."  *Id.* at 907-08.  "Under an exception to the general rule, however, official-capacity actions may not be barred by the eleventh amendment insofar as they request prospective relief—i.e., an injunction or a declaratory judgment and monetary damages that are 'ancillary' to either."  *Id.* at 908.

Before the district court, Plaintiffs implicitly recognized that the abrogation and waiver exceptions do not apply to their § 1983 claims.  *See* Doc. 39 at 8-9 (relying on *Ex parte Young*).  This was correct.  *See BT Bourbonnais Care, LLC v. Norwood*, 866 F.3d 815, 823 (7th Cir. 2017); *Brown v. Budz*, 398 F.3d 904, 917-18 (7th Cir. 2005).  And although they pointed to waiver for the Rehabilitation Act claim, they did not assert waiver or abrogation for the ADA claims.  Doc. 39 at 10-11; *see Amundson*, 721 F.3d at 872-73 (states waive immunity for Rehabilitation Act claims as condition of receiving federal funds).  Instead, Plaintiffs relied solely on the *Ex parte Young*

---

[6]  Plaintiffs do not pursue claims against the Department.  *See, e.g.*, Doc. 1 at 3; Doc. 39 at 1.  In any event, § 1983 and ADA claims against the Department would be barred by the Eleventh Amendment because the abrogation and waiver exceptions do not apply, for the same reasons discussed in this section.

exception for their ADA claims, asserting that they sought only "prospective injunctive relief against state officials."  Doc. 39 at 11; *see Radaszewski v. Maram*, 383 F.3d 599, 606 (7th Cir. 2004) (recognizing "the right of a private plaintiff to assert an ADA claim for injunctive relief against a state official" in the context of a Title II action seeking Medicaid benefits).  Where "defendants have clearly raised the shield of Eleventh Amendment immunity," plaintiffs must "respond to their arguments."  *Sonnleitner v. York*, 304 F.3d 704, 717 (7th Cir. 2002).  Therefore, any abrogation or waiver argument as to the ADA claims was forfeited, *see Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 720 (7th Cir. 2008), and this Court has "no basis to conclude that either Congress has abrogated [the state's] Eleventh Amendment immunity or that the state . . . has authorized this lawsuit through an act of waiver or consent," *Sonnleitner*, 304 F.3d at 717.[7]

---

[7]  Whether Congress validly abrogated the States' immunity under the ADA is a complex question.  *See, e.g.*, *Kobe v. Haley*, 666 F. App'x 281, 300-03 (4th Cir. 2016) (noting the lack of clarity on whether Congress validly abrogated Eleventh Amendment immunity for Medicaid-based claims).  As this Court has explained, "the portions of the ADA that are not designed to implement disabled persons' constitutional rights are not based on § 5 of the fourteenth amendment and thus cannot be used to override states' sovereign immunity." *Amundson*, 721 F.3d at 872-73.  Therefore, as part of their analysis, courts must assess whether the conduct at issue violated both Title II of the ADA and the Fourteenth Amendment.  *United States v. Georgia*, 546 U.S. 151, 157 (2006).  Here, it is not evident from the complaint that Plaintiffs' ADA theory is based on conduct that also violated the Fourteenth Amendment.  *See, e.g.*, Doc. 1 at 42-43 (citing the Medicaid Act and implementing regulations in the ADA and Rehabilitation Act claims); Doc. 39 at 9 ("Defendants are currently violating sections of the Federal Medicaid Act and its implementing regulations").

Accordingly, the critical question for the § 1983 and ADA claims is "whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Sonnleitner*, 304 F.3d at 718.  Plaintiffs nominally seek prospective relief by asking for a declaration that Defendants are violating the Medicaid Act, the ADA, the Rehabilitation Act, and the Fourteenth Amendment, as well as an injunction requiring Defendants to adhere to federal law. *See* Doc. 1 at 46. Substantively, however, this request is retrospective.  In effect, Plaintiffs want an injunction ordering the State to reimburse the providers for treatment that has already occurred. *See, e.g.*, *id.* at 7-29, 36, 41.  Under well-established law, a request for payment of past liabilities, even if couched in declaratory and injunctive phraseology, is barred by *Edelman v. Jordan*, 415 U.S. 651 (1974).  Indeed, *Edelman* "prohibited relief that was not prospective in nature, specifically barring awards of 'accrued monetary liability which must be met from the general revenues of a State.'" *McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1049 (7th Cir. 2013) (quoting *Edelman*, 415 U.S. at 664).

In this context, where the result of an injunction is the payment of funds, the key question is whether "the state expenditure [is] an ancillary [or the] primary effect of the relief ordered." *Id.*; *see MSA Realty Corp. v. Illinois*, 990 F.2d 288, 292 (7th Cir. 1993) ("MSA's request for relief would have an effect upon the state treasury that is not merely ancillary but is the essence of the relief sought.").  There is no Eleventh Amendment problem where the "fiscal consequences . . . [is] the necessary result of compliance with decrees which by their terms were prospective in

nature." *McDonough Assocs.*, 722 F.3d at 1049.  But where the relief ordered is akin

to "'individual citizens' conducting a raid on the state treasury for an accrued

monetary liability,'" the action would be barred by the Eleventh Amendment.  *Id.*

(quoting *Milliken v. Bradley*, 433 U.S. 267, 290 n.22 (1977)).  In fact, the Eleventh

Amendment was "adopted to ensure that such retroactive damages claims would not

be heard in federal court absent the state's consent."  *Id.*

There are numerous indications here that Plaintiffs' complaint falls on the

impermissible side of the line drawn in *Edelman*.  By the complaint's own terms, the

Residents are eligible for Medicaid benefits, have been approved by Defendants, and

are already receiving the necessary care.  Doc. 1 at 7-29, 32; *see supra* II.C.  All that is

lacking, according to the complaint, is timely reimbursement for this care.  Doc. 1 at

36, 37, 39, 41.  The complaint thus does not seek any action from Eagleson that

would provide care to Residents or speed up eligibility determinations.  *See, e.g.*,

*Holly Hill Nursing LLC v. Padilla*, No. 8:17-CV-03554-PWG, 2018 WL 5013826, at

*6 (D. Md. Oct. 16, 2018) (explaining that unlike in other cases, it could not "fashion

prospective relief" where the State was presently making medical assistance available

to the plaintiff).  Instead, any relief would necessarily include, as a primary focus,

Eagleson making payments for past services rendered.  Plaintiffs' complaint

highlights the "significant outstanding balance[s]" for these services, *id.* at 7-29, due

to the alleged failure to reimburse, *id.* at 36.

This type of request fits squarely within *Edelman*'s bar.  Although federal

courts "may order state officials to act in a certain manner going forward that may

40

cost the state money to implement," they cannot "direct a state to make payments to resolve a private debt or to remedy a past injury to a private party." *McDonough Assocs., Inc.*, 722 F.3d at 1050-51. The gravamen of Plaintiffs' claim—that the Managed Care Organizations are not timely paying the providers for services rendered—involves the resolution of a private contractual dispute over alleged debts. Accordingly, any relief requested would require Eagleson, a state official, to make payments to specific providers to resolve those debts. This falls well beyond the scope of what *Edelman* permits. *See BT Bourbonnais Care, LLC*, 866 F.3d at 823 ("We will not hesitate to call 'out of bounds' any effort to obtain retrospective payment from the state" in the Medicaid context); *MSA Realty Corp.*, 990 F.2d at 292 ("The Supreme Court has never approved an order requiring a state to provide monetary relief to specific plaintiffs."); *Wicomico Nursing Home*, 910 F.3d at 747 (holding that Eleventh Amendment barred request by nursing homes for "payments of past medical services"). This Court should affirm the dismissal of Plaintiffs' § 1983 and ADA claims on Eleventh Amendment grounds.

## IV. Plaintiffs Failed To State a Claim Against Eagleson.

In the further alternative, the district court's dismissal should be upheld for the independent reason that Plaintiffs failed to state a claim against Eagleson on which relief may be granted. To begin, Plaintiffs failed to state a claim for violations of the Medicaid Act and its implementing regulations under § 1983. In Count II—the medical assistance claim—Plaintiffs alleged that Defendants violated § 1396a(a)(10), which requires a State plan to make "medical assistance available," and

41

§ 1396d(a)(4)(A), which includes "nursing facility services" in the definition of medical assistance. *See* Doc. 1 at 41-42. In Count III—the reasonable promptness claim—Plaintiffs allege that Defendants violated § 1396a(a)(8), which provides that "individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals," and 42 C.F.R. § 435.930, which requires the state agency to "[f]urnish Medicaid promptly to beneficiaries without any delay." *See* Doc. 1 at 42. Because this Court has deemed §§ 1396a(a)(10) and 1396a(a)(8) claims to be "materially identical," *see Bertrand ex rel. Bertrand v. Maram*, 495 F.3d 452, 456 (7th Cir. 2007), this brief addresses Counts II and III together.

Here, the complaint itself acknowledges that the Residents have all received favorable eligibility determinations and are currently receiving care. *See* Doc. 1 at 7-29, 32. The Residents are not awaiting a decision on Medicaid applications, nor are they lacking access to the medical treatment that they need. *See supra* Section II.C. Furthermore, the Residents cannot be held liable for any delayed payments, nor do they ever receive the payments themselves. *See id.*; *Banks*, 997 F.2d at 244 ("[B]ecause Medicaid recipients are not legally responsible for amounts not reimbursed to providers by the state Medicaid agency, the agency's refusal to pay a provider's claim does not result in a negative change in the recipient's benefits . . . . Accordingly, the plaintiffs have failed to state a claim upon which relief can be granted."). Plaintiffs thus failed to state a claim that Eagleson is failing to make

42

medical assistance available by a delay in the application or access to care under §§ 1396a(a)(8), 1396a(a)(10), and 1396d(a)(4)(A) or 42 C.F.R. § 435.930.

Moreover, these § 1983 claims are not brought under 42 U.S.C. § 1396a(a)(37)(A), a provision requiring prompt payment of claims that Plaintiffs cite elsewhere in their complaint. In fact, in their opposition to the Managed Care Organizations' motion to dismiss, Plaintiffs described the relevance of this prompt payment provision as follows: "Plaintiffs are not asserting claims under § 1983 to enforce 42 U.S.C. § 1396a(a)(37)(A). Rather, Defendants' violation of [§ 1396a(a)(37)(A)] constitutes a denial of 42 U.S.C. § 1396a(a)(10)(A), 1396d(a)(4)(A), 1396a(a)(8)." Doc. 41 at 28-29. This theory—which does not appear as a claim in the complaint—conflates the Managed Care Organizations' duty to pay service providers with the Residents' entitlement to receive medical care. There is no established private right of action for Medicaid beneficiaries under § 1396a(a)(37)(A), and Plaintiffs cannot sidestep that fact by couching a § 1396a(a)(37)(A) claim in §§ 1396a(a)(10)(A), 1396d(a)(4)(A), or 1396a(a)(8).

Additionally, Plaintiffs failed to state a claim under Title II of the ADA or § 504 of the Rehabilitation Act. "To establish a violation of Title II of the ADA, the plaintiff must prove that he is a qualified individual with a disability, that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was by reason of his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (internal quotation marks omitted). Claims under the

Rehabilitation Act are "functionally identical." *Id.* Plaintiffs' allegations did not satisfy this standard. Most significantly, Plaintiffs did not even attempt to allege that the purported denial of benefits was by reason of their disabilities. Doc. 1 at 42-43. There was no allegation, for instance, that the service providers for the Residents would have been paid sooner if the Residents had been individuals without a disability.

Plaintiffs also failed to state a procedural due process claim.[8] "To state a claim for a procedural due process violation, a plaintiff must demonstrate (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Forgue v. City of Chicago*, 873 F.3d 962, 969 (7th Cir. 2017). As an initial matter, Plaintiffs did not allege a relevant property interest in the Managed Care Organizations' payments to the service providers. To the extent that the providers seek payment for their services, that is a contractual dispute between the Managed Care Organizations and the providers, not a procedural due process matter between the Residents and Eagleson. *See Banks*, 997 F.2d at 243–44 ("The reason for the absence of the procedural protections the plaintiffs seek is plain: a Medicaid provider is prohibited from seeking payment from a Medicaid recipient of amounts not reimbursed by the state program."). Moreover, there is no deprivation where, as

---

[8] Plaintiffs label Count VI as "Violation of Due Process and Equal Protection." Doc. 1 at 44. The body of the complaint, however, contains no allegations about equal protection. Accordingly, they have not stated an equal protection claim. *See McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (legal conclusions and recitation of elements insufficient to state a claim).

here, all of the Residents are receiving medical assistance and cannot be held liable for the delayed payments.  Doc. 1 at 7-29.

Finally, Plaintiffs' claims for declaratory judgment and injunctive relief cannot stand without any underlying violations, and thus were properly dismissed.  The Declaratory Judgment Act "only authorizes courts to grant relief which is consonant with the exercise of the judicial function in the determination of controversies to which under the Constitution the judicial power extends."  *Deveraux v. City of Chi.*, 14 F.3d 328, 330 (7th Cir. 1994) (internal quotation marks omitted).  Like preliminary and permanent injunctive relief, a declaratory judgment is "a procedural innovation that does not expand the jurisdiction of the federal courts" and does not "affect the underlying substantive state and federal laws that define the rights of the parties."  *Med. Assur. Co. v. Hellman*, 610 F.3d 371, 377 (7th Cir. 2010).  As discussed, Plaintiffs were not entitled to such relief because they are receiving medical care and are not liable for any delayed payments.  There is thus no ongoing violation for the district court to remedy.

## CONCLUSION

For these reasons, Defendant-Appellee Theresa Eagleson requests that this

Court affirm the judgment of the district court.

Respectfully submitted,

**KWAME RAOUL**
Attorney General
State of Illinois

100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-3312

Attorney for Theresa Eagleson

/s/ Sarah A. Hunger
**SARAH A. HUNGER**
Assistant Attorney General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-7122
shunger@atg.state.il.us

Dated April 8, 2019

**CERTIFICATE OF COMPLIANCE WITH WORD LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I hereby certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2013, in 12-point Century Schoolbook BT font, and complies with Federal Rule of Appellate Procedure 32(a)(7)(A) in that the brief is 11,393 words.

/s/ Sarah A. Hunger
**SARAH A. HUNGER**
Assistant Attorney General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-7122
shunger@atg.state.il.us

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on April 8, 2019, I electronically filed the foregoing Brief of State Defendant-Appellee Theresa Eagleson with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>/s/ Sarah A. Hunger</u>
**SARAH A. HUNGER**
Assistant Attorney General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-7122
shunger@atg.state.il.us